# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WILLIAM D. POOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-1320 (HHK)** |
| | ) | |
| **PETE GEREN** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS, IN PART, AND
## MOTION FOR  SUMMARY JUDGMENT

Defendant Pete Geren,[1] Secretary of the Army, in his official capacity, through the undersigned counsel, respectfully moves to dismiss the Plaintiff's Complaint, in part, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Defendant moves for summary judgment on Plaintiff's remaining claim pursuant to Rule 56 of the Federal Rules of Civil Procedure because there are no genuine issues as to any material fact and Defendant is entitled to judgment as a matter of law.  In support of these motions, Defendant respectfully submits the attached memorandum of points and authorities, a statement of material facts not in genuine dispute, a proposed order, and an administrative record.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____

[1]  Pete Geren replaced Francis J. Harvey as the Secretary of the Army on July 16, 2007.  He is automatically substituted as Defendant under Fed. R. Civ. P. 25(d)(1).

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895


Of Counsel:
MAJOR KELLY L. MCGOVERN
U.S. Army Litigation Division

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM D. POOLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 07-1320 (HHK)** |
| | ) |
| **PETE GEREN** | ) |
| **Secretary of the Army,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS, IN PART,  AND**
**MOTION FOR  SUMMARY JUDGMENT**

Defendant, Pete Geren, Secretary of the Army, in his official capacity and through the

undersigned counsel, respectfully moves to dismiss the Plaintiff's Complaint, in part, pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

Defendant moves for summary judgment on Plaintiff's remaining claim pursuant to Rule 56 of

the Federal Rules of Civil Procedure because there are no genuine issues as to any material fact

and Defendant is entitled to judgment as a matter of law.

## I.  INTRODUCTION

Plaintiff is a former E-5/Sergeant (SGT) who served on active duty in the Army from

1983 to 1998.  (Compl. ¶¶ 3, 5.)  In 1998, the Army's "Retention Control Point" (RCP)[2] policy

required that soldiers attain the rank of E6/Staff Sergeant (SSG) within fifteen years. (Compl. ¶

13.) When the Plaintiff failed to reach the rank of E6/SSG by his fifteen year mark, he was

_____

[2]  The time frame in which a soldier is allotted to reach a certain rank is called the Retention
Control Point (RCP).  Soldiers who fail to meet their RCP will not be able to reenlist and will be
discharged.  See Army Regulation (Army Reg.) 601-280, Army Retention Program, ¶ 3-8(g) (29
Sept. 1995) (Exhibit B).

discharged on July 19, 1998, at his Expiration of Term of Service (ETS) date.  (Compl. ¶ ¶ 9.)

On May 20, 2005, Plaintiff applied to the Army Board for Correction of Military Records (ABCMR)[3] requesting retirement pay and benefits.  (AR 135.)  Plaintiff stated that he was forced out of the Army under the fifteen year RCP policy which applied to E-5/SGTs in 1998.  Id. Plaintiff claimed he would have been promoted to E-6/SSG "a short time" after his discharge in 1998, and with the 1999 change to the RCP policy, he would have been able to serve twenty years.  Id.  Plaintiff claimed he was "denied the right to retire, due to no fault of his own."  Id.  In a separate request, Plaintiff also indicated that he should have received two medals and an award while on active duty.  (AR 130.)  On February 21, 2006, the ABCMR granted partial relief for two medals, but denied Plaintiff's request for retirement pay and benefits.  (AR 127-44).  The ABCMR determined that no error or injustice occurred because Plaintiff reached the 15 year RCP effective in 1998, and the 1999 RCP policy was not retroactive.  (AR 127-44.)

On July 31, 2006, Plaintiff submitted a request for reconsideration to the ABCMR, now claiming that he should have been promoted in March of 1997, which was fifteen months before his discharge.  (AR 92-93.)  In support of this request Plaintiff provided two letters stating that he sat before a promotion board in 1991 and again in 1995.  (AR 94-95.)  Plaintiff also created a promotion packet to try to prove the number of promotion points he attained at the time in question.  (AR 97-123.)  On March 13, 2007, the ABCMR denied Plaintiff's request for reconsideration.  While acknowledging that Plaintiff appeared before promotion boards, the

---

[3] The ABCMR, a civilian review board, is empowered to review applications for the presence of an error or injustice and make recommendations for corrective action.  10 U.S.C. § 1552(a)(1): 32 C.F.R. § 581.3; Army Regulation (Army Reg.) 15-185, Army Board For Correction Of Military Records (31 Mar. 2006).

ABCMR found that there still was no evidence to show that the Plaintiff was on a promotion standing list between March 1997 through July 1998. (AR 87-91.)

Subsequently, Plaintiff submitted letters to the Secretary of Defense and Senator Bill Nelson demanding assistance in resolving the matter "by the 4th of July." (AR 2-4, 44-46.) The letter to the Secretary of Defense was referred to the ABCMR on June 11, 2007. (AR 1.) The ABCMR notified the Plaintiff on June 20, 2007, that his letter would be treated as an appeal and would be considered in the order it was received; approximately ten months. (AR 1.) The matter is still pending a decision by the ABCMR.[4]

Plaintiff filed this lawsuit on July 24, 2007 alleging that the ABCMR's denial of his application and request for reconsideration was arbitrary and capricious. (Compl. ¶ 23.) The Plaintiff seeks for this court to order the Defendant to promote him to E-6/SSG as of March 1997 and grant all rights and privileges that would flow therefrom. (Compl. ¶ 24.)

## II. ARMY ENLISTED PROMOTION SYSTEM & RCP POLICY

The objective of the Army Enlisted Promotion System is to fill authorized enlisted spaces with the best qualified soldiers. See Army Reg. 600-8-19, Enlisted Promotions and Reductions, ¶ 1-1 (1 Nov. 1991) (Exhibit E). Headquarters, Department of the Army determines the needs of the Army for each rank in each enlisted job, or military occupational specialty (MOS). See Id. at

---

[4] Because this matter is still pending a decision by the ABCMR, it is within this Court's discretion to dismiss Plaintiff's claim for failure to exhaust administrative remedies. See Scott v. England, 264 F. Supp. 2d (D.D.C. 2002) (holding that the plaintiff failed to exhaust his administrative remedies when he filed a complaint in conjunction with a petition for a promotion to the Board for Correction of Naval Reserves); Juffer v. Caldera, 138 F. Supp. 2d 22 (D.D.C. 2001); see also Bowman v. Brownlee, (finding a claim was nonjusticiable since the appeal to the ABCMR was still pending and a favorable result could render his APA claim moot). In the alternative, this Court could stay these proceedings until the ABCMR issues a decision on Plaintiff's "appeal" in the interest of judicial economy and efficiency; See Landis v. North American Co., 299 U.S. 248, 254-55 (1936).

¶ 3-34b. "A determination is then made for each MOS as to what promotion point cutoff score would promote the desired number of soldiers to meet the needs of the Army in a specific month. These decisions are based primarily upon budget constraints and individual MOS requirements." Id. at ¶ 3-34c.

The Army uses a semi-centralized system for the promotion to the grades of E-5/SGT and E-6/SSG.[5]  Id. at ¶ 3-1c.  A semi-centralized promotion system means that the promotion authority is divided between the unit commanders in the field and the centralized cutoff score determination by the Department of the Army.  Id.  In order to be promoted a soldier must obtain a certain number of points at his unit in the field and be recommended for promotion.   At that point he is in a promotable status and has a chance to make the cutoff score established by the Department of the Army. Id.

The maximum number of points soldiers could receive when the Plaintiff was an E5/SGT was 800 points.[6]  Id. at Figure 3-1.  A soldier could earn up to 600 administrative points and 200 promotion board points.  Id.  The 600 administrative points were comprised of: duty

---

[5]  The only automatic promotion in the military is from the rank E-1 to E-2.  "[United States Army Personnel Command] PERSCOM will advance soldiers to the rank of private E2 (PV2) with 6 months time in service (TIS) automatically; unit commanders will take action to advance all other soldiers on an individual basis."  Army Reg. 600-8-19, ¶ 1-8(c) (1 Nov. 1991) (Exhibit E).  Commanders are authorized to advance soldiers to the ranks of E-3/Private First Class, E-4/Specialist (SPC), or E-4/Corporal.  Id. at ¶ 1-7c.  A semi-centralized promotion selection process is used for promotion to the ranks of E-5/SGT and E-6/SSG.  Id. at ¶1-7b.  A centralized promotion selection process is used to promote soldiers to the ranks of Sergeant First Class (SFC) and above."  Id. at ¶ 1-7a.

[6]  The Army phased out the skill qualification test (SQT) in the early 1990s and therefore the 200 points previously assigned to that area was eliminated from the total tallying of promotion points.

4

performance,[7] awards and decorations, military and civilian education, and military training.[8]  A

promotion board evaluated soldiers in six areas to determine the number of board points a soldier

receives out of the maximum 200 promotion board points.[9]  Id. at Figure 3-2.  A promotion board

also made a recommendation whether a soldier should be promoted.  Id. at ¶ 3-16.

　　　　After a soldier appeared before the board, the president of the board would forward the

board report to the promotion authority, which was usually the Battalion Commander. The board

report would list of all the soldiers who appeared before the board with a recommendation as to

whether each should be promoted. Id. at ¶ 3-18a.  The Commander's signature served as approval

for the awards, military training certification, initial board selection, board results and promotion

---

[7] Unit commanders use their discretion to decide how many points they will give their soldiers
for this area of the promotion packet.  Army Reg. 600-8-19, Enlisted Promotions and Reductions,
Figure 3-1, Item 13 at 35 (1 Nov. 1991) (Exhibit E).  "Promotion points will be granted based on
a maximum of 200 points to be awarded by the commander.  In awarding these points,
commander should consider values or [noncommissioned officer] NCO responsibilities and
personal traits such as potential for advancement, competence, physical fitness and military
bearing, leadership, training, responsibility and accountability, adaptability and expressions.
Evaluate the whole person." Id.

[8]  A point value was assigned to each award, with a maximum of fifty points. Army Reg. 600-8-
19, Interim Change, pp. 10-11 (8 Apr. 1994) (Exhibit F.) A total of 150 points could be achieved
through military education which education included points for the requisite classes for
noncommissioned officers, as well as points for other resident courses such as Airborne school as
well as military correspondence courses.  Army Reg. 600-8-19, Enlisted Promotions and
Reductions, Figure 3-1, at 36 (1 Nov. 1991) (Exhibit E).  A soldier could receive 100 points for
civilian education.  Id.  The DA policy was to award one promotion point for each semester hour
successfully earned through attendance at or recognized by a regionally accredited college or
university.  Id.  Military training included marksmanship and the physical fitness test worth a
total of 100 points.  Id. at 37.

[9]   The board evaluates the soldier in six areas: (1) 30 points possible for personal appearance,
bearing, self confidence; (2) 35 points for oral expression and conversational skill; (3) 25 points
for knowledge of world affairs; (4) 25 points for awareness of military programs; (5) 45 points
for knowledge of basic soldiering; and (6) 40 points for soldiers attitude (which includes
leadership and potential for advancement and trends in performance). Id.

packet verification. Id. at ¶ 3-18b. Soldiers who were recommended for promotion by their Commander were then eligible for promotion to E-6/SSG on the first day of the third month following the board selection month. Id. at ¶ 3-34e. "For example, a soldier selected by a promotion board in January 1991 would become eligible for promotion on April 1, 1991." Id. Soldiers who completed this process were eligible for promotion as long as their names were maintained on a promotion standing list and they sustained a minimum of 550 points. Id. at ¶¶ 3-18g, 3-22g. However, a soldier could be removed from the promotion standing list for a variety of reasons, such as misconduct, a bar to re-enlistment, weight control. Id. at ¶¶ 1-10, 3-28. Soldiers also were not eligible for promotion to E-6/SSG if they were within one year of the end of their service contract, or expiration of term of service (ETS) date.

Even if a soldier was in a promotable status three months after appearing before a board, he would not actually be promoted unless his name appeared on the promotion standing list and made the cutoff score for that month. Id. at ¶ 3-34e, k. A soldier who missed his cutoff score was permitted to reappear before the board to try to improve his board score or could request his scores be recalculated if he believed his administrative points increased through further accomplishments or records corrections. Id. at ¶ 3-24.

If soldiers were not promoted by a certain time frame during their military career, they would be separated from the service. See Army Reg. 601-280, Army Retention Program (29 Sep. 1995) (Exhibit B). The Army refers to the maximum number of years a soldier can serve in the Army at each rank as the RCP. Id. at ¶ 3-8g. Soldiers who approach the RCP for that rank cannot re-enlist or extend their contract more than twenty-nine days beyond the RCP. Id. Soldiers who reach the RCP during their enlistment agreement will be discharged at their expiration of their term of service (ETS) date. Id.

6

Throughout the 1990s, the RCP for E-5/SGTs varied from thirteen years to twenty years, depending on the needs of the Army. From October 1990 to October 1995, the RCP was thirteen years for all E-5/SGTs. See Army Reg. 601-280, Total Army Retention Program, Update, 2-22 (17 Oct. 1990) (Exhibit A). From October 1995 to April 1997, the RCP for a non-promotable E-5/SGT remained at thirteen years, but promotable E-5/SGTs were permitted to stay in for fifteen years. See Army Reg. 601-280, Army Retention Program, ¶ 3-8g (29 Sep. 1995) (Exhibit B). From April 1997 to April 1999, the RCP was changed to fifteen years for all E-5/SGTs regardless of whether a soldier was promotable or not. (Exhibit C.) In April 1999, the RCP for non-promotable E-5/SGTs continued to be fifteen years, but a promotable E-5/SGT could serve twenty years. See Army Reg. 601-280, Army Retention Program, ¶ 3-8g (Exhibit D). The regulatory RCP is adjusted based on the budgetary constraints and retention requirements at the time and therefore, the policy is not retroactive.

### III.  SUMMARY OF THE ARGUMENT

The Plaintiff's request for this Court to order his promotion is a nonjusticiable claim. It is well settled interfering with military promotion decisions is a nonjusticiable issue. Kreis v. Secretary of Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (affirming the district court's refusal to interfere with promotion process); Levant v. Roche, 384 F. Supp. 2d 262 (D.D.C. 2005)(holding a retroactive promotion is nonjusticiable). Therefore, this Court lacks subject matter jurisdiction over the claim to a promotion.

To the extent the Court does review the ABCMR's decisions, the Court's role is limited to ensuring that the ABCMR's decisions were not arbitrary and capricious, an abuse of discretion, or contrary to law or regulation. The ABCMR properly denied Plaintiff's first application for retirement pay and benefits because he was properly discharged at fifteen years in

7

accordance with the regulatory RCP in effect in 1998.  The ABCMR properly denied Plaintiff's request for reconsideration for two promotions and retirement benefits because there is no evidence that his name appeared on a promotion standing list from March of 1997 to July 1998. Under Army regulations, Plaintiff could not have been promoted unless he was on the promotion standing list regardless of the number of points he achieved.  Therefore, the ABCMR used a relevant factor in making their decision.  The ABCMR's decision was neither arbitrary or capricious as the ABCMR articulated a rational connection between the facts found and the choice made.  Therefore, there is no genuine issue as to any material fact concerning the Plaintiff's claim against the ABCMR's decision and the Defendant should be entitled to judgment as a matter of law.

## IV.  STATEMENT OF THE FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## V.  ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim To Promotion

### 1.    Standard of Review for 12(b)(1)

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Plaintiff bears the burden of establishing that the Court has subject matter jurisdiction.   See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp.2d 68, 72 (D.D.C. 2004).  In considering whether to dismiss for lack of subject matter jurisdiction, the Court must accept all of the factual allegations in the complaint as true, but in appropriate cases, may consider certain materials outside the pleadings.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

8

A court may consider such materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case.  See  Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by Plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept Plaintiff's legal conclusions.  See Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003).

### 2.    Plaintiff's Claim To Promotion Is Not Justiciable

The Plaintiff requests that this Court order the Secretary of the Army, or his designee, to promote him to E-6/SSG, with an effective date of rank of March 1997.  (Compl. ¶ 24.)  Plaintiff's claim asking this Court to order a promotion is not justiciable and therefore should be dismissed for lack of subject matter jurisdiction.  See Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (holding that a claim to promotion was not justiciable and the appropriate motion to dismiss is Rule 12(b)(1) for lack of jurisdiction).[10]  In a similar case, this Court stated, "[w]hile plaintiff is obviously disappointed by defendants' decision not to promote him, this Court does not have jurisdiction to . . . order a retroactive promotion by judicial decree."  Levant v. Roche, 384 F. Supp. 2d 262, 267 (D.D.C. 2005).

The United States Supreme Court established the precedent for courts to decline to order promotions.  Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953); Reaves v. Ainsworth, 219 U.S.

---

[10]  The D.C. Circuit affirmed the District Court's decision that the claim to promotion is not justiciable and specifically held that the District Court lacked subject matter jurisdiction over the Plaintiff's claims.  In that case, the Plaintiff filed an alternative claim to change his military records with the insertion of corrective statements.  The D.C. Circuit overruled the lower court on the alternative claim and determined the Court could review the Secretary's decision regarding changes to the military records.  See Kreis v. Secretary of the Air Force 866 F.2d 1508, 1511 (D.C. Cir. 1989).

296 (1911).  Federal courts have held that "[n]o soldier has a legal right to a promotion until he

receives it." Reale v. United States, 208 Ct. Cl. 1010, 1012 (1976) (citing Doggett v. United

States, 207 Ct. Cl. 478 (1975)).  The Federal courts also have refused to "speculate either that the

serviceman will be selected for promotion or that he will be 'selected out.'" Reale, 208 Ct. Cl. at

1012 (citing Gearinger v. United States, 412 F.2d 862 (1969)).

The D.C. Circuit Court firmly established that the claim to a military promotion is not

justiciable.  Kreis, 866 F.2d at 1511.  The Court explained,

> the justiciability of [a] case involving a claim to a military promotion . . . is limited
> by the fundamental and highly salutary principle that: Judges are not given the task
> of running the Army.  The responsibility for setting up channels through which
> [complaints of discrimination, favoritism, et cetera] can be considered and fairly
> settled rests upon Congress and upon the President of the United States and his
> subordinates.  The military constitutes a specialized community governed by a
> separate discipline from that of the civilian.  Orderly government requires that the
> judiciary be as scrupulous not to interfere with legitimate Army matters as the Army
> must be scrupulous not to intervene in judicial matters.  Orloff v. Willoughby, 345
> U.S. 83 (1953).  The Constitution vests "the complex, subtle, and professional
> decisions as to the composition, training, equipping, and control of a military force"
> exclusively in the legislative and executive branches.  Gilligan v Morgan, 413 U.S.
> 1 (1973).

Kreis, 866 F.2d at 1511.  See also Levant v. Roche, 384 F. Supp. 2d 262, 267(D.D.C. 2005).

The judicial branch is naturally reluctant to interfere with decisions made regarding military

matters.  This reluctance is especially pronounced with regard to personnel matters such as

promotions, which "go [] directly to the 'management' of the military [and] calls into question

basic choices about . . . supervision and control of a serviceman."  United States v. Shearer, 473

U.S. 52, 58 (1985).    Drawing on these principles, the D.C. Circuit specificaly ruled that

military promotion decisions are nonjusticiable.  Kreis, 866 F.2d at 1511.  The D.C. Circuit

Court conclusively recognized that the "request for retroactive promotion falls squarely within

the realm of nonjusticiable military personnel decisions.  To grant such relief would require us to

second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation." Id.

Although the Plaintiff attempts to frame his claim as a challenge to the ABCMR's decision not to promote him to E-6/SSG under the APA, the fact is that the Plaintiff's actual complaint is that he was not promoted under the Army system in 1997, so that he did not receive retirement pay and benefits. As in the Kreis and Levant cases, where the heart of the Plaintiff's challenge is to the fact he was not promoted, that issue is not justiciable. Kreis, 866 F.2d at 1511; Levant, 384 F. Supp. at 267. An order promoting the Plaintiff to E-6/SSG would be an impermissible interference with legitimate Army matters and is therefore nonjusticiable. Accordingly, his claim should be dismissed with prejudice.

**B.      The Court Should Grant The Defendant's Motion For Summary Judgment Because The Decision Of The ABCMR Was Reasonable, Lawful, And Based Upon Substantial Evidence.**

**1.      Standard of Review**

Summary judgment is proper when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 243 (1986). While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish

11

an essential element of the nonmoving party's claim." <u>Celotex</u>, 477 U.S. at 331.[11]

"[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the [Court] - that there is an absence of evidence to support the non-moving party's case." <u>Celotex</u>, at 325. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, a plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief.

In an opinion issued the same day as <u>Celotex</u>, the Supreme Court explained the circumstances in which summary judgment is appropriate, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327, <u>quoting</u> Fed. R. Civ. P. 1.

### 2.    Review is Limited Under the Administrative Procedure Act

"Summary judgment is appropriate to resolve disputes over final administrative actions. However, the court does not employ the standard under Fed. R. Civ. P. 56, but instead applies the

---

[11] "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). Therefore, Plaintiff's failure to meet the Rule 56 standard of review by not providing any factual evidence sufficient to prove the elements of his claim will justify summary judgment as a matter of law.

standard of review under the relevant statute and the Administrative Procedure Act."
Weingartner v. Wynne, 2007 U.S. Dist. LEXIS 22175, at n.2 (D.D.C. 2007).  "[T]hough judicial
review of military records correction decisions incorporates the core 'arbitrary or capricious'
standard of traditional administrative law, such review involves an 'unusually deferential
application' of that standard.  Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting
Kreis, 866 F.2d at 1514).  "This deferential standard is calculated to ensure that the courts do not
become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that
would destabilize military command and take the judiciary far afield of its area of competence."
Id. (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires that the
judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be
scrupulous not to intervene in judicial matters.")  Weingartner, 2007 U.S. Dist. LEXIS 22175, at
* 8.  The deference owed by the courts to the military "is at its highest when the military,
pursuant to its own regulations, effects personnel changes through the promotion or discharge
process."  Dilley v. Alexander, 603 F.2d 914, 920 (D.C. Cir. 1979).

In an ABCMR case the court's only task is to "determine whether there is such relevant
evidence as a reasonable mind might accept as adequate to support the [ABCMR's]
conclusions."  Pierce v. Underwood, 487 U.S. 552, 564 (1988); accord Burlington Northern R.
Co. v. Surface Transp. Bd., 114 F.3d 206, 210 (D.C. Cir. 1997).  The Court should consider
whether the decision was based on a consideration of the relevant factors and whether there was a
clear error of judgment," but a Court "is not empowered to substitute its judgment for that of the
agency."  Pierce, 487 at 564.  The "review is highly deferential," requiring a court to "presume
the validity of agency action."  Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994); see also
American Horse Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990); Motor

Vehicles Mfrs. Ass'n. v. Ruckleeshaus, 719 F.2d 1159, 1164 (D.C. Cir. 1983). "[O]nly the most

egregious [ABCMR] decisions" may be set aside by the courts. Kreis, 866 F.3d at 1514. A court

should uphold a decision if "the agency has articulated a rational connection between the facts

found and the choice made." Kisser, 14 F.3d at 619 (quoting Bowman Transportation v.

Arkansas-Best Freight System, 419 U.S. 281, 285 (1974)).

    When reviewing an ABCMR case, agency findings of fact are reviewed for substantial

evidence. JSG Trading Corp. v. Dep't of Agric., 235 F.3d 608, 611 (D.C. Cir. 2001) (substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion when taking into account whatever in the record fairly detracts from its weight"

(internal quotation marks omitted)); FPL Energy Maine Hydro LLC v. F.E.R.C., 287 F.3d 1151,

1160 (D.C. Cir. 2002) ("The 'substantial evidence' standard requires more than a scintilla, but

can be satisfied by something less than a preponderance of the evidence."). Weingartner, 2007

U.S. Dist. LEXIS 22175, at * 7-8.

    The ABCMR's authorizing statute provides the agency with considerable discretion in

determining whether to take corrective action with respect to an applicant's record. Kreis, 866

F.2d at 1512-14. The Secretary, acting through the ABCMR, "'may correct any military record

of that department when he considers it necessary to correct an error or remove an injustice,' 10

U.S.C. 1552(a)(emphasis added), not simply whenever a court determines that certain objective

conditions are met, i.e., that there has been an error or injustice." Kries, 866 F.2d at 1513-14

(noting that this scheme "exudes deference" to the Secretary and "substantially restrict[s] the

authority of the reviewing court to upset the Secretary's determination"). Judicial review of the

ABCMR's decision requires the Court "to determine only whether the Secretary's decision

making process was deficient, not whether his decision was correct." Id. at 1511." Weingartner,

2007 U.S. Dist. LEXIS 22175, at * 6.

To prevail, the "plaintiff has the burden of . . . providing cogent and clearly convincing evidence" and must overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith." Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996); see also Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) cert. denied, 479 U.S. 853 (1986). "A court may set aside the Secretary's determination only if the court finds the determination to be (i) arbitrary and capricious; (ii) not based on substantial evidence; (iii) a result of material error or fact or material administrative error; or (iv) otherwise contrary to law. Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 6 n. 4. "Thus, as with traditional review of administrative agency actions, the court will not disturb the decision so long as the deciding body 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,' including a 'rational connection between the facts found and the choice made.'" Id at * 7 (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); see also Kreis v. Sec'y of the Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005).

In short, the Court's task in reviewing military personnel decisions under the APA is to determine whether "the decision making process was deficient, not whether [the] decision was correct." Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) (quoting Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989).

### 3. The ABCMR's February 21, 2006 Decision Fully Considered Plaintiff's Claims And Properly Found That No Relief For Retirement Pay And Benefits Was Warranted.

The ABCMR gave full consideration to each of Plaintiff's claims in his 2005 application and properly concluded that no relief was warranted as to his request for retirement pay and

benefits.[12]  In Plaintiff's May 20, 2005, application to the ABCMR, he stated, "RCP policy forced me out at 15 year mark, due to my rank/grade of E5.  I would have been promoted a short time later and RCP policy was changed, [unreadable] I would have been able to serve twenty years."  (AR 135.)  Plaintiff also wrote that he "was denied the right to retire due to no fault of my own."  (AR 135.)  Plaintiff did not request a retroactive promotion from the ABCMR, instead he was solely interested in obtaining retirement pay and benefits.  (AR 135.)

The Plaintiff's 2005 application to the ABCMR included the 2003 grievances he filed with Congresswoman Ginny-Brown (AR 136-38) and Plaintiff's 1998 discharge form. (AR 139). The ABCMR considered all of the documents in the Plaintiff's application and his military personnel records in order to reach their decision.  (AR 129.)

The ABCMR verified that the Plaintiff served fifteen years and twenty-two days of active duty service. (AR 131.)   The ABCMR obtained the RCP policy that was in effect when the Plaintiff was discharged in 1998.  (AR 131; Exhibit C).  The RCP was fifteen years for all E-5/SGTs, regardless of their promotable status. (AR 131).

The ABCMR noted that the regulation changed in 1999, after the Plaintiff's discharge, and allowed promotable E-5/SGTs to serve twenty years of service.  (AR 131.)  The ABCMR went on to state, "[u]nfortunately, changes in RCP rules are not retroactive."  (AR 132.) The ABCMR determined no error or injustice occurred because the Army properly applied the fifteen year RCP policy to the Plaintiff.[13]  The RCP rules in effect at the time of the Plaintiff's

[12]  ABCMR granted the Plaintiff partial relief by finding he was entitled to receive two medals that were given to all soldiers serving in the Plaintiff's assignments during the years he was on active duty.

[13]  In the Plaintiff's first application to the ABCMR, the Plaintiff did not allege that an error occurred as to his lack of promotion, but instead seemed to suggest it was an injustice that the

separation simply did not allow any E-5/SGTs to remain on active duty beyond fifteen years of active service. (AR 132.)  Therefore, the ABCMR denied Plaintiff's application for retirement pay and benefits.  (AR 129-134.)

The Plaintiff has not demonstrated that the ABCMR's denial of his first application was arbitrary and capricious.  While the Plaintiff clearly disagrees with the decision, his disagreement is not a satisfactory basis for granting him judicial relief.  The ABCMR reviewed Plaintiff's entire personnel file and application, as well as the Army's retention regulation and RCP policy to form their findings of fact.  The ABCMR correctly applied Plaintiff's time in service to the RCP policy to determine no error or injustice occurred.  The ABCMR's straight forward application of the RCP could not be construed as deficient in any way.  Thus, the February 10, 2006 decision of the ABCMR was reasonable, lawful and based on substantial evidence.  Accordingly, it should be upheld.

**4.      The ABCMR's March 13, 2007 Decision Fully Considered Plaintiff's Claims And Properly Found That No Relief As To The Claims To Promotions, Retirement Pay and Benefits Were Warranted.**

The ABCMR's March 13, 2007 decision once again gave thorough consideration to Plaintiff's claims, and properly determined that his request for two promotions, retirement pay, and benefits were not warranted.  (AR 89-81.)

On July 31, 2006, Plaintiff submitted a request for reconsideration to the ABCMR.  (AR 92-123.)  Unlike his previous application where Plaintiff stated he would have been promoted after his discharge, (AR 135), the Plaintiff submitted a letter to the ABCMR claiming that he now believed he should have been promoted to E-6/SSG in March of 1997, before his actual

---

policy changed nine months after his discharge.

discharge. (AR 93.)  Plaintiff also alleged that, if he would have stayed in the Army, he would

have been promoted to E-7/Sergeant First Class (SFC) in 2002 and retired in 2005.  (AR 93.)

Accordingly Plaintiff requested two retroactive promotions from SGT to SSG, and from SSG to

SFC, as well as retirement pay and benefits.  (AR 93.)

      The ABCMR considered the entire request for reconsideration which included letters

from his former First Sergeant and Command Sergeant Major, and a promotion packet

reconstructed by Plaintiff.  (AR 90, 92-126.)  The ABCMR also incorporated Plaintiff's military

records from his original application in 2006.  Id.

      Based on the letters provided by the former First Sergeant and Command Sergeant Major,

the ABCMR concluded Plaintiff appeared before promotion boards in 1991 and 1995 and was

then in a promotable status.  (AR 90-91.)  The ABCMR also reviewed the promotion packet the

Plaintiff "reconstructed." While the ABCMR found it to be suggestive, they did not find it to be

compelling evidence.  (AR 91.)  More important, the ABCMR concluded that Plaintiff provided

no evidence whatsoever to demonstrate that he was on a "viable promotion standing list" from

the time he alleged he should have been promoted in March of 1997 until his discharge in July of

1998.  (AR 91.)

      The ABCMR properly focused on the promotion standing list as the determining factor in

their denial.  The promotion standing list is a critical piece of information that Plaintiff failed to

provide because soldiers cannot be promoted unless their names appear on the promotion

standing list.  See Army Regulation 600-8-19, Enlisted Promotions and Reductions, Ch. 3 (1

Nov. 1991).  (Exhibit E.)  After a soldier appears before a promotion board, his commander

verifies the promotion packet and the soldier's name is then placed on a recommended for

promotion standing list.  Id.  Once a soldier has remained on the promotion standing list for three

months, he can then be promoted if the soldier meets or exceeds the Department of the Army cut off score established that month.  Id.  If a soldier's name is not on the list, the points will not even be considered and the soldier will not be competitive for promotion. Id. Therefore, since the promotion standing list is the threshold for soldiers to reach to even compete for the cut off score, the ABCMR was justified in using it as a relevant (and dispositive) factor for their decision. The ABCMR gave the Plaintiff the benefit of the doubt, and presumed that he was on a promotion standing list in 1991 and 1995 since the Plaintiff provided letters from former senior non-commissioned officers stating that fact.  In contrast Plaintiff failed to provide a promotion standing list, letters, or an actual copy of his promotion packet for 1997-98, the period in question.  Due to that fact, it was reasonable for the ABCMR to infer that the Plaintiff may not have maintained a promotable status during that time.

There are numerous reasons why a soldier's name will be removed from the promotion standing list.  See Army Reg. 600-8-19, Enlisted Promotions and Reductions, ¶¶ 1-10, 3-28 (Exhibit E.)  For instance, if a soldier is pending an adverse action, his/her record will be flagged until the investigation or punishment is completed.  Id.  Other reasons a soldier's name may be removed from the promotion standing list include failure to sustain the minimum 550 points required to stay on the list, failure of the Army's physical fitness test, failure to qualify for a security clearance required for the soldier's job, failure to re-enlist or extend, a bar to re-enlistment, being placed on the weight control program.[14]  Id.  Therefore, the ABCMR

---

[14] For example, Plaintiff appears to be ineligible for promotion as of May 19, 1997 because he had an ETS date of May 19, 1998, (AR 218) and therefore would not have met the 12 month service remaining obligation for promotion to E-6/SSG.  See Army Reg. 601-8-19, Enlisted Promotions and Reductions, ¶ 3-36a (1 Nov. 1991).  This is just one example of why the ABCMR requires Plaintiff to submit evidence that he was on the promotion standing list.

19

appropriately refused to promote Plaintiff without any evidence that his name appeared on a promotion standing list in March of 1997, two years after he appeared before the promotion board.

The ABCMR provided Plaintiff with a rational explanation for their decision to deny his request for reconsideration. (AR 91.) The ABCMR explained that without evidence that Plaintiff was on a viable promotion standing list, the Plaintiff failed to prove any error or injustice occurred. Id. The ABCMR was neither arbitrary, capricious, nor acted contrary to law by following Army regulations and basing their decision on the promotion standing list. The promotion standing list was not only a relevant factor to the promotion process, it is in fact required element in being promoted.

To overturn the decision of the ABCMR, the Plaintiff has the burden of providing cogent and clearly convincing evidence to overcome the presumption that the ABCMR discharged their duties correctly, lawfully and in good faith. See Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996); Kisser v. Cisneros. 14 F.3d 615, 619 (D.C. Cir. 1994). Plaintiff cannot meet that burden because the decision of the ABCMR was reasonable, lawful, and based on substantial evidence. Accordingly, because the ABCMR articulated a rational connection between the facts found, the lack of evidence, and the decision made, the ABCMR's decision must be upheld. Plaintiff's application for relief to the ABCMR in 2005 was originally premised on his assertion that the RCP policy changed after his discharge, and under the subsequent policy he would have been permitted to stay in the military twenty years to become eligible for retirement. Plaintiff's request for reconsideration in 2006 alleged he had sufficient points to be promoted fifteen months before his discharge. Due to the fact the RCP policy is not retroactive and Plaintiff failed to provide sufficient proof that his name appeared on a promotion standing list at the time in

question as required in order to be eligible for promotion, the ABCMR properly denied his

request.  The ABCMR appropriately pointed out the absence of evidence to support the

Plaintiff's claims.  Plaintiff cannot rest on mere allegations that the ABCMR was arbitrary and

capricious; he must provide specific facts to show a genuine issue for trial or some objective

evidence to enable the Court to find he is entitled to relief.  Applying the standard of Rule 56 of

the Federal Rules of Civil Procedure, the Defendant is entitled to judgment as a matter of law.


## VI.  CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this Court enter

judgment in favor of the Defendant denying Plaintiff's claims.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895


Of Counsel:
MAJOR KELLY L. MCGOVERN
U.S. Army Litigation Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WILLIAM D. POOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-1320 (HHK)** |
| | ) | |
| **PETE GEREN** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to LCvR 7(h) and in support of Defendant's Motions to Dismiss, and for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there is no genuine dispute.  The Administrative Record ("AR") supports this statement.

1.      Plaintiff, William D. Poole, enlisted in the United States Army on June 28, 1983. (Compl. ¶3.)  He served in the military occupational specialty 31F, Network Switching Systems Operator/Maintainer.  (Compl. ¶ 18.)

2.      Plaintiff was promoted to E-5/Sergeant (SGT) on July 6, 1988.  (Compl. ¶ 5; AR 202.)  He was never promoted to E-6/Staff Sergeant (SSG) within his fifteen years of service. (Compl. ¶ 5, 9, 19; AR 202.)

3.      The Army establishes Retention Control Points (RCPs) which are time frames in which soldiers must reach a certain rank.[15]  (Comp. ¶ 10; Exhibits A-D.)  Soldiers who approach the maximum number of years permitted for that rank cannot re-enlist or extend their contract

_____

[15]  The RCPs are published in Army Regulation (Army Reg.) 601-280, Army Retention Program.

1

more than twenty-nine days beyond the RCP.  (Exhibits A-D.)  Soldiers who reach the RCP

during their enlistment agreement will be discharged at their expiration of their term of service

(ETS) date.  Id.  The RCPs change over time based on the needs of the Army and can be found in

Army Regulation 601-280.  (Comp. ¶¶ 10, 11; Exhibits A-D).

4.      In order to be a promotable E-5/SGT, a soldier must have an approved promotion

packet with a promotion board's recommendation, and appear on the promotion standing list.[16]

(Exhibit E.)

5.      Plaintiff appeared before a promotion board at Fort Bragg, North Carolina in

March of 1995 which made him eligible for promotion in June 1995.  (Compl.¶¶ 7, 13; AR 95.)

6.      In October 1995, a new RCP policy took effect.[17]  (Exhibit B.)  The RCP for non-

promotable E-5/SGTs remained at thirteen years, but the RCP for promotable E-5/SGTs was

increased to fifteen years.  Id.  This policy remained in effect until April 1997.[18]  (Exhibit C.)

7.      Plaintiff reached thirteen years in service in June of 1996, but the thirteen year

RCP provision did not apply to Plaintiff because he was promotable at that time. (Compl. ¶ 13.)

Therefore, Plaintiff had fifteen years to reach E-6/Staff Sergeant. Id.

8.      In April 1997, the Army adjusted the RCP to fifteen years for all E-5/SGTs,

regardless of their promotion status.[19] (AR 131; Exhibit C.) Plaintiff was unaffected by the

---

[16]  See Army Regulation 600-8-19, Enlisted Promotions and Reductions, Ch. 3 (1 Nov 1991) [hereinafter Army Reg. 600-8-19].

[17]  See Army Reg. 601-280, Army Retention Program, (29 Sept. 1995).

[18]   Headquarters, Dept. Of the Army, Deputy Chief of Staff, Personnel message, dated November 27, 1996.

[19]  Id.

change eliminating the thirteen year RCP for nonpromotable E-5/SGTs, and he still had fifteen years to reach E-6/SSG. (Compl.¶ 13.)

9.      As Plaintiff approached his fifteen year mark in 1998, he had not attained the rank of E-6/SSG. (Compl.¶ 19.)  On February 10, 1998, prior to reaching his separation date, Plaintiff extended his enlistment contract for two months to reach his fifteen year RCP date.  (AR 197.)  As a result, Plaintiff's separation date became July 19, 1998. (AR 197.)

10.     Since the RCP rule in effect at the time of the Plaintiff's separation did not allow him to remain on active duty beyond fifteen years of active service, Plaintiff was discharged on July 19, 1998 with full separation pay.  (Compl. ¶ 9.)

11.     Nine months after the Plaintiff was discharged, the RCP policy changed again.[20] (Exhibit D.)  The RCP for a non-promotable E-5, sergeant, stayed at fifteen years, but the RCP for a promotable E-5, sergeant, increased to twenty years.  Id.  This regulatory policy took effect on April 30, 1999. Id.

12.     Plaintiff filed an application with the ABCMR on May 20, 2005.  (AR 135, 174.)  Plaintiff wrote that the "RCP policy forced me out at 15 year mark, due to my rank/grade of E-5.  I would have been promoted a short time later and RCP was changed . . . I would have been able to serve twenty years."  Id.  Plaintiff requested retirement pay and benefits.  (AR 135, 174).  Id.

13.     On February 21, 2006, the ABCMR denied Plaintiff's request to retirement pay and benefits.  (AR 127-44.)

14.     On July 31, 2006, Plaintiff submitted a request for reconsideration to the ABCMR for retired pay and benefits.  (AR 92-93.)  In this reconsideration request Plaintiff now alleged

---

[20]  See Army Reg. 601-280, Army Retention Program, (31 Mar. 1999).

3

that he "believe[d] [he] should have been promoted in March, 1997 . . ."  (AR 93.)

15.     The ABCMR denied Plaintiff's request for reconsideration on March 13, 2007.
(AR 92-126.)

16.     The Plaintiff submitted identical, undated letters to the Secretary of Defense, the
Honorable Robert M. Gates (AR 2-43), and to Senator Bill Nelson (AR 44-86).  Plaintiff wrote,
"After my discharge, I learned that a friend of mine, who had the same MOS as mine, was
promoted to Staff Sergeant in October of 1998.  This action got me to thinking and wondering
why I wasn't promoted before I was discharged, as I was forced out due to not getting promoted
to SSG."  (AR 2, 44.)  Plaintiff explained the ABCMR denied his application and request for
reconsideration.  Id.  Plaintiff demanded a reply "by the 4th of July."  (AR 3, 45.)

17.     Plaintiff's letter to the Secretary of Defense was referred to the ABCMR on June
11, 2007.  (AR 1.)  The ABCMR sent a letter to Plaintiff on June 20, 2007, explaining that his
letter would be processed as an appeal in the order it was received.  (AR 1.)

4

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
MAJOR KELLY L. MCGOVERN
U.S. Army Litigation Division

# EXHIBIT A

**Headquarters**
**Department of the Army**
**Washington, DC**
**17 September 1990**

*Army Regulation 601–280

Effective 17 October 1990

Personnel Procurement

# Total Army Retention Program

This publication was last revised on 5 July 1984. Since that time permanent Changes 1 through 15 have been issued. As of 17 September 1990 those changes remain in effect. This UPDATE printing incorporates those changes into the text.

This UPDATE printing also publishes a Change 16. The portions being revised by this change are highlighted.

By Order of the Secretary of the Army:

CARL E. VUONO
*General, United States Army*
*Chief of Staff*

Official:

*[signature]*

MILTON H. HAMILTON
*Administrative Assistant to the*
*Secretary of the Army*

**Summary.** This complete revision of AR 601–280 prescribes the ~~eligibility criteria and options currently available in~~ for the Total Army Retention Program. For those soldiers serving in the Active Army, it outlines procedures for immediate reenlistment or extension of enlistment. For soldiers transitioning from the Active Army, it prescribes eligibility criteria and options for enlistment into the Reserve Components (~~USAR~~ U.S. Army Reserve and ~~ARNG~~ Army National Guard).

**Applicability.**
a. This regulation applies to all military personnel of the Active Army. It does not apply to personnel of the Army National Guard or U.S. Army Reserve unless ordered into active Federal service under AR 135–210 or sections 672a, 672b, or 672c, title 10, United States Code.

b. ~~Unless specifically provided for, this regulation is binding on field commanders. It is not binding on Headquarters Department of the Army (HQDA).~~ Provisions of this regulation will be amended in accordance with the authorities for suspension of law related to the separation and retirement of military personnel under the following conditions:

(1) Presidential 200K Call-up (section 673b, title 10, United States Code) using section 673a, title 10, United States Code to suspend all laws related to the separation and retirement of all military personnel up to 180 days.

(2) Presidential Declaration of National Emergency for Partial Mobilization (10 USC 673a) suspending all laws related to the separation and retirement of all military personnel up to 24 months.

(3) Congressional Declaration of National Emergency for Full Mobilization (10 USC 673a and 10 USC 672) suspending all laws related to the separation and retirement of all military personnel for the duration of the war plus 6 months.

c. In cases of conflict between this regulation and any other regulations setting forth ~~reenlistment eligibility criteria for soldiers serving in the Active Army~~ retention and transition policy for soldiers serving in the Regular Army, this regulation will take precedence.

**Supplementation.** Supplementation of this regulation and establishment of forms ~~other than DA Forms~~ command and local

forms are prohibited without prior approval from HQDA (DAPE–~~MPSM~~PE), WASH DC 20310.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Administrative Assistant to the Secretary of the Army. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Commander, ~~TAPA~~ PERSCOM (~~DAPC–EPZ–J~~ TAPC–EPR–P), 2461 Eisenhower Avenue, Alexandria, VA 22331–0450.

**Distribution.** Distribution of this publication is made in accordance with the requirements on DA Form 12-09-E, block number 2565, intended for command levels A, B, C, D, and E for Active Army, Army National Guard, and U.S. Army Reserve.

**Contents** (Listed by paragraph number)

**Chapter 1**
**General**
Purpose • 1–1
References • 1–2
Explanation of abbreviations and terms • 1–3
Objectives • 1–4
Communication with HQDA and other Governmental agencies • 1–5
Secretarial authority and statutory entitlement • 1–6
Responsibilities • 1–7
Policy • 1–8
Authority to act on ~~reenlistment~~ retention actions • 1–9

*This regulation supersedes AR 601-280, 5 July 1984.

(5) Soldiers in a nonpromotable status as defined in AR 600–200, chapter 7, section I. (See note 1.)

(6) Soldiers who have been denied reenlistment under chapter 10, section II. (See note 2.)

(7) Soldiers being separated for physical disability with entitlement to receive disability severance pay.

(8) Soldiers being separated for physical disability—Existed Prior to Service (EPTS)—established by Physical Evaluation Board (PEB) proceedings (not entitled to severance pay) (AR 635–40).

(8.1) Soldiers being separated with less than 20 years active Federal service by reason of physical disability.

(9) Soldiers being separated as conscientious objectors before completion of their term of service under AR 600–43.

(10) Soldiers who have completed their terms of service and are being separated as conscientious objectors, or soldiers with religious convictions that preclude unrestricted assignments. (See note 3 for exceptions.)

(11) Soldiers separated for failure to meet procurement medical fitness standards according to AR 635–200, chapter 5.

(12) Soldiers who have a Declaration of "Continued Service Statement" in effect (DA Form 4991–R Declaration of Continued Service Statement).

(13) Aliens who will have in excess of 7 years of Federal military service at the expiration of the period for which they are seeking to reenlist, are disqualified from reenlistment. Aliens who enlisted prior to 1 January 1986 are exempt until 1 January 1993. As an exception, see paragraph 2–9 e, soldiers from these islands may reenlist and pursue a career in the U.S. Army without being required to become U.S. citizens.

(14) Soldiers currently enrolled in the Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) are not allowed to reenlist. Upon successful completion of the program according to AR 600–85, the soldier will be allowed to reenlist without waiver if he or she is otherwise qualified for reenlistment. As an exception to paragraph 3–3b, soldiers who need more service to complete the program may be extended for the number of months needed by the commander exercising Special Court-Martial Convening Authority (SPCMCA). The reason cited on the DA Form 1695 (Oath of Extension of Enlistment) will be "in the best interest of the Service." Commanders are not required to retain soldiers on active duty to complete the total ADAPCP program if, in their opinion, the probability for total rehabilitation does not warrant retention.

b. As an exception, rare and unusual cases determined to be meritorious and worthy of special consideration may be submitted through command channels to CG, TAPA Commander, PERSCOM (USAEEA) as an exception to policy under procedures outlined in paragraph 2–19.

Note 1. Requests for extension of enlistment by an amount sufficient to complete 20 years of active Federal service for soldiers who have completed 18, but less than 20, years of service may be forwarded to USAEEA according to procedures in paragraph 3–3e.

Note 2. See paragraph 2–23.

Note 3. Soldiers classified as 1–A–O noncombatants with a PMOS in the medical career management field who are otherwise qualified may reenlist for an option that will provide for continued duty in the medical career management field.

## 2–21. Nonwaivable disqualifications

Soldiers to whom the disqualifications below apply are ineligible for RA reenlistment at any time and requests for waiver or exception to policy will not be submitted. These soldiers are also ineligible to apply for RA enlistment under AR 601–210 at a later date.

Note: These soldiers are also in a nonpromotable status according to AR 600–200, chapter 7.

a. Insane soldiers.

b. Soldiers having a history of psychotic disorders.

c. Soldiers of questionable moral character and a history of antisocial behavior, sexual perversion or homosexuality. A person who has committed homosexual acts or is an admitted homosexual but as to whom there is no evidence that they have engaged in homosexual acts either before or during military service is included.

d. Soldiers being processed for separation for misconduct or unsuitability with 18 or more years' active Federal service completed.

e. Soldiers barred from reenlistment by DA under chapter 10, section II.

f. Soldiers currently serving as Reserve commissioned or warrant officers who are being separated and did not have prior RA enlisted service (except as provided in para 2–19).

g. Soldiers whose reenlistment would not be clearly consistent with interests of national security under AR 604–10.

h. Soldiers being separated under the Personnel Security Program (AR 640–10).

i. Soldiers being separated from Extended Active Duty (EAD) because of physical disability and revision to inactive status to retire under sections 1331-1337, title 10, United States Code (10 USC 1331-1337), instead of discharge with entitlement to receive disability severance pay (AR 635–40).

j. Soldiers being separated for physical disability resulting from intentional misconduct or willful neglect incurred during a period of unauthorized absence (not entitled to severance pay) (AR 635–40).

k. Soldiers being discharged under AR 635–200 for homosexuality.

l. Soldiers separated as aliens without legal residence in the United States (AR 635–200, para 5–10).

m. Soldiers being retired after 20, but less than 30 years of active Federal service under section 3914, title 10, United States Code (10 USC 3914).

n. Soldiers being retired after 30 years of active Federal service under section 3917, title 10, United States Code (10 USC 3917).

o. Soldiers being retired instead of discharge under AR 635–200 (homosexuality) 10 USC 3914).

p. Soldiers who have received severance pay (other than disability).

## Section VIII
## Grade Rank

## 2–22. Basic eligibility criteria

a. A soldier must not exceed the reenlistment eligibility retention control points below by more than 29 days before expiration of contracted service (that is, reenlistment or extension). Soldiers who have attained local order-of-merit or official DA promotion list status, will be considered for reenlistment under the ineligibility retention control point for the grade rank to which they will be promoted.

| Grade Rank | Total Active Service |
|---|---|
| E–4 CPL/SPC | 8 years |
| E–5 SGT | 13 years |
| E–6 SSG | 20 years |
| E–7 SFC | 24 years (30 years) |
| E–8 1SG/MSG | 27 years (33 years) |
| E–9 CSM/SGM | 30 years (35 years) |

Note: The total active Federal service in parentheses applies only to special bandsmen (West Point Band, The Army Band, and Army Field Band) and Command Sergeants Major and Sergeants Major granted special authority under the Command Sergeants Major/Sergeants Major Retention Program. (See chap 10.) No waivers are authorized.

b. Soldiers in grade E2 the rank of PV2 and below.

(1) Soldiers in grade E2 the rank of PV2 and below, regardless of years of service completed, are not authorized reenlistment. No grade rank waivers considered.

(2) Soldiers in grade ~~E2~~the rank of PV2 and below, who incur a DA imposed service remaining obligation may, if otherwise qualified to include those with approved waivers, be extended for the least time needed to fulfill the service remaining requirement . The new ETS will not exceed 5 years and 29 days active Federal service.

(3) Soldiers in grade ~~E2~~the rank of PV2 and below as a result of reduction in ~~grade~~rank are not authorized extensions for this purpose.

c. Soldiers in grade ~~E3~~the rank of PFC.

(1) Soldiers in grade ~~E3~~the rank of PFC are not authorized to reenlist, except as indicated below. Soldiers who incur a DA imposed service remaining obligation may, if otherwise qualified to include those with approved waivers, be extended for the least time needed to fulfill the requirement. Total active service at new ETS will not exceed 6 years, 29 days.

(2) Soldiers in grade ~~E3~~the rank of PFC who are on a two-year initial enlistments and who will have 24 months or less of active Federal service on the day they are discharged to reenlist may, if otherwise qualified to include those with approved waivers, be reenlisted without a grade waiver. In no case will the new ETS exceed the retention ~~ineligibility~~control point for the next higher ~~grade~~rank.

(3) Soldiers in grade ~~E3~~the rank of PFC as a result of a reduction in grade ~~E3~~rank to PFC are not authorized extension for this purpose.

d. Soldiers in grade ~~E4~~the rank of CPL/SPC who are not on the local order-of-merit promotion list for promotion to ~~E5~~the rank of SGT may not be granted waiver for the purpose of reenlistment. However, soldiers who incur a DA imposed service remaining obligation may, if otherwise qualified, be extended for the least time needed to fulfill the service remaining requirement, provided total service at the new ETS will not exceed 8 years and 29 days.

e. Soldiers in grades ~~E4 through E6~~the ranks of CPL/SPC through 1SG/MSG who have attained official DA or local order-of-merit promotion list status will be considered for reenlistment under criteria of the ~~grade~~rank to which they will be promoted. For example, an ~~E4~~CPL on the standing list for ~~E5~~SGT may be reenlisted or extended to complete 13 years (and not to exceed 29 days) of active Federal service—no ~~grade~~rank waiver required. However, retention beyond 13 years (29 days) of active Federal service is not authorized—no ~~grade~~rank waiver allowed.

f. ~~Grade~~Rank eligibility does not apply to soldiers selected for attendance at an officer training program such as Officer Candidate School or Warrant Officer Flight Training.

g. NCO's in grade ~~E6 through E8~~in the rank of SSG through 1SG/MSG serving OCONUS who will complete a normal overseas tour but cannot take action to meet service remaining obligations for return to CONUS due to ~~grade~~rank restrictions may extend to be PCS eligible, provided they are otherwise qualified, and provided the extension does not exceed 13 months and is for the minimum time required.

## 2–23. Waiver action
*(Rescinded.)*

## Section IX
## Skill Qualification Tests

## 2–24. Eligibility criteria
*(Rescinded.)*

## 2–25. Skill qualification test requirements
*(Rescinded.)*

## Section X
## Waivers

## 2–26. Submission of requests for waiver

a. Soldiers who are unable to qualify for reenlistment, extension, or promotion to ~~E5/E6~~SGT/SSG for one or more reasons

must submit a request for waiver. The request will be sent through command channels to the approval authority in time to allow for normal administrative processing. Requests will not normally be submitted earlier than 12 months, nor later than 3 months before ETS except for soldiers who must extend or reenlist to meet a DA-imposed service remaining requirement or for promotion to ~~E6~~SSG. This requirement is particularly important for requests for soldiers approaching ETS who desire unbroken service.

b. Waivers of multiple disqualifications involving approval by separate levels of authority will be approved by the highest approving authority. In other words, if a soldier requires a waiver of 5 days' time lost and a special court-martial, the final approval authority would be ~~CG, TAPA~~Commander, PERSCOM (U.S. Army Enlistment Eligibility Activity (USAEEA)). Intermediate commanders will make proper recommendations for each disqualification.

c. Unless otherwise prescribed in this chapter, requests for waivers will be submitted only for meritorious cases. All requests will be fully substantiated with properly documented evidence. Documents that may be considered relevant and of value in reaching a sound decision on the request may also be included. The authority to determine whether a case has merit rests at all levels of command. Except as shown below, any case that does not have merit and does not warrant a recommendation for approval will be disapproved by the considering authority without further processing. Requests will not be forwarded to higher authority "for consideration." As an exception, waivers for soldiers shown in (1) and (2) below will be forwarded to the final approval or disapproval authority for final action. Each intermediate commander should make a specific recommendation with proper justification.

(1) Special category personnel. (See para 2–30.)

(2) Soldiers whose waiver is required only because of a properly awarded permanent physical profile.

d. Requests for actions requiring final determination by HQDA or ~~CG, TAPA~~PERSCOM, will be forwarded to the Commander, U.S. Army Enlistment Eligibility Activity (USAEEA), ATTN: PCEA, 9700 Page Boulevard, St. Louis, MO 63132–5200,(AV) 6937–647, (COMM) (314) 263–7647.

e. Field commanders authorized to grant waivers or exceptions to policy under this chapter are encouraged to communicate with USAEEA in doubtful cases to seek advice.

f. Requests for waivers, exceptions to policy, or other reenlistment actions forwarded beyond the installation level, for any destination, will include a legible copy of the soldier's DA Form 2 (Personnel Qualification Record—Part I) and DA Form 2–1 (Personnel Qualification Record—Part II).

g. Waiver approval authority set forth in this regulation requires the personal signature of the commander or officer specified. This authority may not be further delegated unless specifically authorized by this regulation. However, any commander above the designated approval authority may elevate the approval authority to his or any subordinate level of command considered appropriate. (*Example:* a MACOM commander may raise the approval level of any waiver, except those approvable by HQDA, to the MACOM level or to any subordinate commander he considers appropriate.)

h. *(Rescinded.)*

## 2–27. Validity period

a. Unless otherwise stated in the instrument, waivers or exceptions to policy are valid only to provide continuous unbroken service to in-Service personnel.

b. Waivers granted to extend an enlistment will not satisfy the requirement for a waiver for reenlistment at a later date.

c. Waivers granted for ~~AC~~ reenlistment or extension will also be valid for immediate entry into the Army Reserve.

## 2–28. Administrative instructions

a. *Use of electrical communications.* The use of electrical communications to request waivers is discouraged. The use of electrical communications to request exceptions to policy is prohibited

# EXHIBIT B

Army Regulation 601–280

Personnel Procurement

# Army Retention Program

Headquarters
Department of the Army
Washington, DC
29 September 1995

**Unclassified**

will then determine whether the soldier is eligible for continued Active Army service. Soldiers must meet the basic eligibility criteria outlined in this chapter.

**3-4. Article 84, Uniform Code of Military Justice (UCMJ)**
All soldiers involved in processing reenlistments will pay close attention to Article 84, UCMJ. This article provides that, "Any person subject to the code who effects an enlistment or appointment in, or a separation from the Armed Forces of any person who is known to him to be ineligible for such enlistment, appointment, or separation, because it is prohibited by law, regulation, or order, shall be punishable as a court martial may direct." Commanders who receive reports or who suspect that a violation of Article 84, UCMJ, may have occurred will conduct or cause to be conducted an inquiry under Rule for Courts-Martial 303. Based on the result of such inquiry, commanders will take such disciplinary or administrative action as may be considered appropriate. Commanders and reenlistment personnel must determine the soldier's eligibility in accordance with this regulation. This is accomplished through manual screening of personnel records, not through use of automated computer systems such as RETAIN. Soldiers who have been reenlisted in violation of the Article 84, UCMJ, will be processed according to AR 635-200, chapter 7 or 14, as appropriate.

**3-5. Reenlistment qualification steps**
Qualifying a soldier for reenlistment entails five steps. These steps must be followed to ensure that soldiers being reenlisted meet all statutory and regulatory requirements for immediate reenlistment.
  *a.* Determination of eligibility for discharge.
  *b.* Determination of eligibility for reenlistment.
  *c.* Determination of eligibility for waiver(s) if necessary.
  *d.* Determination of reenlistment periods.
  *e.* Determination of eligibility for reenlistment option(s).

**3-6. Qualification of a soldier for discharge**
A soldier may be discharged for immediate reenlistment at the points in time shown below.
*Note.* Except when a soldier is flagged, has a personnel action for MOS reclassification pending (includes mandatory reclassification for loss of qualifications as defined by AR 600-200, paragraph 2-31c (3), (4), and (5), or has a request for joint domicile (either spouse) pending. Soldiers may not reenlist until the pending personnel action has been completed. Soldiers cannot be discharged for the purpose of immediate reenlistment when they are within 3 months of their ETS, except for soldiers whose application has been approved by Cdr, PERSCOM, Retention Management Division (TAPC-EPR).
Soldiers pending voluntary reassignment may only reenlist under Option Table E-1. Soldiers notified of selection for direct appointment or commission, or attendance at an officer training program such as Officer Candidate School or Warrant Officer Flight Training, will be processed under paragraphs 4-6c(3) and 4-2d of this regulation.
  *a.* A soldier may be discharged for immediate reenlistment at any point not earlier than 8 months and not later than 3 months 7 prior to their ETS. Election of this discharge option is available to all reenlistment eligible soldiers. To qualify for cashing in accrued leave in conjunction with reenlistment, discharge can not be earlier than 3 months before ETS. For example:

| | |
|---|---|
| Soldier's ETS date | 94 12 25 |
| (subtract 3 months) | 00 03 00 |
| Earliest date of discharge to qualify for accrued leave pay | 94 09 25 |

*Note.* The date computed is the earliest day of discharge, not reenlistment; day of reenlistment must be the day following day of discharge.
  *b.* A soldier may be discharged for immediate reenlistment at any time prior to 8 months before ETS when the soldier incurs a service remaining requirement imposed by HQDA that can not be met on

the current enlistment or enlistment as extended. Soldiers electing this discharge option are not eligible to cash in accrued leave. Soldiers must be advised of the benefits or disadvantages of electing an extension of enlistment instead of discharge and immediate reenlistment. The new period of reenlistment must not expire earlier than the previous ETS.
  *c.* Soldiers may be discharged for immediate reenlistment upon completion of training under the Bonus Extension and Retraining (BEAR) Program. The new period of reenlistment must not expire earlier than the previous ETS.

**3-7. Commander's evaluation of soldier for continued service**
  *a.* Commanders should evaluate all potential reenlistees under the "whole person" concept. Those soldiers who are not considered suited for future military service should be considered for immediate administrative separation or initiation of a bar to reenlistment under the provisions of chapter 8 of this regulation.
  *b.* Factors considered under the "whole person" concept are listed below. This is a commander's guideline to assist in evaluating the potential reenlistee.
  (1) Recent nonjudicial punishment.
  (2) Repetitive nonjudicial punishment.
  (3) Low aptitude area scores.
  (4) Low education achievement in combination with a pattern of disciplinary incidents.
  (5) Low evaluation reports.
  (6) Low Common Task Test (CTT) or poor performance during commander's evaluation under the Individual Training Program (ITEP).
  (7) Slow rank progression resulting from a pattern of marginal conduct or performance.
  (8) Potential for further service.
  (9) A combination of any or all of the above factors.

**3-8. Qualification of a soldier for reenlistment**
  *a. Age (Non-waivable).*
  (1) A soldier must be 18 years of age or older on the date of reenlistment and not more than 55 years old at the new ETS. Soldiers who will have completed 20 or more years of active Federal Service on their 55th birthday will not be reenlisted or extended for any period that will expire after the last day of the month in which the soldier reaches age 55.
  (2) Soldiers who will not have completed 20 years of active Federal service on their 55th birthday may be reenlisted or extended to complete 20 years' active Federal service provided they meet the below listed requirements.
  *(a)* The soldier is an enlisted soldier otherwise qualified for reenlistment, or is an Army commissioned or warrant officer released from active duty.
  *(b)* The soldier can complete 20 years active Federal service before his or her 60th birthday.
  *b. Citizenship (Non-waivable).* A soldier must meet one of the following criteria:
  (1) Be a United States citizen. Citizens of the Commonwealth of the Northern Marianas Islands (Rota-Saipan-Tinan) are U.S. citizens.
  (2) Be an alien who has been lawfully admitted to the United States for permanent residence. Aliens who will have in excess of 8 years of Federal military service (excluding the DEP after 1 January 1985) at the expiration of the period for which they are seeking to reenlist are disqualified from reenlistment.
  (3) Be an American Samoan National.
  (4) Be a citizen of the Federal States of Micronesia (FSM), the Republic of the Marshall Island (RMI), or the Republic of Palau (ROP). By presidential proclamation and a joint resolution of Congress, these citizens are authorized and have a right to enlist and serve in the U.S. Armed Forces. Soldiers from these islands may reenlist without being required to become U.S. citizens.
  *c. Trainability (Non-waivable).*

(1) Initial term soldiers requesting reenlistment must possess aptitude area scores of 85 or higher in any three aptitude areas of the Armed Services Vocational Aptitude Battery (ASVAB). Soldiers in the grade of SGT or higher are exempt from these score requirements.

(2) Soldiers on their second or subsequent enlistment are exempt from all aptitude area score requirements.

(3) Aptitude area scores, as shown on the DA Form 2–1 (Personnel Qualification Record, Part II), will be used to determine reenlistment eligibility.

(4) Initial term soldiers who did not attain the aptitude scores required above may be retested on the Armed Forces Classification Test (AFCT) under AR 611–5 and DA Pam 600–8.

*d. Education (Nonwaivable).*

(1) Soldiers must possess a GED, high school diploma, or one year of college or more to be eligible for reenlistment. Soldiers must also meet all educational requirements of the specific option for which reenlisting.

(2) Special training qualifications may be determined from official transcripts, or by a statement signed by the soldier certifying that he or she has the specific school training or courses required. Soldiers signing these statements who are found not to have the schooling required will have committed a fraudulent reenlistment.

(3) Initial term soldiers who do not possess a GED, high school diploma, or higher degree, and incur a DA imposed Service Remaining Requirement, are exempt from (1) and (2) above.

*e. Medical and Physical Fitness.*

(1) Soldiers must meet the medical retention standards of chapter 3, AR 40–501, or have been found physically qualified to perform in his or her PMOS per AR 635–40. Soldiers who have been found qualified for retention by a Physical Evaluation Board will not be denied reenlistment under this provision. Soldiers pending MMRB action per AR 600–60 will not be reenlisted until the MMRB action has been finalized; however, they may be extended for the minimum time necessary to complete the MMRB action.

(2) Soldiers must have passed their most recent Army Physical Fitness Test (APFT) per AR 350–15 and FM 21–20, within the nine-month period prior to date of reenlistment.

*(a)* Soldiers with permanent physical profiles which prevent taking the APFT are exempt from the requirements of (2) above.

*(b)* Soldiers with temporary physical profiles (profile can not exceed 12 months per AR 40–501) which preclude administration of an APFT, but who have passed an APFT within the preceding 9 months to the date of awarding of the profile, are eligible for reenlistment.

*(c)* Soldiers with temporary physical profiles who are not qualified for reenlistment under *(b)* above may be extended for not more than 7 months to allow removal of the profile and administration of an APFT. Extensions beyond 7 months must be approved by the GCMCA or first general officer in the soldier's normal chain of command, whichever is in the most direct line to the soldier.

*(d)* Soldiers who do not meet the qualifications of *(2)(a)*, *(b)*, or *(c)* above, and are unable to be administered an APFT through no fault of their own, may be granted waivers by the GCMCA or the first general officer in their chain of command.

*f. Weight Control (Nonwaivable).* Soldiers (except those in para (2) below) placed in the Weight Control Program, per AR 600–9, are not allowed to extend or reenlist unless they are in the Active Army, and—

(1) Have a temporary or permanent physical medical condition that precludes weight loss, are otherwise physically fit, and have performed their duties in a satisfactory manner. The nature of ongoing treatment must be documented. Extensions for temporary medical conditions must be for the minimum time necessary to correct the condition and achieve the required weight loss. Extensions or reenlistments are authorized for soldiers with permanent medical conditions that preclude attainment of weight standards and disability separation is not appropriate. The approval authority for these exceptions is GCMCA or the first general officer in the soldier's normal chain of command.

(2) Soldiers who are under medical care for pregnancy (includes the birth of the child plus 7 months) and exceed the weight standards of AR 600–9—

*(a)* May reenlist or extend if they are otherwise qualified and were not in the Weight Control Program immediately prior to pregnancy. Extension period will not exceed 7 months from the birth of the child.

*(b)* May reenlist only if they are otherwise qualified and were in the Weight Control Program immediately prior to their pregnancy. Extension period will not exceed 7 months from the birth of the child.

*g. Grade (Non-waivable)*

(1) A soldier may not exceed the retention control points as shown below, by more than 29 days before expiration of contracted service (reenlistment or extension), see table 3–1 below.

**Table 3–1**
**Retention control points**

| Grade | Total active service in years |
|---|---|
| PVT-PFC | 3 |
| CPL/SPC | 8 |
| CPL/SPC (Promotable) | 8 |
| SGT | 13 |
| SGT (Promotable) | 15 |
| SSG | 20 |
| SSG (Promotable) | 22 |
| SFC | 22 |
| SFC (Promotable) | 24 |
| 1SG/MSG | 24 |
| 1SG/MSG (Promotable) | 30 |
| CSM/SGM | 30 |

Notes:
[1] Soldiers in the grade of CPL/SPC (Promotable) who enlisted for 6 years and were paid an enlistment bonus may reenlist for 3 years to avoid recoupment of their enlistment bonus.

[2] The RCP for soldiers in the grades of SSG(P) and above who are assigned to special bands (West Point Band, The Army Band, and the Army Field Band), differs from the above table. They are: SSG(P) and SFC 30 years; SPC(P) and 1SG/MSG 33 years; and 1SG/MSG(P) and CSM/SGM 35 years.

[3] Command Sergeants Major serving in nominative positions where the commander is a LTG or GEN are authorized retention beyond 30 years. These soldiers will not be retained beyond 35 years total active federal service.

(2) All soldiers who reach their RCP during their current enlistment agreement, either through length of service or reduction in rank, must separate not later than their original ETS.

(3) Soldiers in the grade of PFC or below:

*(a)* On their initial enlistment of less than 3 years, (that is, original enlistment of 2 years and 16 weeks) if otherwise qualified, to include those with approved waivers, are reenlistment eligible. Soldiers in the grade of PFC will be allowed to reenlist for a maximum of 4 years. Total active service will not exceed 6 years Active Federal Service.

*(b)* Who incur a DA imposed service remaining requirement, if otherwise qualified to include those with approved waivers, are eligible for extension/reenlistment. The extension will only be for the time necessary to fulfill the service remaining requirement. Total active service will not exceed 6 years.

*(c)* Who are reduced in grade are not authorized reenlistment or extension under *(a)* or *(b)* above.

(4) Grade eligibility does not apply to soldiers selected for attendance at an officer training program (that is, Officer Candidate School or Warrant Officer Flight Training).

*h. Marital status and number of dependents.* A soldier's marital status and number of dependents is immaterial.

## 3–9. Moral and administrative disqualifications

*a.* Waivable disqualifications are listed below.

(1) Soldiers who have served less than 12 months after graduation from the U.S. Army Correctional Regional Activity are not eligible

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WILLIAM D. POOLE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.  07-cv-01320** |
| | ) | |
| **PETE GEREN,** | ) | |
| | ) | |
| **Secretary of the Army** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### DECLARATION OF THOMAS L ERICKSON

In accordance with 28 U.S.C. § 1746, I, Thomas L. Erickson, make the following declaration in the above-cited case.

1.  I am the Branch Chief of Enlisted Professional Development.  In this capacity, I am directly responsible for enlisted promotions, enlisted separations, and enlisted retention.

2.  I have read the claims of Plaintiff William D. Poole in the above captioned case.

3.  As Plaintiff Poole stated in his complaint and the ABCMR cited in their decision, the Retention Control Point (RCP) was fifteen years for both promotable and non-promotable E-5/Sergeants (SGTs) from April 1, 1997 through April 30, 1999.

4.  A message by the Headquarters of the Department of the Army, Deputy Chief of Staff for Personnel was published on November 27, 1996 which implemented the fifteen year RCP policy for all E-5/SGTs effective April 1, 1997.

5.  After a diligent search it has been determined this type of messages was not officially archived until 2005.  The message in question was canceled with no electronic record kept on file.  The official copy of the message was destroyed when the Pentagon was attacked on September 11, 2001.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 9th day of November 2007 at Arlington, Virginia.

THOMAS L. ERICKSON
Lieutenant Colonel, U.S. Army

# EXHIBIT D

Army Regulation 601–280

Personnel Procurement

# Army Retention Program

Headquarters
Department of the Army
Washington, DC
31 March 1999

## UNCLASSIFIED

inquiry, commanders will take such disciplinary or administrative action as may be considered appropriate. Commanders and reenlistment personnel must determine the soldier's eligibility in accordance with this regulation. This is accomplished through manual screening of personnel records, not through use of automated computer systems such as RETAIN. Soldiers who have been reenlisted in violation of the Article 84, UCMJ, will be processed according to AR 635-200, chapter 7 or 14, as appropriate.

## 3–5. Reenlistment qualification steps
Qualifying a soldier for reenlistment entails five steps. These steps must be followed to ensure that soldiers being reenlisted meet all statutory and regulatory requirements for immediate reenlistment.
  *a.* Determination of eligibility for discharge.
  *b.* Determination of eligibility for reenlistment.
  *c.* Determination of eligibility for waiver(s) if necessary.
  *d.* Determination of reenlistment periods.
  *e.* Determination of eligibility for reenlistment option(s).

## 3–6. Qualification of a soldier for discharge
A soldier may be discharged for immediate reenlistment at the points in time shown below.

*Note.* Except when a soldier is flagged, has a personal action for MOS reclassification pending (includes mandatory reclassification for loss of qualifications as defined by AR 614-200, paragraph 3-13a (3) or has a request for joint domicile (either spouse) pending. Soldiers may not reenlist until the pending personnel action has been completed. Soldiers cannot be discharged for the purpose of immediate reenlistment when they are within 3 months of ETS, except for soldiers whose application has been approved by Cdr., PERSCOM, Retention Management Division (TAPC-EPR). Soldiers promoted to SGT or SSG within the 3 month window may, with unit commander approval, reenlist for any option for which qualified. Request for exception to 3 month windows will be forwarded through command channels to the first Colonel in the soldier's chain of command. If approval is supported, commander will provide his/her comments, attached as an endorsement to DA Form 3340-R, through the installation senior Career Counselor to Commander, PERSCOM, TAPC-EPR-P, via RETAIN.Soldiers notified of selection for direct appointment or commission, or attendance at an officer training program such as Officer Candidate School; or Warrant Officer Flight Training, will be processed under paragraphs 4-2d and 4-6c(3) of this regulation.

  *a.* A soldier may be discharged for immediate reenlistment at any point not earlier than 12 months and not later than 3 months prior to their ETS. Election of this discharge option is available to all reenlistment eligible soldiers. To qualify for cashing in accrued leave in conjunction with reenlistment, discharge can not be earlier than 3 months before ETS. For example:

Soldier's ETS date ..... 94 12 25

(subtract 3 months) ..... 00 03 00

Earliest date of discharge to qualify for accrued leave pay equals 94 09 25

*Note.* The date computed is the earliest day of discharge, not reenlistment; day of reenlistment must be the day following day of discharge

  *b.* A soldier may be discharged for immediate reenlistment at any time prior to 12 months before ETS when the soldier incurs a service remaining requirement imposed by HQDA that can not be met on the current enlistment or enlistment as extended. Soldiers electing this discharge option are not eligible to cash in accrued leave. Soldiers must be advised of the benefits or disadvantages of electing an extension of enlistment instead of discharge and immediate reenlistment. The new period of reenlistment must not expire earlier than the previous ETS.
  *c.* Soldiers may be discharged for immediate reenlistment upon completion of training under the Bonus Extension and Retraining (BEAR) Program. The new period of reenlistment must not expire earlier than the previous ETS.

## 3–7. Commander's evaluation of soldier for continued service
  *a.* Commanders should evaluate all potential reenlistees under the "whole person" concept. Those soldiers who are not considered suited for future military service should be considered for immediate administrative separation or initiation of a bar to reenlistment under the provisions of chapter 8 of this regulation.
  *b.* Factors considered under the "whole person" concept are listed below. This is a commander's guideline to assist in evaluating the potential reenlistee.
    (1) Recent nonjudicial punishment.
    (2) Repetitive nonjudicial punishment.
    (3) Low aptitude area scores.
    (4) Low education achievement in combination with a pattern of disciplinary incidents.
    (5) Low evaluation reports.
    (6) Slow rank progression resulting from a pattern of marginal conduct or performance.
    (7) Potential for further service.
    (8) A combination of any or all of the above factors.

## 3–8. Qualification of a soldier for reenlistment
  *a. Age (Non-Waivable).*
    (1) A soldier must be 18 years of age or older on the date of reenlistment and not more than 55 years old at the new ETS. Soldiers who will have completed 20 or more years of active Federal Service on their 55th birthday will not be reenlisted or extended for any period that will expire after the last day of the month in which the soldier reaches age 55.
    (2) Soldiers who will not have completed 20 years of active Federal service on their 55th birthday may be reenlisted or extended to complete 20 years' active Federal service provided they meet the below listed requirements.
    *(a)* The soldier is an enlisted soldier otherwise qualified for reenlistment, or is an Army commissioned or warrant officer released from active duty.
    *(b)* The soldier can complete 20 years active Federal service before his or her 60th birthday.
  *b. Citizenship (Non-waivable).* (See para 4-9k.) A soldier must meet one of the following criteria:
    (1) Be a United States citizen. Citizens of the Commonwealth of the Northern Marianas Islands (Rota-Saipan-Tinan) are U.S. citizens.
    (2) Be an alien who has been lawfully admitted to the United States for permanent residence. Aliens who will have in excess of 8 years of Federal military service (excluding the DEP after 1 January 1985) at the expiration of the period for which they are seeking to reenlist are disqualified from reenlistment.
    (3) Be an American Samoan National.
    (4) Be a citizen of the Federal States of Micronesia (FSM), the Republic of the Marshall Island (RMI), or the Republic of Palau (ROP). By presidential proclamation and a joint resolution of Congress, these citizens are authorized and have a right to enlist and serve in the U.S. Armed Forces. Soldiers from these islands may reenlist without being required to become U.S. citizens.
  *c. Trainability (Nonwaivable).*
    (1) Initial term soldiers requesting reenlistment must possess aptitude area score of 85 or higher in any three aptitude areas of the Armed Services Vocational Aptitude Battery (ASVAB). Soldiers in the rank of SGT or higher are exempt from the score requirements.
    (2) Soldiers on their second or subsequent enlistment are exempt from all aptitude area score requirements.
    (3) Aptitude area scores, as shown on the DA Form 2-1 (Personnel Qualification Record, Part II), will be used to determine reenlistment eligibility.
    (4) Initial term soldiers who did not attain the aptitude score required above may be retested on the Armed Forces Classification Test (AFCT) under AR 611-5 and DA Pam 600-8.
  *d. Education (Nonwaivable).*
    (1) Soldiers must possess a GED, high school diploma, or 15 or

more semester hours of college to be eligible for reenlistment. Soldiers must also meet all educational requirements of the specific option for which reenlisting.

(2) Special training qualifications may be determined from official transcripts, or by a statement signed by the soldier certifying that he or she has the specific school training or courses required. Soldiers signing these statements who are found not to have the schooling required will have committed a fraudulent reenlistment.

(3) Initial term soldiers who do not possess a GED, high school diploma, or 15 or more semester hours of college, and incur a DA imposed Service Remaining Requirement, are exempt from (1) and (2) above.

*e. Medical and Physical Fitness.*

(1) Soldiers must meet the medical retention standards of chapter 3, AR 40–501, or have been found physically qualified to perform in his or her PMOS per AR 635–40. Soldiers who have been found qualified for retention by a Physical Evaluation Board will not be denied reenlistment under this provision. Soldiers pending MMRB action per AR 600–60 will not be reenlisted until the MMRB action has been finalized; however, they may be extended for the minimum time necessary to complete the MMRB action.

(2) Soldiers must have passed their most recent Army Physical Fitness Test (APFT), within the nine-month period prior to date of reenlistment.

*(a)* Soldiers with permanent physical profiles which prevent taking the APFT are exempt from the requirements of (2) above.

*(b)* Soldiers with temporary physical profiles (profile can not exceed 12 months per AR 40–501) which preclude administration of an APFT, but who have passed an APFT within the preceding 9 months to the date of awarding of the profile, are eligible for reenlistment.

*(c)* Soldiers with temporary physical profiles who are not qualified for reenlistment under (b) above may be extended for not more than 7 months to allow removal of the profile and administration of an APFT. Extensions beyond 7 months must be approved by the GCMCA or first general officer in the soldier's normal chain of command, whichever is in the most direct line to the soldier.

*(d)* Soldiers who do not meet the qualifications of (2) (a), (b), or (c) above, and are unable to be administered an APFT through no fault of their own, may be granted waivers by the GCMCA or the first general officer in their chain of command.

*f. Weight Control (Nonwaivable).* Soldiers (except those in para (2) below) placed in the Weight Control Program, per AR 600–9, are not allowed to extend or reenlist unless they are in the Active Army, and—

(1) Have a temporary or permanent physical medical condition that precludes weight loss, are otherwise physically fit, and have performed their duties in a satisfactory manner. The nature of ongoing treatment must be documented. Extensions for temporary medical conditions must be for the minimum time necessary to correct the condition and achieve the required weight loss. Extensions or reenlistments are authorized for soldiers with permanent medical conditions that preclude attainment of weight standards and disability separation is not appropriate. The approval authority for these exceptions is GCMCA or the first general officer in the soldier's normal chain of command.

(2) Soldiers who are under medical care for pregnancy (includes the birth of the child plus 7 months) and exceed the weight standards of AR 600–9.

*(a)* May reenlist or extend if they are otherwise qualified and were not in the Weight Control Program immediately prior to pregnancy. Extension period will not exceed 7 months from the birth of the child.

*(b)* May extend only if they are otherwise qualified and were in the Weight Control Program immediately prior to their pregnancy. Extension period will not exceed 7 months from the birth of the child.

*g. Rank (Non-waivable).*

(1) A soldier may not exceed the retention control points as shown below, by more than 29 days before expiration of contracted service (reenlistment or extension), see table 3–1 below.

**Table 3–1**
**Retention control points**

| Rank | Total Active Service in Years |
| --- | --- |
| PVT-PFC | 3 |
| CPL/SPC | 10 |
| CPL/SPC (Promotable) | 15 |
| SGT | 15 |
| SGT (Promotable) | 20 |
| SSG | 20 |
| SSG (Promotable) | 22 |
| SFC | 22 |
| SFC (Promotable) | 26 |
| 1SG/MSG | 26 |
| 1SG/MSG (Promotable) | 30 |
| CSM/SGM | 30 |

Notes:
[1] The RCP for soldiers in the ranks of SSG(P) and above who are assigned to special bands (West Point Band, The Army Band, The Fife and Drum Corps and the Army Field Band) differs from the above table. They are: SSG(P) and SFC 30 years; SFC(P) and 1SG/MSG 33 years; and 1SG/MSG(P) and CSM/SGM 35 years.
[2] Command Sergeants Major serving in nominative positions where the commander is a LTG or GEN are authorized retention beyond 30 years. These soldiers will not be retained beyond 35 years total active federal service.

(2) Except for soldiers serving indefinite reenlistments, soldiers who reach their RCP during their current enlistment agreement, either through length of service, reduction in rank, or by removal from a promotion list, whether voluntary or involuntary, may serve until contracted Expiration Term of Service (ETS), unless they are separated earlier under applicable administrative, physical disability, or UCMJ separation provisions. Soldiers in this category who are eligible may apply for retirement. Soldiers with less than 18 years AFS serving indefinite reenlistments who exceed RCP as the result of a reduction in rank may serve to minimum retirement eligibility

unless they are separated earlier under applicable administrative, physical disability, or UCMJ separation provisions.

(3) As an exception, Soldiers in the rank of PFC or below:

*(a)* Who are in the rank of PFC on their initial enlistment of 3 or less years, if otherwise qualified, to include those with approved waivers, and reenlist prior to 26 months total active service, are eligible to reenlist for a period not to exceed 6 years 29 days.

*(b)* Who are eligible for a SRB and in the rank of PFC on their initial enlistment of less than 4 years, (such as, original enlistment of 2 years and 26 weeks) if otherwise qualified, to include 21

months continuous Active Federal Service (other that ADT), and those with approved waivers, are eligible to reenlist for a period not to exceed 5 years to become eligible to receive an SRB. Total active service will not exceed 7 years and 29 days.

*(c)* Who incur a DA imposed service remaining requirement, if otherwise qualified to include those with approved waivers, are eligible for extension/reenlistment. The extension will only be for the time necessary to fulfill the service remaining requirement. Total active service will not exceed 7 years 29 days. Prior service soldiers may exceed 7 years 29 days. These soldiers are permitted to reenlist for the time necessary to fulfill the service remaining requirement, not to exceed the RCP for the next higher rank.

*(d)* Who are reduced in rank are not authorized reenlistment or extension under (a) (b) or (c) above.

(4) Rank eligibility does not apply to soldiers selected for attendance at an officer training program (that is, Officer Candidate School or Warrant Officer Flight Training).

*h.* Marital status and number of dependents. A soldier's marital status and number of dependents is immaterial.

## 3–9. Moral and administrative disqualifications

*a.* Waivable disqualifications are listed below.

Note. Disqualifications not previously revealed will be processed per AR 635-200. They do not require a subsequent waiver. Only those disqualifications occurring during the current term of enlistment are considered under this paragraph. Requests for waivers should be submitted far enough in advance of the requested reenlistment date to permit continuous duty. Soldiers denied waivers under this section are in a nonpromotable status per AR 600-8-19.

(1) Soldiers who have served less than 12 months after graduation from the U.S. Army Correctional Regional Activity are not eligible to reenlist. For soldiers who need more service to complete this 12-month period, see paragraph 4-9f.

(2) There may be cases in which this regulation does not prescribe a waiver process for a certain disqualification, and a waiver is not prohibited by this regulation. If so, soldiers who are otherwise qualified for reenlistment may be recommended by the unit commander, through command channels, to Commander, PERSCOM, TAPC-EPR.

(3) A one-time occurrence of AWOL or lost time for soldiers with 10 or less years of active federal service may be approved as shown below:

*(a)* One through 15 days AWOL or lost time: Commanders (rank LTC) of battalions or battalion sized units, or Special Court-Martial Convening Authority (SPCMA) as appropriate.

*(b)* Sixteen through 30 days AWOL or lost time: The first General Officer or the General Court-Martial Convening Authority (GCMCA) whichever is in the most direct line to the soldier.

*(c)* Waivers for AWOL or lost time exceeding 30 days will be submitted to the Commander, PERSCOM (TAPC-EPR). This authority may not be further delegated.

*b.* Soldiers advanced/promoted or selected for promotion by a HQDA promotion board for SFC-SGM or attaining semi-centralized promotion list standing to SGT or SSG after AWOL/lost time or courts martial are exempt from this disqualification. For reenlistment purposes, soldiers recommended by their commander who successfully appear before a promotion board to SGT or SSG or who are recommended by their commander and advanced to SPC and below will be considered to possess a waiver of promotion criteria. No further waiver is required.

*c.* Soldiers with the following disqualifications are ineligible for immediate reenlistment. Requests for waiver will not be submitted, unless an exception is authorized below. These soldiers are in a nonpromotable status per AR 600-8-19. These soldiers may be eligible to apply for RA enlistment per AR 601-210 at a later date.

(1) Soldiers being separated from current term of service to accept commissioned or warrant officer appointment.

(2) Soldiers being separated from current term of service with a locally imposed Bar to Reenlistment in effect.

(3) Soldiers failing to meet retention standards of AR 600-9.

(4) Soldiers being processed for involuntary separation under provisions of AR 635-200, chapters 5, 7, 9, 11, 13, 14, 15, or 18; or being processed for voluntary discharge under provisions of AR 635-200, chapter 10.

(5) Soldiers in a nonpromotable status per AR 600-8-19.

(6) Soldiers selected for early release by HQDA Selective Early Retirement Board (SERB).

(7) Soldiers being separated for physical disability with entitlement to receive disability severance pay.

(8) Soldiers being separated for physical disability (Existed Prior to Service (EPTS), established by Physical Evaluation Board (PEB) proceedings (not entitled to severance pay)).

(9) Soldiers being separated with less than 20 years active Federal service by reason of physical disability.

(10) Soldiers being separated as conscientious objectors before completion of the term of service under AR 600-43.

(11) Soldiers who have completed their terms of service and are being separated as conscientious objectors, or soldiers with religious convictions that preclude unrestricted assignments (see note 3 for exceptions).

(12) Soldiers who have a DA Form 4991-R (Declination of Continued Service Statement) in effect. A copy of DA Form 4991-R is available at the back of this regulation for reproduction purposes. It will be reproduced locally on 81/2 by 11 inch paper.

(13) Aliens who will have in excess of 8 years of Federal Military Service at the expiration of the period for which they are seeking to reenlist, are disqualified from reenlistment. As an exception see paragraph 3-8b (3) or (4) and paragraph 4-7k.

(14) Soldiers currently enrolled in the Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) are not allowed to reenlist. Upon successful completion of the program according to AR 600-85, the soldier will be allowed to reenlist without waiver if he or she is otherwise qualified for reenlistment. As an exception (see paragraph 4-9l), soldiers who need more service to complete the program may be extended for the minimum number of months necessary, by the commander exercising Special Court-Martial Convening Authority (SPCMCA). The reason cited on the DA Form 1695 will be "In the best interest of the Service." Commanders are not required to retain soldiers on active duty to complete the total ADAPCP if, in their opinion, the probability for total rehabilitation does not warrant retention.

(15) Soldiers with tatoos or other disqualifications per AR 670-1 or other applicable regulations.

(16) Soldiers who have lost PMOS qualification per AR 614-200, paragraph 3-18a(3).

(17) Soldiers with a court-martial conviction during their present term of service, unless promoted or advanced per AR 600-8-19.

*d.* Rare and unusual cases (as determined by the commander to be meritorious and worthy of special consideration) may be submitted through command channels to Commander, PERSCOM for an exception to policy.

Note. Soldiers classified as 1-A-O noncombatants per AR 600-43 with a PMOS in the medical career management field and who are otherwise qualified, may reenlist for an option that will provide for continued duty in the medical career management field.

*e.* Soldiers with the disqualifications listed in paragraphs (1) through (11) below are ineligible for Active Army reenlistment at any time. Requests for waiver or exception to policy will not be granted. These soldiers are also ineligible to apply for Active Army enlistment under AR 601-210 at a later date.

(1) Insane soldiers.

(2) Soldiers having a history of psychotic disorders.

(3) Soldiers of questionable moral character and a history of antisocial behavior, sexual perversion, or homosexual conduct.

(4) Soldiers being processed for involuntary separation under any provision of AR 635-200.

(5) Soldiers currently serving as Reserve commissioned or warrant officers who are being separated and who do not have prior RA enlisted service.

# EXHIBIT E

Army Regulation 600–8–19

Personnel General

# Enlisted Promotions and Reductions

Headquarters
Department of the Army
Washington, DC
01 November 1991

**Unclassified**

# Chapter 1
## Introduction

### Section I
### Overview

### 1–1. Purpose
This regulation prescribes the enlisted promotions and reductions function of the military personnel system. It is linked to AR 600–8 and provides principles of support, standards of service, policies, tasks, rules, and steps governing all work required in the field to support promotions and reductions. It provides the objectives of the Army's Enlisted Promotions System, which include filling authorized enlisted spaces with the best qualified soldiers. It also provides for career progression and rank that is in line with potential, recognizing the best qualified soldier that will attract and retain the highest caliber soldier for a career in the Army. Additionally, it precludes promoting the soldier who is not productive or not best qualified, thus providing an equitable system for all soldiers.

### 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

### 1–4. Responsibilities
a. The Deputy Chief of Staff for Personnel (DCSPER). The DCSPER will—
(1) Serve as the Department of the Army (DA) policy proponent of the Army promotion and reduction system.
(2) Establish policy, procedures, and standards for matters concerning promotions and reductions and may make exceptions to this regulation and further delegate authority for exceptions to major commands.
(3) Exercise DA responsibility on all matters concerning promotions and reductions.
(4) Serve as the senior Army official on all matters concerning promotions and reductions.
b. The Judge Advocate General (TJAG). TJAG will, upon request, review DA administrative changes to verify the legality of prescribed policies and changes.
c. Commanding General, Total Army Personnel Command (CG, PERSCOM). The CG, PERSCOM, will conduct and supervise all enlisted personnel functions prescribed in this regulation.
d. The Commandant, Adjutant General School. The Commandant, Adjutant General School, will be responsible for branch implementation of this regulation.

### 1–5. Manpower resources
Manpower Staffing Standards System (MS3) recognizes the promotion and reduction function as being the functional responsibility of the Promotion Work Center of the Personnel Service Company (PSC). Manpower officials will use the workload factors (obtained from MS3) to determine the manpower authorizations.

### 1–6. Levels of work
a. Most personnel work in the field is performed at three primary levels: unit, battalion, and installation (or some equivalent in the tactical force). The focus of the guidance in this regulation is on those levels.
(1) Unit– and battalion–level work is straightforward as to where it is performed.
(2) Installation–level work is subdivided into work centers. This regulation identifies the work center required to perform the work for manpower purposes.
b. This regulation will typically address the following levels of work:
(1) *Soldiers.* Work beginning with input from a soldier.

(2) *Unit.* Work executed at unit level.
(3) *Battalion.* Work executed at battalion level.
(4) *Command and staff (C&S).* Work executed within the chain of command (other than battalion). The specific C&S work center covered by this regulation is plans and staff support (SS).
(5) *Personnel support (PS).* Work executed in a personnel support organization. The specific PS work centers covered by this regulation are enlisted and flagged records (ENRC), Personnel Actions Branch (PAB), and in– and out–processing (IOPR).

### Section II
### Principles and Standards

### 1–7. Principles of support
The military personnel system will—
a. Provide a centralized promotion selection process in peacetime for promotion to the ranks of sergeant first class (SFC) and above.
b. Provides a semicentralized promotion selection process in peacetime for promotion to the ranks of sergeant (SGT) and staff sergeant (SSG).
c. Authorize commanders to advance soldiers to the ranks of specialist (SPC) or corporal (CPL) and below.
d. Retain Army–wide equity during hostilities as long as the supporting systems (that is, the centralized and semicentralized process) are practical and affordable.
e. Support the Army's personnel life cycle function of professional development.

### 1–8. Standards of service
a. The enlisted promotion system is—
(1) A wartime military personnel function.
(2) Resourced in the tables of organization and equipment (TOE) PSC.
(3) The functional responsibility of the Personnel Actions Work Center (and its tactical counterpart).
b. To support the semicentralized promotion system, the PSC will—
(1) Compute scores monthly to support the initial selection process.
(2) Recompute all scores annually. This will be accomplished 1 year after board appearance, last reevaluation, or last recomputation–whichever is later.
(3) Recompute scores on demand to support reevaluations.
(4) Adjust scores when authorized.
c. PERSCOM will advance soldiers to the rank of private E2 (PV2) with 6 months time in service (TIS) automatically; unit commanders will take action to advance all other soldiers on an individual basis.
d. The PSC will support the centralized system by ensuring eligible enlisted soldiers are given an opportunity to review their military personnel records in the field in preparation for promotion selection boards.
e. Wartime standards (as directed by HQDA) are as follows:
(1) The centralized and semicentralized system will be discontinued on the battlefield. Decentralized promotions will be managed as a subfunction of enlisted strength management.
(2) Promotions will be based on position vacancies.
(3) Promotions will be executed, recorded, and reported by the promotion authority as soon as the battlefield situation permits.
(4) Promotion authority will be as follows:
(a) Major general in command for SFC and above.
(b) Lieutenant colonel in command for SGT and SSG.
(c) Unit commander for CPL and below.
(5) Strength managers will synchronize losses, personnel requisitions, replacement allocations, and promotion decisions.
(6) Promotion and reduction authority will be vested in the same official.

**Section III
Policy**

**1–9. Promotion authorities**

*a.* The CG, PERSCOM, is the promotion authority for CPL or SPC and below for soldiers who meet eligibility without waiver while in transit.

*b.* Principal officials of Headquarters, Department of the Army (HQDA) or Department of Defense (DOD) organizations are considered commanders for promotion authority purposes.

*c.* Company, troop, battery, and separate detachment commanders are authorized to advance soldiers to the rank of SPC and below.

*d.* Other promotion authorities are listed in chapters 3, 4, and 5.

**1–10. Nonpromotable status**

Since HQDA administers promotions to grades SFC–SGM, commanders are responsible for notifying HQDA when soldiers whose names appear on a recommended list are nonpromotable. When AR 600–8–2 applies, commanders must forward documentation to include the initial DA Form 268 (Report to Suspend Favorable Personnel Actions (FLAG), the reason for the flagging action. When the flagging action is closed, the PSC will forward to HQDA a copy of the final DA Form 268, the date the flag is closed, type of punishment received, date all punishment is completed (including all periods of suspension), and or date that a letter of reprimand was actually imposed. For all other cases, the PSC will provide HQDA with the soldier's name and a brief summary of circumstances that caused the soldier to become nonpromotable. The PSC will send a copy of the counseling statement for soldiers (SSG–MSG) holding promotion recommended list status to HQDA. All correspondence will be mailed to Commander, PERSCOM, ATTN: TAPC–MSP–E, 200 Stovall Street, Alexandria, VA, 22332–0443, and will include the soldier's sequence number, promotion military occupational specialty (PRMOS), and the date the soldier became nonpromotable. Soldiers (PV1–MSG) are nonpromotable to a higher grade when one of the following conditions exist:

*a.* Security violation.

(1) A local security violation.

(2) Violation of title 18 of the United States Code concerning sabotage, espionage, treason, sedition, or criminal subversion.

(3) Violation of Articles 94, 104, 106, 133, and 134 of the Uniform Code of Military Justice (UCMJ).

*b.* A court-martial.

*c.* Letters of admonishment, censure, or reprimand not administered as nonjudicial punishment.

*d.* An administrative reduction.

*e.* Investigation.

*f.* Charges, restraint, or investigation by military or civilian authorities.

*g.* Absence without leave (AWOL).

*h.* Entry into Weight Control Program.

*i.* Failure to pass the Army Physical Fitness Test (APFT) or to take the test within the period outlined in AR 350–15 (unless on profile).

*j.* In proceedings that may result in an administrative elimination.

*k.* A written recommendation has been sent to the promotion authority to reclassify a soldier for inefficiency or disciplinary reasons.

*l.* Ineligible for reenlistment according to AR 601–280 paragraphs 2–19, 2–20, and 2–21, or denied reenlistment through the Qualitative Management Program (QMP).

*m.* Soldiers in the grades of SPC or CPL through MSG not in receipt of an approved waiver to reenlist or has been denied a waiver to reenlist.

*n.* Soldier is without appropriate security clearance or favorable security investigation for promotion to the grade and military occupational specialty (MOS).

*o.* For promotion of SGT through SFC when soldiers fail to take a skill qualification test (SQT) due to their own fault (willful neglect or simple negligence).

*p.* Fail to quality for reenlistment or extension of their current enlistment to meet the service remaining obligation for promotion to SSG. The promotion authority will remove the names from the promotion recommended list of these soldiers once they have been determined to be ineligible to reenlist or extend.

*q.* A DA bar has been approved or a locally imposed bar to reenlistment is in effect or has been initiated and not yet approved. In addition to being nonpromotable, these soldiers are not eligible for inclusion in a DA zone of consideration or promotion consideration by field commanders.

*r.* Voluntary retirement application has been approved.

*s.* A written recommendation has been submitted to remove the soldier from a promotion recommended list.

*t.* Punished under Article 15 of the UCMJ, including suspended punishment, except that any summarized proceedings imposed according to AR 27–10, paragraph 3–16, are excluded and will not result in nonpromotable status. The soldier will be promotable on the day following completion of the period of correctional custody, restriction, extra duty, or and forfeiture of pay, whichever occurs later. For the purposes of determining nonpromotable status, periods of forfeiture of pay will be determined as follows:

(1) Periods of forfeiture are to begin on the date Article 15 punishment is imposed.

(2) For Article 15 forfeitures imposed by company grade commanders, 7 calendar days is the period of forfeiture. For example, punishment is imposed on 28 March 1989. The soldier is in a nonpromotable status from 28 March through 3 April and regains promotable status on 4 April.

(3) For Article 15 forfeitures of 1 month by field grade commanders, 15 calendar days is the period of forfeiture.

(4) For Article 15 forfeitures of 2 months imposed by field grade commanders, 45 calendar days is the period of forfeiture.

*u.* A Physical Education Board (PEB) determines that a soldier is no longer qualified for continued active service.

*v.* Selected for overseas assignment and removed from the assignment instructions for declining reenlistment or extension (AR 601–280). This applies to soldiers other than first–termers, with more than 4 years of service for pay purposes at expiration term of service (ETS). Soldiers in this category will regain promotion status on execution of oath of extension of reenlistment.

*w.* Flagged under the provisions of AR 600–8–2.

**1–11. Delay of promotion due to suspension of favorable personnel actions**

When a delay of promotion has occurred because of suspension of favorable personnel actions, the following rules apply once the final DA Form 268 has been prepared. The soldier's promotion status will be determined as follows:

*a.* If the soldier's final report is closed "Favorable" and he or she would have been promoted while the suspension of favorable personnel actions was in effect, provided otherwise eligible, he or she will be promoted. Effective date and date of rank will be that of his or her peers.

*b.* If the soldier's final report is closed "Unfavorable," and he or she would have been promoted while the suspension of favorable personnel actions was in effect, provided otherwise eligible, he or she will be promoted unless action has been initiated to remove the soldier from the recommended list before the closing date. Effective date and date of rank (DOR) will be the effective day of the removal of the suspension of personnel action.

*c.* When the soldier's final report is closed "Other" (applies to the Army Weight Control Program and the Army Physical Fitness Test) and he or she would have been promoted while suspension of favorable personnel actions was in effect, provided otherwise eligible, he or she will be promoted with a DOR and effective date will be the effective date of the removal of the suspension of favorable personnel action.

*d.* Effective date and DOR stated on a promotion instrument (orders or DA Form 4187 (Personnel Action)) will be the same. DA

Form 4187 is also electronically generated.) The effective date reflected on the promotion instrument will be the effective date used on the grade change (GRCH) transaction.

## 1–12. Precedence of relative rank
Among enlisted soldiers of the same grade of rank in active military service (to include retired enlisted soldiers on active duty) precedence or relative rank will be determined as follows:

*a.* According to DOR.

*b.* By length of active Federal service in the Army when DORs are the same.

*c.* By length of total Federal service when a and b above are the same.

*d.* By date of birth when a, b, and c above are the same; older is more senior.

## 1–13. Date of rank and effective date
*a.* The DOR for promotion to a higher grade is the date specified in the instrument of promotion.

*b.* DOR in all other cases will be established as governed by appropriate regulation.

*c.* The DOR in a grade to which reduced for inefficiency or failure to complete a school course is the same as that previously held in that grade. If reduction is to a grade higher than that previously held, it is the date the soldier was eligible for promotion under the promotion criteria set forth for that grade under this regulation. (See AR 140–158, chap 7, for U.S. Army Reserve (USAR) soldiers on active duty in the Active Guard Reserve (AGR) program.)

*d.* DOR on reduction for all other reasons is the effective date of reduction. (See AR 27–10, chap 3, when a soldier is reduced under the Manual for Courts Martial (MCM) (Article 15, UCMJ).)

*e.* The DOR and effective date will be the same. If the effective date is prior to the date of the advancement or promotion instrument in the case of—

(1) Soldiers being advanced to the ranks of PV2 through SPC, a DA Form 4187 will be initiated by the soldier's commander to the next higher advancement authority requesting that the soldier be advanced with a retroactive date, explaining the specific reason for the delay in advancement. If the next higher advancement authority approves the request, he or she will so indicate by by 1st End and direct the soldier's advancement, indicating the correct effective date. The DA Form 4187 and approved indorsement will be filed in the soldier's MPRJ.

(2) Soldiers being promoted to SGT and SSG, the promotions section will initiate a DA Form 4187 or memorandum to the promotion authority, explaining the specific reason for the delay. The DA Form 4187 or memorandum will be signed by the PSC commander or officer in charge. Once the promotion authority approves the request, he or she will so indicate by 1st End to the promotions section. The promotions section will then publish the promotion order. The promotion order will cite, along with other applicable authority, the 1st End. File the DA Form 4187 or memorandum, approved indorsement, and promotion instrument in the MPRJ.

(3) Soldiers being promoted to the grades of SFC through SGM, an annotation will be entered in the DA controlled sequence roster, explaining the specific reason for the delay. HQDA will publish the promotion order or amendment with the correct effective date.

*f.* For soldiers advanced to PV2 through SPC or promoted to SGT through SGM entitled to an effective date of advancement or promotion which exceeds 6 months prior to the date of the advancement or promotion instrument, the instrument will contain the following special instructions: Since the effective date of the promotion exceeds this instrument by more than 6 months, JUMPS will automatically pay 6 months of backpay entitlements. Your next Leave and Earning Statement (LES) should reflect such payment. Upon receipt of your LES that reflects 6 months backpay, provide your servicing Finance and Accounting Office (FAO) with a copy of the instrument. Your servicing FAO will initiate procedures which will result in your receiving any additional backpay to which you

are entitled. Note: This paragraph will not be used to promote soldiers retroactively due to errors discovered during recomputation, reevaluation, or administrative adjustment.

## 1–14. Computing time in grade and service
*a.* Compute time in grade (TIMIG) from active duty DOR set at the time of entering current grade. Use active service of one or more days when computing TIMIG for promotion eligibility. Retirement points, drill periods, and time lost will not be included.

*b.* Compute time in service as follows:

(1) For RA and former ARNG and USAR soldiers who enlist in the Active Army, use basic active service date (BASD).

(2) Use pay entry basic date (PEBD) for ARNG and USAR soldiers who are involuntarily called or ordered to active duty under section 673b (the "200,000 call–up"), title 10, United States Code (10 USC 673b) or in time of war or national emergency (mobilization) and those who volunteer for and are ordered to active duty for periods in excess of 90 days in response to requests for volunteers to meet any emergency operational mission requirement (does not include peacetime mission requirements).

(3) Soldiers who entered active duty under the Army Civilian Acquired Skills Program (ACASP), AR 601–210, use adjusted basic enlisted service date (BESD) for promotion consideration through grade SSG.

(4) For ARNG and USAR soldiers on IADT, use BASD.

## 1–15. Appointment to higher grades
Soldiers who were not appointed to higher grades to which enlisted when they enlisted or reenlisted in the RA or USAR will be reappointed to higher grades by the appropriate promotion authority. Governing directives are AR 601–210, AR 140–111, AR 140–158, or AR 601–280. This does not apply if a reduction in grade occurs after date of enlistment or reenlistment. The effective date reflected on the promotion instrument will be the effective date used on the "GRCH" transactions.

## 1–16. Security clearance requirements
The following security clearance requirements are a prerequisite for promotion:

*a.* Promotion to master sergeant (MSG) and sergeant major SGM) requires a favorable National Agency Check (NAC) or a security clearance of secret or higher.

*b.* Promotion to SFC requires the clearance for the promotion MOS.

*c.* Promotion to SPC through SSG requires the clearance required by the promotion MOS or an interim clearance at the same level.

## 1–17. Erroneous promotions and de facto status
*a.* Erroneous promotions will be revoked. When a soldier has been erroneously promoted, a determination of de facto status may be made only to allow the soldier to keep any pay and allowances received at the higher grade when—

(1) Promotion orders or DA Form 4187 has been issued.

(2) Pay at the higher grade has been received.

(3) Soldier accepted the promotion or advancement in good faith.

*b.* De facto status may be granted by the promotion authority or higher commander after legal review by the servicing Staff Judge Advocate's office.

*c.* All requests for de facto on soldiers erroneously promoted to the grades of SFC, MSG, and SGM must be received by the soldier's servicing Staff Judge Advocate's office prior to being submitted to HQDA.

## 1–18. Appointment of acting noncommissioned officers (NCOs)
*a.* Commanders issuing movement orders for casual groups may appoint soldiers as acting NCOs in grades of CPL, SGT, and SSG. They will supervise and control movements. The number of acting NCOs will be—

(1) One CPL to each 12 casuals.

(2) One CPL plus 1 sergeant to each 35 casuals.

# Chapter 3
# Semicentralized Promotions (SGT and SSG)

## Section I
## Managing Semicentralized Promotions

### 3–1. Promotion system

*a.* This chapter governs the SGT and SSG promotion system.

*b.* Field grade commanders in units authorized a commander in the grade of LTC or higher have promotion authority to the ranks of SGT and SSG; however, the Promotions Work Center maintains the promotion standing list and issues the orders.

*c.* Promotion to SGT and SSG are executed in a semicentralized manner.

(1) *Field operations (decentralized).* Board appearance, promotion point calculation, promotion list maintenance, and the final execution of the promotions occur in the field in a decentralized manner.

(2) *HQDA operations (centralized).* Promotion point cutoff scores are determined and announced monthly for each MOS on the basis of the scores reported by the field and the needs of the Army, by grade and MOS.

*d.* By using the standard promotion scoring forms with predetermined promotion point factors, soldiers in pay grades SPC and SGT generally can measure how well they qualify for promotion. They can set precise goals with a self-improvement training program to increase their potential for promotion.

*e.* Promotion certificates will be prepared by the unit or the personnel and administration center for signature by the promotion authority. Any higher level commander may direct that signature authority be held at his or her level, but the certificate will still be prepared by the unit or PAC.

*f.* The semicentralized promotion system depends on the sequential execution of the key events listed in paragraph 3–2. Untimely action in the field leads to faulty promotion decisions.

### 3–2. Key events and work scheduling

The events listed below make up a complete semicentralized promotion cycle.

*a. Key events.*

(1) *Board month minus one.* Identify eligible soldiers, prepare Section A of the promotion point worksheets at battalion–level, obtain approval, and forward to the PSC.

(2) *Board month.*

(a) Prepare Section B of the promotion point worksheets in the PSC and return them to the battalion.

(b) Conduct the board, obtain approval, and forward the results to the PSC.

(c) Record soldier's promotion points in the SIDPERS database.

(3) *Board month, plus one.* No action required in the field; HQDA develops information to support the decision process.

(4) *Board month, plus two.* Receive the promotion point cutoff scores in the Promotions Work Center, identify promotees, verify eligibility, and issue orders.

*b. Scheduling work.* A semicentralized cycle starts every month for a new group of soldiers. Thus, the system places competing work demands on the local promotion specialists. Work must, therefore, be carefully synchronized, especially between PSC and battalions. The following is a recommended monthly work schedule that would enable workers at both levels to rank work and accommodate the demands of the various cycles.

(1) *Battalion level.*

(a) Between the 1st and 10th, prepare new recommendation for next month's board.

(b) Between the 11th and 20th, prepare for, conduct, and finalize board action.

(c) Between the 21st and the 30th, identify eligible soldiers for the next cycle and obtain the unit commander's decision.

(2) *PSC level.*

(a) Between the 1st and the 10th, prepare Section B for this month's boards.

(b) Between the 15th and the 25th, obtain cutoff scores, identify promotees, verify eligibility, and issue orders.

(c) Between the 25th and the 30th, submit SIDPERS transactions to record board results.

### 3–3. Delay of promotion (SGT and SSG)

*a.* A soldier's promotion will be suspended when the promotion authority determines that the—

(1) Soldier was given promotion consideration in error.

(2) Soldier was granted more administrative points than entitled. The promotion authority may promote when the unchallenged total point score equals or exceeds the announced HQDA cutoff score.

(3) Soldier's promotion packet has been lost and must be reconstructed.

*b.* The soldiers must be advised in writing the reason for the suspension.

### 3–4. Secondary zone

The secondary zone provides incentives to those who strive excellence and whose accomplishments, demonstrated capability for leadership, and marked potential warrant promotion ahead of their peers.

### 3–5. Waiver authority

The promotion authority, or his or her designee, may waive no more than two of the three following eligibility requirements:

*a.* TIS.

*b.* TIMIG.

*c.* SQT.

### 3–6. The promotion packet

*a.* The promotion packet consists of the following:

(1) DA Form 3355 (Promotion Point Worksheet) (fig 3–1) used for initial board appearance. (DA Form 3355 is also authorized for electronic generation.)

(2) Approved report of promotion board proceedings for soldiers boarded for SGT and SSG prior to 1 June 1985 and after 30 September 1991. (Although board proceedings are not required to be filed in the packet for the period 1 June 1985 through 30 September 1991, if available will be included in the promotion packet.)

(3) Latest two DA Forms 3355 used for recomputation or reevaluation.

(4) A copy of the latest AAC–C10 report with the soldier's name on it will be added to the packet prior to outprocessing.

(5) A copy of any document that allows the soldier's previously determined promotion score to be adjusted (return to the soldier when the adjusted DA Form 3355 is removed from the packet).

(6) A copy of any document used to confirm promotion points on DA Form 3355 that is not filed in the MPRJ under the provisions of AR 640–10.

*b.* The PSC will purge promotion packets as recomputations and reevaluations are completed.

*c.* ALL DA Forms 3355 no longer required for filing in the MPRJ will be removed and given to the soldier.

### 3–7. Special promotion categories

*a. Special forces.* Soldiers in CMF 18 who have 18 months time in service and have been recommended by a promotion board will be promoted to SGT on the first day of the month following attainment of recommended list status, without regard to time in grade requirements.

*b. Rangers.* For promotion to SGT, Ranger School graduates who meet the following minimum requirements will be promoted on the first day of the third month following attainment of recommended list status or graduation from Ranger School, whichever is later. Promotion will be made without regard to announced cutoff scores for the soldier's MOS.

(1) Minimum requirements are as follows:

(a) Eighteen months TIS.

*(b)* Four months TIMIG.

*(c)* Recommendation by unit commander.

*(d)* Recommendation by promotion board.

*(e)* Approval by promotion authority.

*(f)* Attainment of 450 or more total promotion points.

(2) This special promotion authority is without regard to duty position assignment.

(3) Soldiers who already hold recommended list status at time of graduation from Ranger School will continue to be eligible for promotion against the cutoff score for their MOS until the first day of the third month following graduation.

(4) Servicing Promotions Work Center will enter a 999 promotion score in SIDPERs (PRMOS transaction) for all Ranger School graduates holding recommended list status for promotion to SGT immediately upon graduation or upon obtaining recommended list status.

*c. Officer Candidates School (OSC).* Soldiers in rank of SPC and below entering Officer Candidate School or Warrant Officer Entry Course will be promoted to SGT with an effective date and DOR 1 day prior to departure from the losing organization. Soldiers promoted under this paragraph will be informed that if they are on a current promotion list to SGT they will be removed from such list and that failure to complete training could result in reduction.

*d.* Soldiers in grades SPC and SGT on a recommended list. These soldiers will be promoted against the promotion point cutoff score announcement, using their recommended MOS. Promotion orders (AR 310–10, figs A–45 and A–46, app A) will cite and this paragraph as authority for the promotion.

## 3–8. Hospitalized soldiers because of Service–incurred disease, wound, or injury

*a.* Soldiers on the recommended list selected by a local board prior to hospitalization, may be promoted if their point scores are the same or higher than those announced by HQDA.

*b.* Soldiers who are not on a recommended list at the time of hospitalization may be considered for promotion by the local medical holding facility selection board.

*c.* The hospital commander may appoint qualified patients as board members or board presidents.

*d.* Patients who are physically qualified, as determined by the medical authority, must appear for board evaluation.

*e.* The hospital facility commander may request the patient's former commander or other former officials who know about his or her prior performance to complete DA Form 3355.

*f.* Patients on the recommended list will retain such status when reassigned to another promotion authority, provided otherwise eligible.

*g.* The medical facility commander will ensure that all approved board results with promotion packets are forwarded to the supporting PSC for filing and SIDPERS transactions.

## 3–9. Geographical separation from the promotion authority

*a.* Commanders will ensure that soldiers are considered for promotion before they are placed on TDY in isolated areas, on special duty or assignment, or attached to a unit in a different geographical location.

*b.* If a soldier's MPRJ is at the organization of attachment, promotion packets will be prepared there for selection board consideration. If the records are not available at the organization of attachment, action will be taken by the PSC that services the organization of attachment to request them. If the soldier attains recommended list status, the board's evaluation and supporting papers will be furnished to the parent organization commander (promotion authority). The PSC that supports the parent organization commander will authorize the soldier's name to be added to their current recommended list on date of receipt of the necessary data. Further board action will not be required.

*c.* The PSC servicing the unit to which the soldier is TDY or

attached may issue promotion orders if the soldier's MPRJ is maintained by the attached unit's PSC. When the MPRJ is not available, and the TDY or attached unit commander verifies the soldier's promotable status with the parent unit PSC, he or she may issue promotion orders. When the TDY or attached unit's PSC publishes orders, copies will be provided to the assigned unit's PSC and battalion PAC.

## Section II
## Reason Codes and Eligibility Criteria

### 3–10. Reason codes

The reason codes to be used on the recommended list are contained in table 3–1.

**Table 3–1**
**Reason codes to be used on the recommended list**

| Code | Reason |
|------|--------|
| A | Initial promotion score. |
| B | Reevaluation. |
| C | Recomputation. |
| D | Nonpromotable status. |
| E | Delete due to transfer. Enter departure date. |
| F | Deleted for cause, enter date of removal after code. |
| G | Promoted. Enter effective date of promotion after the code. |
| H | Reinstate to recommended list. Enter date of reinstatement after code. |
| I | Adjustment of administrative points. Enter date of adjustment after code. |
| J | Regained promotable status. Enter effective date after code. |

Notes:
These codes will not be altered.

### 3–11. Eligibility criteria

Eligibility criteria is defined in table 3–2 at end of chapter.

## Section III
## Task: Identify Soldiers for Recommendation for Promotion to SGT or SSG

### 3–12. Rules to identify soldiers for recommendation for promotion to SGT or SSG

*a.* BNS1 will prepare report "Personnel Eligibile for SGT or SSG Promotion Consideration" monthly for units supported by TACCS.

*b.* The PSC will prepare the CO1 (Enlisted Promotion Report) for units not supported by TACCS.

*c.* Unit commander will personally review and authenticate appropriate report.

*d.* Maximum of two waivers are allowed.

(1) TIMIG

(2) TIS

(3) SQT score of 59 or below applies to soldiers being recommended to SSG). Soldiers who have not tested or do not have an SQT score must be in one of the following categories in order to compete for promotion:

*(a)* No SQT for the soldier's PMOS.

*(b)* Testing in the soldier's PMOS has been suspended.

*(c)* Soldier was exempted by PERSCOM.

*(d)* Soldier was deferred per AR 350–37, and 60 days has not elapsed since the ending date of deferment.

*(e)* Soldier exempted due to deferment extending beyond the beginning of test period plus 9 months (for example, test period is Jan–Mar 90 and the deferment date extends beyond Sep 90). This exemption must be authorized by the commander per AR 350–37.

*(f)* Soldier was tested but a score has not been received.

*(g)* No previous test and the current test window has not ended.

*(h)* Soldiers reclassified from 19E to 19K will use the 19E SQT

score for the award of promotion points provided the score is not older than 24 months from the date scored.

*(i)* Soldiers will continue to be awarded promotions points for SQT score from prior PMOS if reclassified into a normal career progression MOS per AR 611–201.

*e.* Reports will list soldier's level of security clearance, SSN, current grade, and PMOS.

*f.* Reports will also indicate in the REMARKS section those soldiers flagged, barred to reenlist, or who have a blank BASD.

*g.* Unit commander will counsel soldiers in writing who are eligible for promotion, without waiver, but not recommended. Counseling will take place as follows:

(1) Initially when a soldier first reaches the primary zone.

(2) ) Periodically thereafter at the discretion of the commander.

### 3–13. Steps for identifying soldiers for recommendation for promotion to SGT or SSG

The steps used to identify soldiers for recommendation for promotion to SGT or SSG are contained in table 3–3.

**Table 3–3**
**Identifying soldiers for recommendation for promotion to SGT/SSG**

| Step | Work Center | Required action |
|---|---|---|
| 1 | BNS1 | Prepare "Personnel Eligible for SGT/SSG Promotion Consideration" (organizations support with TACCS) or receive C01 report from the PSC. |
| 2 | | Print out report. |
| 3 | | Forward report to appropriate unit. |
| 4 | UNIT | Commander will personally review the report and identify soldiers to be recommended for promotion. |
| 5 | | Commander will annotate YES (for recommended) or NO (for not recommended) in the last column of the report. |
| 6 | | Commander will personally authenticate the report. |
| 7 | BNS1 | Return authenticated report to BNS1. |
| 8 | | Prepare DA Form 3355, Section A (fig 3–1). |
| 9 | UNIT | Unit commander will counsel soldiers who are eligible for promotion without waiver but not recommended. |
| 10 | | Ensure soldier understands why he or she was not recommended and what can be done to correct deficiencies |

### Section IV
### Task: Process Initial SGT or SSG Recommendations

### 3–14. Rules for processing initial SGT or SSG recommendations

*a.* Recommendations will be initiated by or processed through the soldier's parent unit.

*b.* The promotion authority or his or her designee will approve or disapprove the recommendation.

*c.* Reasons for disapproval will be stated clearly and concisely on the recommendation.

*d.* The soldier will be advised of the reasons for disapproval, including his or her deficiencies and will be given suggested ways

of improvement. The statement of counseling at the end of the DA Form 3355 will be completed by the soldier.

*e.* A copy of an approved reenlistment waiver for courts martial, AWOL or lost time DA Form 3072–R (Waiver of Disqualification for Reenlistment/Promotion in the Regular Army) must be attached as a permanent part of the DA form 3355, if applicable.

*f.* Corrections may be made or new administrative points may be added up to and including the date the board proceedings are approved.

### 3–15. Steps for processing initial SGT or SSG recommendations

The steps used for processing initial SGT or SSG recommendations are contained in table 3–4.

**Table 3–4**
**Processing initial SGT or SSG recommendations**

| Step | Work Center | Required action |
|---|---|---|
| 1 | UNIT | Direct BNS1 to prepare recommendation for promotion. |
| 2 | | Direct BNS1 to prepare request for special waiver(s) DA Form 3072–R, courts-martial conviction, AWOL, or lost time, if required. |
| 3 | BNS1 | Prepare recommendation for promotion on DA Form 3355, Section A. For units with TACCS, use TACCS module "Prepare Recommendation for Promotion to SGT/SSG." |
| 4 | | Attach approved DA Form 3072–R (if applicable) to the DA Form 3355. |
| 5 | | Forward DA Form 3355 to unit commander. |
| 6 | UNIT | Complete items 1a through 1f, DA Form 3355 and authenticate Section A. |
| 7 | | Sign DA Form 3072–R (if submitted). |
| 8 | | Return DA Form 3355 and DA Form 3072–R to BNS1. |
| 9 | BNS1 | Provide DA Form 3355 to promotion authority. |
| 10 | | Promotion authority approves or disapproves the recommendation by signing Section A of DA Form 3355 (and the waiver). |
| 11 | | Return disapproved recommendation to unit commander citing reasons for disapproval. |
| 12 | UNIT | Inform soldier of disapproval and reasons for disapproval. Counsel on ways to improve promotion potential. Complete statement at the end of DA Form 3355 and return to BNS1 for filing. |
| 13 | BNS1 | After soldier has been counseled, file disapproved recommendation DA Form 3355 in soldier's individual BNS1 file. |
| 14 | | Forward approved DA Form 3355 to the PSC for completion of Section B. |

**Table 3–4**
**Processing initial SGT or SSG recommendations—Continued**

| Step | Work Center | Required action |
|---|---|---|
| 15 | PROM | Complete Section B of DA Form 3355. For organizations with TACCS, use TACCS module "Prepare administrative points for soldiers recommended for SGT/SSG." |
| 16 | | Section B of DA Form 3355 must be authenticated by SSG or above. |
| 17 | | Return recommendations to promotion authority. |
| 18 | BNS1 | Review Sections A and B of DA Form 3355 with the soldier. |
| 19 | | If soldier claims additional administrative points, obtain supporting documentation. |
| 20 | | Provide recommendation to board president. |

## Section V
## Task: Conduct Promotion Boards

### 3–16. Rules for conducting promotion boards

*a.* Conduct promotion board by the 15th of every month.

*b.* The boards will use question and answer format only. Soldiers will not be required to perform hands–on tasks.

*c.* Soldiers are to be considered as fully qualified in their PMOS by virtue of the commander's recommendation.

*d.* The promotion or convening authority will appoint in writing at least three voting members and a recorder without vote. The voting members may be all officers, all noncommissioned officers, or mixed.

*e.* Board membership will consist of the following:

(1) The president will be the senior member (preferably field grade officer) or for an all NCO board, a CSM. If there is no CSM available, the senior member may be an SGM.

(2) Board members will be unbiased. Members will be senior in grade to those being considered for promotion.

(3) At least one voting member will be of the same sex as the soldiers being evaluated. When this is not possible, the reasons will be recorded as part of the board proceedings.

(4) Board members will be composed of an ethnic mixture, even though the board may not be considering soldiers of minority ethnic groups. The board should not be composed of minority ethnic group members exclusively.

(5) A nonvoting recorder should be from the BNS1 (need not be senior in grade to those being considered for promotion).

*f.* A board may be split into two or more panels, provided each panel consists of at least three voting members and a recorder without vote, to expedite the process if the number of recommended soldiers so warrants. Each soldier should appear before only one panel.

*g.* The board may be tasked, as a separate action, to consider soldiers for removal from a recommended list.

*h.* Once a board is convened, the same board members will be present during the entire board proceedings.

*i.* The president will call the board to order and brief it on the following rules:

(1) The president may choose to be a voting member or to vote only to break a tie.

(2) Each member has one vote.

(3) Each member will complete a DA Form 3356 (Board Member Appraisal Worksheet) (fig 3–2) to vote on each soldier.

(4) Use of the MPRJ by the board is optional.

(5) The recorder will prepare DA Form 3357 (Board Recommendation) (fig 3–3) after each soldier's appearance and obtain the president's signature. (DA Form 3357 is also electronically generated.)

(6) The recorder will complete the remaining portion of Section C of DA Form 3355.

### 3–17. Steps for conducting promotion boards
The steps for conducting promotion boards are contained in table 3–5.

**Table 3–5**
**Conducting promotion boards**

| Step | Work Center | Required action |
|---|---|---|
| 1 | BNS1 | Schedule monthly promotion selection board. |
| 2 | | Prepare written documentation of appointment of board members. Account for all DA Forms 3555, with Sections A and B completed, for each soldier scheduled to appear before the board. |
| 3 | | Notify unit commander of board schedule. |
| 4 | UNIT | Notify soldier(s). |
| 5 | BNS1 | Promotion authority will brief the president of the board on his or her responsibilities. |
| 6 | | Conduct promotion board. |
| 7 | | Collect DA Form 3356 and inform the president of the results. If a tie exists, the president will vote to break the tie. |
| 8 | | Prepare DA Form 3357 after each soldier's appearance and obtain the president's signature. |
| 9 | BNS1 | Complete the remaining portion of Section C of DA Form 3355. |
| 10 | BNS1 | Prepare the record of board proceedings. |

## Section VI
## Task: Process Results of a Promotion Selection Board

### 3–18. Rules for processing results of a promotion selection board

*a.* The report of board proceedings (fig 3–4) will include the . following:

(1) Where and when the board met.

(2) Membership of the board.

(3) An alphabetical listing, including recommended military occupational specialty (RMOS), SSN, by recommended grade of soldiers recommended by the board, and an alphabetical listing of those not recommended.

*b.* The president will review the report of board proceedings for accuracy, sign the report, and forward it to the promotion authority for approval or disapproval (fig 3–4).

*c.* The promotion authority will take one of the following actions within 3 working days after the promotion board adjourns:

(1) Approve the report in its entirety and authorize the names of recommended soldiers to be integrated into the recommended list.

(2) Disapprove the report in its entirety and convene a new board, composed of new members. The promotion authority's approval or disapproval pertains only to the correct constitution and conduct of the board. Disapproval will not be used to disagree with the board's recommendation. The new board will consider all soldiers who were considered by the disapproved board.

*d.* If approved completion of Section C of DA Form 3355 is required and will be accomplished by the promotion authority of the board's organization.

*e.* If the promotion authority is a general officer he or she may delegate to their deputy commander or senior personnel manager (for example, adjutant), in writing, the authority to approve and sign Section C of DA Form 3355.

*f.* If disapproved, the promotion authority will advise each soldier of the reasons even if they have departed the organization. This applies to all soldiers considered by the board, whether or not recommended.

*g.* Soldiers must obtain a minimum of 550 promotion points if competing for SSG or 450 promotion points if competing for SGT, prior to being added to the recommended list.

*h.* Completed board actions will reach the PSC by the 20th day of the month to submit the promotion/progression military occupational specialty and promotion points (PRMS) transactions into SIDPERS by the last cycle of promotion board month.

*i.* The promotion selection date is the date the promotion authority approves the report of board proceedings.

*j.* The promotion packet of a soldier on the recommended list will be kept in the action pending section of MPRJ and a copy in the promotions section until promoted. Documents removed from MPRJ will be given to the soldier.

*k.* DA Form 3355 and promotion board documents of those who did not attain recommended list status will be filed by the promotion authority for 2 years and then destroyed.

*l.* Soldiers not recommended or not attaining enough points to obtain list status will be counseled by the promotion authority or his or her designated counselor and signatures obtained in Section C of DA Form 3355.

*m.* The original report of board proceedings, DA Form 3356, and DA Form 3357 will be filed by the promotion authority for 2 years, then destroyed.

*n.* The recommended list (AAC–C10) will be retained by the PSC for 2 years.

*o.* Scores will be submitted to SIDPERS (PRMS transaction) so that they process no later than last SIDPERS cycle of the board month. See table 3–1 for reason codes.

*p.* . Points awarded will be determined from the soldier's records as they existed before the report of board proceedings is approved. The promotion authority or PSC may correct all known errors before the report of board proceedings is approved.

*q.* Units supported with TACCS will prepare DA Form 3357 using TACCS module "Prepare Promotion Board Results DA Form 3357."

## 3–19. Steps for processing results of a promotion selection board

The steps for processing results of a promotion selection board are contained in table 3–6.

## Section VII
## Task: Process Promotion Point Reevaluations

## 3–20. Rules for processing promotion point reevaluations

*a.* There are two types of promotion point reevaluation: administrative and total.

*b.* Soldiers may request a reevaluation by using the remarks section of DA Form 3355, indicating either administrative or total (board appearance).

*c.* . Rules for an administrative reevaluation include the following:

(1) Soldiers who believe they have increased (through self achievement or awards) their latest promotion score by 35 points or more (DA Form 3355, items 2 through 6) can request an administrative reevaluation at any time. (Points increase in item 2 must be the result of a new SQT score, not by using the no–fault table when an SQT expires).

(2) An administrative reevaluation is a simple recomputation of the administrative points (DA Form 3355, items 2 through 6) by the PSC.

(3) Commanders will complete and sign Section A of DA Form 3355.

(4) Commanders duty performance points may be increased or decreased for an administrative reevaluation.

(5) If the administrative reevaluation results in a promotion point increase of 35 or more points over the latest promotion point total score, the PSC will change the soldier's score and record the new score in the SIDPERS database.

**Table 3–6**
**Processing results of a promotion board**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | BNS1 | Prepare report of promotion board proceeding. |
| 2 | | Forward to promotion authority for approval/disapproval ans counseling of soldier not recommended. |
| 3 | | If approved, forward DA Forms 335 of soldiers recommended to PSC. |
| 4 | | Counsel soldiers not recommended on promotion potential/weakness and obtain soldier's signature in Section C of DA Form 3355. |
| 5 | | Return disapproved DA Forms 3355 to battalion. |
| 6 | | For soldiers not recommended or not attaining enough points to obtain list status, file DA Form 3355 with the promotion board proceedings. |
| 7 | | Forward each promotion packet for entry on the recommended list. |
| 8 | BNS1 | Fill report of board proceedings. |
| 9 | PROM | File the approved promotion packet in the MPRJ and a copy in the promotions section. |
| 10 | | Submit SIDPERS PRMS transactions. |
| 11 | PAUT | Send a copy of the AAC–C10 to the PSC. |
| 12 | PROM | Receive AAC–C10 from PAUT. |
| 13 | | Verify AAC–C10 for the newly recommended soldiers and send copy to BNS1. |
| 14 | BNS1 | Receive AAC–C10 from PROM and verify. |
| 15 | | Send a copy of the AAC–C10 to the unit. |
| 16 | UNIT | Post current ACC–C10 on unit bulletin board. Block out SSNs. |

(6) The PSC will recompute the administrative points with a reevaluation date the month and year the request for reevaluation is received in the PSC.

*d.* Rules for a total reevaluation are as follows:

(1) A total reevaluation includes the entire process: the commander's recommendation, promotion board, and administrative points.

(2) Total reevaluation may be requested after 6 months from the latest board appearance, reevaluation, or recomputation.

(3) The results of a total reevaluation take the place of the previous evaluation regardless of outcome.

(4) Soldiers not recommended by the board during the total reevaluation, or who fail to achieve enough points to attain promotion list status, will be removed from the current list immediately.

(5) The soldier's application must contain the following statement: "I understand that the results of the reevaluation will take precedence over my current promotion list standing. I may lose points or I may be removed from the list if the board does not select me or if I do not obtain enough points to achieve promotion list status."

(6) The reevaluation date for a total reevaluation will be the date the promotion authority approves the promotion board proceedings.

*e.* Promotion scores achieved through the reevaluation process are effective for promotion on the first day of the third month following reevaluation.

### 3–21. Steps for processing promotion point reevaluations
The steps for processing promotion point reevaluation are contained in table 3–7.

**Table 3–7**
**Processing promotion point reevaluations**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | UNIT | If the soldier requests an administrative reevaluation, provide Section A of DA Form 3355 information to BNS1. |
| 2 | | If the soldier requests a total reevaluation include in next promotion cycle, skip to step 6. |
| 3 | BNS1 | Complete Section A of DA Form 3355 for administrative reevaluation. |
| 4 | UNIT | Commander signs Section A of DA Form 3355 and forwards request through the promotion authority (for total reevaluations only) to the servicing PSC for verification. |
| 5 | PROM | Recompute administrative points. If 35 or more, submit SIDPERs transaction. If 34 or less, return to BNS1. |
| 6 | BNS1 | Complete Section A of DA Form 3355 for total reevaluation. |
| 7 | UNIT | Sign Section A of DA Form 3355. |
| 8 | BNS1 | Promotion authority approves Section A of DA Form 3355 (for total reevaluations only). |
| 9 | PROM | Complete Section B of DA Form 3355 and authenticate by SSG or above. |
| 10 | BNS1 | Conduct promotion board. |
| 11 | PROM | Submit SIDPERS PRMS transaction. |
| 12 | | Obtain AAC–C10 from PAUT. |
| 13 | | Verify input to AAC–C10. |
| 14 | | File DA Form 3355 in MPRJ. |

### Section VIII
### Task: Conduct Annual Recomputations

### 3–22. Rules for conducting annual recomputations
*a.* Promotion points must be recomputed 12 months (plus or minus 1 month) after the last computation (initial board, reevaluation, or recomputation) without local board action.

*b.* For promotion to SGT and SSG, points are recomputed using records as of the last day of the month preceding computation. Items 1, 2, (for soldiers being recommended to SSG) 3, 4, 5, and 6 of DA Form 3355 will be used for computation.

*c.* Commanders must complete Section I of DA Form 3355 and forward to PSC, not later than the last day of the month prior to computation.

*d.* If scores are not recomputed during the scheduled timeframe due to the soldier being in an intransit status, they will be recomputed within 30 days after reporting to the parent unit.

*e.* Gaining commanders of intransit soldiers may elect to award duty performance points in item 1, Section B of DA Form 3355 or use the previous commander's evaluation.

*f.* Recomputation is mandatory and will be accomplished for those soldiers who are flagged or unavailable. If the soldier is unavailable, a copy of recomputed DA Form 3355 will be provided to the soldier as soon as possible.

*g.* Soldiers who fail to achieve the minimum points required to maintain list status will be removed from the current list immediately. As an exception to this rule, a soldier win not be removed from the list based on failing to achieve the minimum number of points required for list status solely as the result of the commander decreasing the soldier's duty performance points. In such cases—

(1) The commander will be informed that he or she may award the number of points required for the soldier to retain list status or recommend that the soldier be removed under provisions of the removal task.

(2) If removal is recommended and not approved, the soldier will have his or her points adjusted to the minimum required to maintain list status.

*h.* The soldier will review recomputed scores for accuracy and completeness.

*i.* Soldiers will continue to be eligible for promotion based on their old promotion point score until recomputed scores become effective unless removed as a result of failing to achieve the minimum amount of points required.

*j.* The new score becomes effective on the first day of the third month following the scheduled recomputation month.

*k.* Recomputation is limited to DA Form 3355, items 1 through 6.

*l.* SIDPERS PRMS transaction is to be submitted not later than the last SIDPERS cycle of the recomputation month.

### 3–23. Steps for conducting annual recomputations
The steps for conducting annual recomputations are contained in table 3–8.

**Table 3–8**
**Conducting annual recomputations**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | BNS1 | Forward DA Form 3355 to unit commander for completion of Section A. |
| 2 | UNIT | Complete Section A, recomputation worksheet, and return to BNS1. |
| 3 | BNS1 | Check recomputation block, enter date (month/year) and forward to PROM. |
| 4 | PRPM | Recompute promotion points. |
| 5 | | Forward recomputation to BNS1 for review with soldier. |
| 6 | BNS1 | Review DA Form 3355 with soldier. |
| 7 | | Return DA Form 3355 to PSC (Promotion Work Center). SSG or above will authenticate. |
| 8 | PROM | Submit SIDPERS PRMMS transactions not Later than the last SIDPERS cycle of the recomputation month. |
| 9 | | Review AAC–C10 accuracy. |
| 10 | | File DA Form 3355 in MPRJ. |

### Section IX
### Task: Process Promotion Point Adjustments

### 3–24. Rules for processing promotion point adjustments
*a.* There are only two types of promotion point adjustments authorized.

(1) Correction of an error.

(2) Adding of additional administrative points.

*b.* Rules to correct an error (that is, a mathematical error on the DA Form 3355 or a correction to a document such as an ISR) are as follows:

(1) In the case of a mathematical error, a correction will be made when the error is detected. Adjustments to correct other errors must be requested within 4 months from the date the document in question is corrected. Adjustments submitted more than 4 months after the date of correction will be submitted under the provisions of c below.

(2) If a correction increases the promotion score to where it meets or exceeds an announced cutoff score for an MOS, the soldier will be promoted.

(3) Corrections to promotion packets for APFT and weapon qualification will be processed under the provisions of c below.

*c.* Rules to add administrative points that were effective prior to the date of the last board, reevaluation, or recomputation, but were left off DA Form 3355 or not supportable with official documentation, are as follows:

(a) Adjustments to add additional administrative points will not result in a retroactive promotion.

(b) Adjustment action is limited to the specific points in question (for example, the additional points for completion of civilian education to be supported by a transcript, and so forth, or discovery of an old award). No other points may be added to subtracted.

(3) Adjustments to add points not previously documented will be made during the month the request is received at the PSC. The DA Form 3355 currently in effect is the only promotion point worksheet authorized for adjustment.

(4) Adjustments must be supported by official documentation and will become effective on the first day of the third month following the month of adjustment.

(5) An SQT score reflected on a "corrected copy" of the individual soldier's report will require an administrative adjustment of promotion points if the score is being used for promotion points. The corrected score will be effective on the same date as the original score.

*d.* The PSC commander is the approval authority for adjustments. The request for adjustment, to include the PSC commander's approval, will be filed as a permanent part of the promotion packet. The original or reconstructed DA Form 3355 will be annotated in red to show the adjusted promotion points.

*e.* The PSC will notify soldiers in writing of any adjustment to a soldier's promotion points when the soldier is not present to acknowledge the change. The notification will be routed through the soldier's chain of command and will include, as a minimum, the reason for the change, the new points, and the effective date of the new points.

*f.* The promotion of an otherwise profitable soldier who is on the current recommended list will be suspended when the promotion authority or custodian of the MPRJ conclude he or she was considered in error or was granted administrative points than entitled. Promotion will al suspended when a promotion packet, or portion thereof been lost and must be reconstructed. The promotion authority may promote when the unchallenged total point score equals exceeds the qualifying promotion point cutoff score announced by HQDA. (For example, soldier has a total point score of 675, of which 650 points are unchallenged and determined be his or her correct score. The soldier could be promoted the announced promotion point cutoff score for his c MOS is 650 or lower, regardless of the pending decision the approval authority.)

**3–25. Steps for processing promotion point adjustments**
The steps for processing promotion point adjustment contained in table 3–9.

**Table 3–9**
**Processing point adjustments**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | BNS1 | Prepare request for promotion point adjustment. |
| 2 | PROM | Approve promotion point adjustment, if authorized. |
| 3 | | Submit SIDPERS PRMS transaction. |
| 4 | | Distribute request to Records Work Center for filing in the MPRJ. |
| 5 | | Forward approval/disapproval to battalion. |
| 6 | BNS1 | Notify soldier of decision. |
| 7 | PROM | Publish order, if appropriate. |

**Section X**
**Task: Process Soldiers Reclassified While on a Promotion Standing List**

**3–26. Rules to process soldiers who are reclassified while on a promotion standing list**
*a.* Soldiers who are reclassified, for other than Loss qualifications as a result of inefficiency or misconduct, compete against the promotion point cutoff score in the r awarded MOS.

*b.* Provided otherwise eligible, soldiers may be promoted the first day of the month following reclassification if meet or exceed the cutoff score in the new PMOS.

*c.* Soldiers holding promotion list status in their current PMOS or CPMOS at time of entry into MOS reclassification training will compete against promotion point cutoff score the MOS held before training.

*d.* Once a soldier has been reclassified, he or she can no longer compete in the old PMOS.

*e.* Promotion points granted for SQT in prior PMOS fl deleted as of the effective date of reclassification. Soldiers then be awarded promotion points using the no fault provision in item 2 of DA Form 3355.

*f.* Soldiers reclassified into a PMOS as a result of an F directed "one–for–one conversion" and reclassified into a career progression MOS per AR 611–201 will continue r the SQT in the previous MOS, unless notified otherwise.

**3–27. Steps for processing soldiers who are reclassified while on a promotion standing list**
The steps for processing soldiers who are reclassified while on a promotion standing list are contained in table 3–10.

**Section XI**
**Task: Process Remove from Local Promotion Standing List (AAC–C10)**

**3–28. Rules for removing a soldier from a local promotion standing list**
*a.* Soldier must be informed of removal action in writing.

*b.* Soldier will be immediately removed from recommended lists under the following conditions:

(1) Failure to take the regular SQT due to his or her own fault (willful neglect) as determined by the promotion authority.

(2) A soldier on a promotion list who receives an SQT failure in

his or her current PMOS will be removed from the recommended list unless the promotion authority grants a waiver.

**Table 3–10**
**Processing soldiers who are reclassified while on a promotion standing list**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | PROM | Receive reclassification. |
| 2 | | Adjust promotion points when required. |
| 3 | PROM | Screen HQDA promotion point cutoff scores for new PMOS. |
| 4 | | Submit SIDPERS PRMS transaction. |
| 5 | | Obtain AAC–C10 from the PAUT |
| 6 | | Verify AAC–C10 report. |
| 7 | | Notify BNS1 of the soldier's total promotion points. |
| 8 | BNS1 | Notify unit of promotion point change. |
| 9 | UNIT | Notify soldier of new promotion point total. |

*(a)* During recomputation, reevaluation, and reclassification, the commanding officer will inform the soldier that he or she is ineligible to compete for promotion until a current score has been received or 12 months has elapsed since the close of the test window in which the soldier failed to test, whichever is earlier. He or she will notify the promotion authority that the soldier must be removed from the standing list due to a lack of SQT qualification. A soldier will become eligible to compete for promotion during the 13th month after the close of the test window in which he or she failed to take the SQT. The no fault provisions will be used until a new score is received.

*(b)* SQT scores will only be used if the SQT is in the soldier's PMOS or if the Training Support Center or proponent school announces that an SQT is to remain valid for reclassified soldiers.

(3) Failure to qualify, for cause, for the security clearance required for the MOS in which recommended.

(4) Failure to reenlist or extend to meet the criteria in table 3–2.

*(a)* Reenlistment or extension must be accomplished no later than the last day of the month for which the cutoff score was met.

*(b)* Those for whom reenlistment or extension waivers have been submitted will not be removed until final action has been taken on the request for waiver.

*(c)* Those whose active service exceeds the reenlistment ineligibility points will remain on the promotion list.

(5) Those who are prohibited from reenlisting when a local or DA (AR 601–280) imposed bar is approved after attaining recommended list status. If the bar is appealed, the individual will not be removed until the appeal process is completed and denied.

(6) Loss of MOS qualification due to reclassification as a result of inefficiency or misconduct.

*(a)* Soldiers may be recommended for promotion in their new PMOS upon determination by the commander that they are fully qualified in the new PMOS.

*(b)* Promotion board appearance is required.

(7) Erroneous selection (that is, did not meet one or more of the eligibility criteria).

(8) Six months in a weight control program, without satisfactory progress toward the maximum allowable weight, provided no underlying or associated disease is found to cause the overweight condition (AR 600–9).

(9) Those who after 12 months in a weight control program still exceed the body fat standard or maximum allowable weight (even if they made satisfactory progress toward the maximum allowable weight and are at or below the screening table weight), provided no underlying or associated disease is found to cause the overweight condition (AR 600–9).

(10) Reduction in grade.

(11) Those who sign a Declination of Continued Service Statement. This applies to soldiers, other than first–termers, with more than 4 years of service for pay purposes at ETS.

(12) Release from active duty.

(13) Dropped from the rolls as a deserter.

(14) Failure to maintain a minimum score of S50 points for promotion to SSG, or 450 points for promotion to SGT.

(15) Those who have been denied a waiver to reenlist.

(16) Those promoted under the provisions of paragraph 3–7c.

*c.* The promotion authority may remove a soldier's name from an approved recommended list as follows:

(1) When a board has recommended that the soldier be removed from the recommended list.

(2) When an adverse action exists, including a soldier serving a court–martial sentence, serving punishment under Article 15 of the UCMJ, or when a soldier is undergoing proceedings that may result in an other than honorable discharge.

*(a)* Removal will be no later than 15 days following the effective date of the adverse action or the date final action is taken on an appeal to a reduction action that was not suspended.

*(b)* Removal after the 15–day restriction requires board action.

(3) When the soldier has made a written request.

*d.* Promotion packets of soldiers who are removed from recommended list will be retained in the functional files of the BNSI for 2 years.

*e.* Once the soldier is removed from the recommended list this action is final unless the soldier is later completely exonerated and action is initiated to reinstate the soldier to the recommended list.

## 3–29. Steps for removing a soldier from a local promotion standing list

The steps for removing a soldier from a local promotion standing list are contained in table 3–11.

**Table 3–11**
**Removing a soldier from a local promotion standing list**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | UNIT | Notify soldier in writing of intent to recommend removal. |
| 2 | | Commander requests removal of soldier from promotion list. |
| 3 | BNS1 | Receive request, verify conditions for removal have been met, and determine need to conduct removal board. |
| 4 | | Conduct removal board, if required. |
| 5 | | Forward removal board proceedings to PSC using DA Form 4187. |
| 6 | PROM | Receive approved removal documentation from promotion authority. |
| 7 | | Submit SIDPERS transaction to remove soldier from the AAC–C10. |
| 8 | | Return approved removal documentation to BNS1. |
| 9 | | File copy of DA Form 4187 with promotion packet in functional files. |

## Section XII
## Task: Conduct a Removal Board for Soldiers on Local Promotion Standing List

### 3–30. Rules for conducting a removal board for soldiers on a local promotion standing list

*a.* Soldier will be given written notification at least 15 working days prior to the date of the board.

*b.* The board will be composed of unbiased members (para 3–16*e*).

*c.* The recorder will arrange for any reasonably available witness the soldier wishes to call on his or her behalf.

*d.* Copies of all written affidavits and depositions of witnesses who are unable to appear before the board will be furnished the soldier.

*e.* AR 15–6 does not apply to removal boards.

*f.* Rights of the soldier are as follows:

(1) Decline, in writing, to appear before the board or appear in person during all open proceedings.

(2) For cause, challenge any member of the board.

(3) Request any reasonably available witness whose testimony he or she believes to be pertinent to the case. The soldier will state in his or her request the type of information the witness will provide.

(4) Present written affidavits and depositions of witnesses who are unable to appear.

(5) Elect to remain silent, to make an unsworn or sworn statement, or be verbally examined by the board.

(6) Question any witness appearing before the board.

*g.* Failure of the soldier to exercise his or her rights will not negate the board's proceeding, findings, or recommendations.

*h.* The president of the board will ensure that enough testimony is presented to enable the board members to—

(1) Fully and impartially evaluate each case and arrive at a recommendation.

(2) Prepare a report, in writing, of the board proceedings and submit it to the promotion authority.

*i.* The promotion authority will approve or disapprove the board recommendation and provide a copy to the soldier. The promotion authority may direct a new board if—

(1) An error in the conduct of the board has a material adverse effect on an individual's substantial rights (if the error cannot be corrected without prejudice to the soldier).

(2) The board failed to consider all available evidence in the case.

### 3–31. Steps for conducting a removal board for soldiers on a local promotion standing list

The steps for conducting a removal board for soldiers c local promotion list are contained in table 3–12.

**Table 3–12**
**Conducting a removal board for soldiers on a local promotion standing list**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | UNIT | Commander requests removal of soldier from promotion standing list. |
| 2 | BNS1 | Receive request/verify conditions for removal have been met. Determine need to conduct removal board. |
| 3 | UNIT | Commander notifies the soldier in writing 15 days prior to the date of the board. |
| 4 | BNS1 | Conduct removal board, if required. Promotion authority approves board findings. |

**Table 3–12**
**Conducting a removal board for soldiers on a local promotion standing list—Continued**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 5 |  | Forward removal board proceedings to PSC using DA Form 4187. |
| 6 | PROM | Receive approved removal documentation from promotion authority. |
| 7 |  | Review action for compliance. |
| 8 | PROM | Submit SIDPERS transaction to remove soldier from AAC–C10. |
| 9 | ENRC | Update MPRJ. |
| 10 | PROM | File DA Form 4187, removal board report, and DA Form 3355 in functional files for 2 years. |

## Section XIII
## Task: Reinstate Soldiers to Local Promotion Standing List (AAC–C10)

### 3–32. Rules for reinstalling soldiers to a local promotion standing list

*a.* A soldier promoted in error to grade SGT or SSG from recommended list will, if otherwise qualified, be reinstated to the list at the same time the order is revoked and treated never promoted.

*b.* A soldier removed from a list and later completely exonerated will be reinstated.

*c.* To be completely exonerated, the action that caused initial removal must have been erroneous or should not have been imposed so that the soldier is free of any wrongdoings or accusation.

(1) For example, a soldier receives a local bar to reenlist for failure to comply with AR 600–9 and is removed from recommended list.

(2) Subsequent compliance with AR 600–9 and removal of bar to reenlistment does not mean that the action caused the removal was erroneous. Therefore, the soldier "completely exonerated" and reinstatement is not authorized.

*d.* In no case should a reinstatement be delayed more 10 days.

*e.* If the soldier should have been promoted, the DOR effective date will be the date of original eligibility.

### 3–33. Steps for reinstalling soldiers to a local promotion standing list

The steps for reinstating soldiers to a local promotion standing list are contained in table 3–13.

**Table 3–13**
**Reinstating soldiers to a local promotion standing list**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | UNIT | Send request to BNS1 |
| 2 | BNS1 | Prepare DA Form 4187 to reinstate soldier. |
| 3 |  | Promotion authority approves or disapproves reinstatement to the promotion standing list. |
| 4 |  | Send approval to PSC. |
| 5 | PROM | Submit SIDPERS transactions. |
| 6 |  | Obtain AAC–C10 from PAUT. |
| 7 |  | Verify AAC–C10. |
| 8 |  | Attach DA Form 4187 to DA Form 3355. |

Section XIV
Task: Process Monthly HQDA Promotion Point
Cutoff–Scores

**3–34. Rules for processing monthly HQDA promotion point cutoff scores**

*a.* This task contains eligibility criteria for promotion of Active Army members to the rank of SGT and SSG made against monthly promotion cutoff scores.

*b.* HQDA will determine the needs of the Army by grade and MOS.

*c.* A soldier's total points are forwarded through SIDPERS (PRMS transaction) to PERSCOM for consolidation into an Army–wide listing of eligibles by MOS maintained in the EMF. A determination is then made for each MOS as to what promotion point cutoff score would promote the desired number of soldiers to meet the needs of the Army in a specific month. These decisions are based primarily upon budget constraints and individual MOS requirements.

*d.* The importance of accuracy and timeliness in submission of data to SIDPERS cannot be overemphasized.

*e.* Soldiers will be eligible for promotion on the first day of the third month following the selection month (for example, a soldier selected by a promotion board in January 1991 will become eligible for promotion on 1 April 1991).

*f.* The DOR and effective date will be the same.

*g.* If a soldier is promoted late, use procedures in paragraph 1–13*e.*

*h.* All pay, allowances, and entitlements start on the effective date of the promotion.

*i.* This task and the HQDA monthly letter that announces the promotion point cutoff score and any other authority that authorized the promotion will be included in the promotion order.

*j.* DORs will be the same as the effective date of promotion. If the promotion was delayed due to an administrative error, the DOR will be the effective date that the promotion should have occurred.

*k.* Promotions are only authorized during the month for which the cutoff score is met. Exceptions are as follows:

(1) Delay of promotion due to suspension of favorable actions (para 1–11).

(2) Promotions upon arrival at a gaining organization (para 3–40).

(3) Effective 1 October 1989, soldiers were required to be graduates of PLDC prior to promotion to SGT. Soldiers are allowed to compete for promotion to SGT but cannot be promoted to SGT until completion of PLDC. Soldiers who met a cutoff score for SGT after 1 October 1989, but were not PLDC graduates, would be promoted on the first day of the month following completion of PLDC.

*l.* Promotions other than in the month for which the cutoff score is met, with the exception of k(l), (2), and (3) above and paragraph 3–24b, are only authorized upon approval of CG, PERSCOM.

**3–35. Steps for processing monthly HQDA promotion point cutoff scores**
The steps for processing monthly HQDA promotion point cutoff scores are contained in table 3–14.

**Table 3–14**
**Processing monthly HQDA promotion point cutoff scores**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 1 | PROM | Receive cutoff scores from PERSCOM. |
| 2 | | Identify eligible soldiers. |
| 3 | | Verify eligibility (pay special attention to educational level/service remaining obligation). |
| 4 | | Publish promotion orders immediately. |
| 5 | | Submit SIDPERS GRCH transaction. |

**Table 3–14**
**Processing monthly HQDA promotion point cutoff scores—Continued**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 6 | | Forward copy of promotion order to OMPF; file copy in the MPRJ and forward copy to soldier's BNS1. (Upon promotion to SGT, attach all advancement/reduction DA Forms 4187 for SPC and below to the SGT promotion order for filing in the OMPF.) |
| 7 | BNS1 | Receive promotion orders from PSC. |
| 8 | | Verify promotable status. |
| 9 | | Prepare promotion certificates. |
| 10 | BNS1 | Forward promotion documents to unit. |
| 11 | UNIT | Conduct promotion ceremony. |
| 12 | BNS1 | Update BNS1 files. |

Section XV
Task: Process Service Remaining Obligations

**3–36. Rules for processing service remaining obligations**

*a.* The service remaining obligation is 12 months for promotion to SSG.

*b.* Service remaining obligation will be computed from the first day of the promotion month or from the day following the closing date of a DA Form 268 if it is closed unfavorably.

*c.* If otherwise eligible, soldiers in the categories listed in (1) through (5) below may be promoted without regard to service remaining obligation.

(1) Those whose active service would exceed the reenlistment ineligibility point for SSG (20 years) if required to meet the 12–month service obligation. In those cases, soldiers will be required to extend the number of months needed to complete 20 years of service.

(2) Those whom HQDA will promote while missing, MIA, captured, or detained.

(3) Very seriously ill soldiers.

(4) Those whose extended ETS would be after age 55 is attained if required to meet the 12–month service obligation. In those cases, soldiers will be required to extend through the end of the month in which 55th birthday occurs.

(5) Those who would lose eligibility to reenlist in their SRB MOS, or who lose entitlement to all or a portion of SRB if required to extend their current term of service or reenlist at their current grade to meet the service obligation.

*d.* When monthly promotion point cutoff score announcements are received from HQDA, promotion authorities will identify those who are eligible for promotion and who do not meet the service remaining obligation (figs 3–5 and 3–6).

*e.* The promotion authority will notify the soldier, in writing (This may be done by preparing a precondition memorandum or service obligation memorandum.) of the following:

(1) Advise that promotion may be only during the month for which the cutoff score is met.

(2) Instruct the soldier to seek detailed information promptly on available benefits and options (including a chance to reenlist in his or her grade after extending) from the local career counselor.

(3) Set a suspense date by which the soldier must incur obligated active service for promotion.

*f.* The promotion authority will promote the soldier promptly, but not earlier than the effective month, when evidence is received (reenlistment or extension document) that the service remaining obligation has been met.

*g.* The effective date of promotion will be the same day as the promotion instrument or the first day of the promotion month, whichever is later.

*h.* For retroactive promotions, the service obligation will be computed from the date the promotion should have occurred.

*i.* DOR will be the same as effective date of promotion.

*j.* A soldier s separation from the service before fulfilling the service remaining obligation does not invalidate the promotion if the service requirements were met at the time of promotion.

## 3–37. Steps for processing service remaining obligations
The steps for processing service remaining obligations are contained in table 3–15.

**Table 3–15**
**Processing service remaining obligations**

| Step | Work Center | Required action |
|---|---|---|
| 1 | PROM | Receive cutoff scores from PERSCOM. |
| 2 | | Identify eligible soldiers. |
| 3 | | Verify service remaining obligation. |
| 4 | | Notify promotion authority of service remaining obligation. |
| 5 | BNS1 | Notify soldier of service remaining obligation for promotion. |
| 6 | PROM | Set suspense date for compliance with service remaining obligation. |
| 7 | | Receive extension/reenlistment documentation. |
| 8 | | Publish orders. |

## Section XVI
## Task: Prepare Promotion Packet for Transfer at Permanent Change of Station (PSC) (Out–Processing)

## 3–38. Rules for preparing promotion packets for transfer at PCS
*a.* The promotion packet and a copy of the page of the AAC–Cl0 (Recommended List) that contains the soldier's name will be sealed in an envelope and filed in the action–pending section of the MPRJ by out–processing.

*b.* If the soldier is not on the AAC–Cl0 report during the month of PCS, a statement will be issued by the PSC (out–processing) to verify the soldier was selected for promotion, giving the total promotion points.

*c.* The outprocessing workcenter will ensure that the complete packet as described in paragraph 3–6 is filed in the MPRJ prior to the soldier departing the losing command. If this requirement cannot be met, a letter of explanation signed by the PSC commander or officer in charge will be file soldier's MPRJ prior to departure.

## 3–39. Steps for preparing promotion packets for transfer at PCS
The steps for preparing promotion packets for transfer (out–processing) are contained in table 3–16.

**Table 3–16**
**Preparing promotion packets for transfer at PCS (out–processing)**

| Step | Work Center | Required action |
|---|---|---|
| 1 | PROM | Ensure promotion packet is filed in the MPRJ. |
| 2 | | File a copy of the current AAC–C10 report or statement verifying soldier's promotion list status in the promotion packet. |

**Table 3–16**
**Preparing promotion packets for transfer at PCS (out–processing)—Continued**

| Step | Work Center | Required action |
|---|---|---|
| 3 | | File promotion packet in the action pending part of the MPRJ. |
| 4 | ENRC | Forward MPRJ to out–processing station. |

## Section XVII
## Task: Process Promotions Upon Arrival at Gaining Organization (In–Processing)

## 3–40. Rules for processing promotions upon arrival at gaining organization
*a.* During in–processing, the gaining commander will determine whether the soldier qualifies for promotion or should be added to the promotion list.

*b.* If otherwise eligible, soldiers on the recommended who meet a promotion point cutoff score while in transit will be promoted during in–processing.

*c.* Recommended list status must be verified. Verification requires a promotion packet and either of the following:

(1) A recommended list published during the month of, or before, the soldier's departure from the losing command, reflecting the most current points.

(2) ) A statement issued by the losing PSC verifying the soldier was recommended by a valid board.

*d.* If a soldier qualifies for promotion while in transist but does not meet the remaining service obligation, the commander will set a suspense date by which the soldier must incur obligated active service for promotion. All dates based on the month he or she actually first qualified for promotion.

*e.* When the soldier meets the service remaining obligation, he or she may be immediately promoted, but not earlier than the effective month.

*f.* When the month of promotion is later than that in which the soldier first qualified and delay is solely due to being intransit, the DOR and effective date of promotion will date the promotion would have occurred had the sold been in intransit status.

*g.* When the promotion or advancement instrument is published by the inprocessing workcenter and the delay solely to the soldier being in an intransit status, so much of paragraph 1–13*e* requires that the DA Form 4 memorandum be forwarded to the next higher advancement promotion authority does not apply. The promotion or advancement instrument will have special instructions indicating that the promotion was delayed solely due to the sold in an intransit status.

## 3–41. Steps for processing promotions upon arrival at gaining organization
The steps for processing promotions upon arrival at a gaining organization upon in–processing are contained in table 3–17.

**Table 3–17**
**Processing promotions upon arrival at a gaining organization (in–processing)**

| Step | Work Center | Required action |
|---|---|---|
| 1 | IOPR | Verify soldier is on a recommended promotion list. |
| 2 | PROM | Integrate soldier to local promotion standing list if he or she has not met a promotion point cutoff score. |

**Table 3–17**
**Processing promotions upon arrival at a gaining organization (in–processing)—Continued**

| Step | Work Center | Required action |
|---|---|---|
| 3 | | Submit SIDPERS transaction to integrate soldier on the AAC–C10, or promote soldiers who met, equaled, or exceeded a promotion point curoff score while in transist. |
| 4 | | Submit SIDPERS transaction to update soldier's grade. |
| 5 | | Review next cycle AAC–C10 report to ensure it reflects the soldier's name and correct promotion point score. |

**Section XVIII**
**Task: Process Promotion Packet at In–Processing**

**3–42. Rules for processing promotion packet at in–processing**

*a.* During in–processing, the PSC that supports the gaining promotion authority will place a soldier's name on the current recommended list based on the promotion packet and either of the following:

(1) A recommended list published during the month of, or before, the soldier's departure from the losing command, reflecting the most current points.

(2) A statement issued by the losing PSC verifying the soldier was recommended by a valid board, reflecting appropriate promotion points.

*b.* If a promotion packet is not available, the above items are not valid. The soldier's name will not be placed on the recommended list of the gaining command.

(1) The gaining command must take prompt action to request documents missing from the soldier's former command.

(2) If the promotion packet cannot be obtained, but promotion board proceedings are available and the soldier's losing command can verify recommended list status, then the promotion board proceedings or the original initial DA Form 3355 signed by the promotion authority may be used to reconstruct the soldier's promotion packet, provided it is determined the soldier held valid recommended status prior to PCS and can be integrated onto the list.

*c.* Soldiers whose promotion packet was lost and cannot be reconstructed or whose recommended list status cannot be verified within 90 days of arrival in command must appear before a promotion board to gain recommended list status. The PSC will notify the promotion authority of this 90 days after the soldier's arrival in the command.

**3–43. Steps for processing promotion packet at in–processing**

The steps for processing promotion packet at in–processing are contained in table 3–18.

**Table 3–18**
**Processing promotion packet at in–processing**

| Step | Work Center | Required action |
|---|---|---|
| 1 | IOPR | Verify promotion list status. |
| 2 | | Submit SIDPERS (PRMS transaction) to integrate soldier on promotion list. point cutoff score. |
| 3 | | File promotion packet in MPRJ. |

**Section XIX**
**Task: Process Grade Related Pay Inquiries (SGT or SSG)**

**3–44. Rules for processing grade related pay inquiries (SGT or SSG)**

*a.* A representative within the Promotions Work Center of the PSC must sign the DA Form 2142 as verifying official, for purposes of casual payment. Authorized representatives may be one of the following:

(1) Chief of promotions section.

(2) SSG or above.

*b.* Signature of verifying official will signify that promotion is valid and appropriate transactions have been submitted to corect SIDPERS/JUMPS database.

*c.* Once signed by verifying official the soldier will take the document to Finance for payment.

*d.* Copy of LES will be provided as part of the pay inquiry.

**3–45. Steps for processing grade related pay inquiries (SGT or SSG)**

The steps for processing grade related pay inquiries (SGT o SSG) are contained in table 3–19.

**Table 3–19**
**Processing grade related pay inquiries (SGT or SSG)**

| Step | Work Center | Required action |
|---|---|---|
| 1 | UNIT | Send soldier to PAC. Ensure soldier has copy of current LES. |
| 2 | BNS1 | Soldier initiates pay inquiry DA Form 2142. |
| 3 | | Forward inquiry to PSC for action. |
| 4 | PSC | Receives inquiry. |
| 5 | PROM | Verifies promotion order for validity. |
| 6 | | Review AAC–P01, AAC–P11 to determine if soldier was correctly promoted in SIDPERS. |
| 7 | | Review AAC–P49 to determine if a five–card transaction was generated to U.S. Army Finance and Accounting Center (USAFAC). |
| 8 | | Review AAC–P51 to determine if transaction generated to USAFAC failed to process. |
| 9 | PROM | Review r070 report to determine if soldier was correctly promoted in JUMPS. |
| 10 | | If above reviews do not show a processing error, contact the FAO and ask for soldier's grade and effective date of promotion on JUMPS. |
| 11 | FAO | The FAO provides PSC all information necessary to resolve inquiry. |
| 12 | PROM | Submit any necessary corrections. If SPF needs to be corrected, submit a GRCH transaction. If data on MMPF needs to be corrected, submit a JACT transaction. |

**Table 3–19**
**Processing grade related pay inquiries (SGT or SSG)—Continued**

| Step | Work Center | Required action |
|------|-------------|-----------------|
| 13 | PROM | Send soldier to the FAO with verified source documents, if local policy authorizes casual payment. |

Notes:
In cases mentioned above, a source document (DA Form 4187, promotion order, Article 15, court–martial order) must have been published.

**Table 3–2**
**Eligibility criteria**

| Factor | Criteria | Exceptions | Waiver (Limit of two) |
|--------|----------|------------|------------------------|
| 1. MOS. | Soldiers must compete for and be promoted in their CPMOS. | None. | None. |
| 2. Education. | Civilian—Must have high school diploma, general education development (GED) equivalent, associate, or higher degree. Military—The Primary Leadership Development Course (PLDC) is mandatory prior to board appearance for SSG. All nonresident courses are not acceptable for this requirement. Graduates of a resident BNCOC, ANCOC, or PLDC meet this requirement. Graduate of a resident NCO Academy prior to 1 October 1976 meet this requirement. Graduates from PLDC or equivalent course listed above prior to promotion to SGT effective 1 October 1989. | None.<br><br>Resident Basic Non–commissioned Officers' Course (BNCOC) graduate prior to 1 January 1986 are exempt from this requirement. | None.<br><br>None. |
| 3. Board appearance. | Soldiers must be recommended by a promotion selection board. | None. | None. |
| 4. Time requirement for promotion to SSG. | | | |
| a. TIS for promotion (as of the 1st day of the promotion month). | 84 months. | Secondary zone. | Down to 48 months TIS for secondary zone promotion. |
| b. TIMIG for promotion (as of the 1st day of the promotion month). | 10 months. | | 5 months. |
| c. TIS for board appearance (as of the 1st day of the board month). | 81 months. | Secondary zone. | Down to 45 months TIS for soldiers who have been recommended to compete in the secondary zone. |
| d. TIMIG for board appearance (as of the 1st day of the board month). | 10 months | | 5 months. |
| 5. Requirements for promotion to SGT. | | | |
| a. TIS for promotion (as of the first day of the promotion month. | 36 months. | Secondary zone. | Down to 18 months TIS for soldiers who have been recommended to compete in the secondary zone. |
| b.TIMIG for promotion (as of the 1st day of the promotion month). | 8 months. | | 4 months. |

Table 3–2
Eligibility criteria—Continued

| Factor | Criteria | Exceptions | Waiver (Limit of two) |
|---|---|---|---|
| c. TIS for board appearance (as of the 1st day of the board month). | 33 months. | | Down to 15 months for soldiers who have been recommended to compete in the secondary zone. |
| d. TIMIG for board appearance (as of the 1st day of the board month). | 8 months. | | 4 months. |
| 6. Disciplinary. | No record of court–martial conviction, AWOL, or lost time on current term of enlistment. This criteria does not apply to soldiers who held recommended list status prior to 1 October 1985. An approved reenlistment waiver must be received prior to board appearance. | None. | None. |
| 7. Physical qualification. | Soldiers are considered to be physically qualified for promotion, unless determined otherwise by a Physical Evaluation Board. | None. | None. |
| 8. SGT. | An SQT score of 60 or higher (as reported on the recent individual soldier's report (ISR) or test site officer (TSO) data.<br><br>Score will remain valid for 24 months from date tested unless replaced by a more recent score. | Soldiers who have no SQT score for the reasons indicated below, use the no fault provisions.<br>a. A solder who is unable to take an SQT through no fault of his/her own as determined by the promotion authority.<br>b. A soldier who has taken a regular SQT but has not received the test results.<br>c. A soldier who is in an MOS for which no SQT is available or has not been implemented into the promotion system.<br>d. A soldier who is exempt from SQT evaluation by HQDA.<br>e. A soldier has been reclassified other than for inefficiency or misconduct and is not on a recommended list may compete for promotion based on prior eligibility. | The promotion authority may waive an SQT of 59 or less. |
| 9. Promotion points. | Soldiers must obtain a minimum of 550 points if competing for promotion to SSG, and 450 points if competing for promotion to SGT prior to being added to the recommended list. | None. | None. |
| 10. Service remaining obligation. | 12 months for promotion to SSG. | a. Those whose active service would exceed the the reenlistment ineligibility point for SSG (20 years) if required to meet the 12–month service remaining obligation. In those cases, soldiers will be required to extend the required number of months needed to complete 20 years service.<br>b. Those whom HQDA will promote while missing in action (MIA), captured, or detained.<br>c. Very seriously ill soldiers. | |

**Table 3–2**
**Eligibility criteria—Continued**

| Factor | Criteria | Exceptions | Waiver (Limit of two) |
|---|---|---|---|
| | | d. Those who extended ETS would be after age 55 is attained if required to meet the 12 months service remaining obligation. In those cases, soldier will be required to extend through the end of the month in which 55th birthday occurs.<br>e. Those who would lose eligibility to reenlist in their special reenlistment bonus (SRB) MOS.<br>f. Those who lose entitlement to all or a portion of SRB if required to extend their current term of service or reenlist to meet the service remaining service obligation, provided that the soldier has made a firm commitment in writing, to reenlist when his or her current term of service expires. | |

| PROMOTION POINT WORKSHEET | | 1 TYPE | 2 DATE |
|---|---|---|---|
| For use of this form, see AR 600-8-19, the proponent agency is ODCSPER | | [X] a. Initial<br>[ ] b. Reevaluation<br>[ ] c. Recomputation | 2 JAN 90 |

**DATA REQUIRED BY THE PRIVACY ACT OF 1974**

| | |
|---|---|
| AUTHORITY: | Title 5 USC, Section 301. |
| PRINCIPAL PURPOSE: | To determine eligibility for promotion. |
| ROUTINE USES: | Information may be referred to appropriate authorities to determine promotion eligibility and validity of points granted. |
| DISCLOSURE: | Voluntary failure to furnish information requested may result in denial of promotion. |

| 3 NAME | 4 SSN | 5 GRADE |
|---|---|---|
| ADCOCK, LISA A | 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 | SGT |

| 6 CURRENT ORGANIZATION | 7 SRB MOS | 8 PMOS | 9 RECOMMENDED GRADE/CPMOS |
|---|---|---|---|
| HHC, 1/102 INF BN<br>FT DEFENSE, VA 22310 | NA | 71L | SSG/71L |

**SECTION A - RECOMMENDATION**

| 10 FROM (Commander) | 11 THROUGH (Promotion Authority) | 12 TO (PSC) |
|---|---|---|
| HHC, 102 INF BN<br>FT DEFENSE, VA 22310 | CDR 1/102 INF BN<br>FT DEFENSE VA 22043 | CDR 507 PSC<br>ATTN: AFZZ-AG-PM<br>FT DEFENSE VA 22310 |

13. Under the provisions of AR 600-8-19, chapter 3 (Active Army); AR 140-158, chapter 3 (USAR); or NGR 600-200, chapter 5 (ARNG) (check one of the following):

[X] a. Recommend the above-named soldier for promotion/reevaluation to the grade indicated. (Complete lines 13b (1) - (6) and send to the promotion authority.)

[ ] b. Request the following information be used in the next scheduled recomputation of promotion points. (Complete lines 13(b)(2) - (6) and send to the PSC.)

| (1) Waivers required (maximum of two allowed) | | (2) Most recent individual assigned weapon qualification | | |
|---|---|---|---|---|
| [X] | (a) Time in Service | | (a) Expert | (d) DATE |
| | (b) Time in Grade | [X] | (b) Sharpshooter | |
| | (c) SQT score (59 or below) | | (c) Marksman | 10 DEC 89 |
| (3) Most recent Physical Fitness Test Scores (Minimum score of 60 in each event) | | (4)(a) SOLDIER'S CURRENT SQT SCORE | | (4)(b) DATE |
| 75 | (a) Situps | 81 | | 15 JUN 89 |
| 80 | (b) Pushups | (5) I certify (Must check one of the following on all recommendations): | | |
| 90 | (c) Two-Mile Run | [X] | (a) That the soldier has taken an SQT during the most recent test period. | |
| 245 | (d) Total | (e) DATE | | (b) That the soldier has not taken an SQT due to no fault of his/her own. |
| 14 REMARKS | | | (c) That the soldier failed to take an SQT during the most recent test period due to his/her own fault. | |
| | | (6) PROMOTION POINTS AWARDED TO SOLDIER FOR DUTY PERFORMANCE (Maximum 200 points) | | |

| 15a SIGNATURE BLOCK OF COMMANDER | 15b SIGNATURE OF COMMANDER | | 15c DATE |
|---|---|---|---|
| J.P. DORSEY<br>CPT IN, Commanding | J.P. Dorsey | | 2 JAN 90 |
| 16a SIGNATURE BLOCK OF PROMOTION AUTHORITY | 16b SIGNATURE OF PROMOTION AUTHORITY | 16c CHECK ONE<br>[X] Approved<br>[ ] Disapproved | 16d DATE |
| Thomas R. Leedy<br>LTC IN, Commanding | Thomas R. Leedy | | 3 JAN 90 |

**SECTION B - ADMINISTRATIVE POINTS**

| | POINTS GRANTED |
|---|---|
| 1. DUTY PERFORMANCE - MAXIMUM 200 POINTS (Enter points awarded by Commander for duty performance on promotion recommendation (See Section A, item (13b(6).) | |
| 2. SKILL QUALIFICATION TEST (SQT) - MAXIMUM 200 POINTS | POINTS GRANTED |
| a. Enter the soldier's latest SQT score from the Individual Soldier's Report (ISR), or TSO data, if the score is 60 or higher    81 × 2 = | 162 |
| b. Enter the number of promotion points granted under the no fault provision. | |

DA FORM 3355, APR 91        DA FORM 3355, MAR 85 IS OBSOLETE

Figure 3-1. Sample of a complete DA Form 3355

| 3. | Awards and Decorations · Maximum 50 Points List and multiply the number of awards received by the number of points authorized for the award as explained in the instructions. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CERT OF ACHVMT | 1 | x | 5 | = | 5 | | x | = | | x | = |
| | | x | | = | | | x | = | | x | = |
| | | x | | = | | | x | = | | x | = |
| | | | | | **Total Points Granted** ⟶ | | 5 | | | |

| 4. | Military Education · Maximum 150 Points | | | | | | |
|---|---|---|---|---|---|---|---|
| PLDC | 30 | | | | | | |
| CoRR CRS | 3 | | | | | | |
| AG 002 = 5 | | | | | | | |
| AG 004 = 5 | | | | | | | |
| AG 021 = 8 | | | | | | | |
| NBC · 1 WK | 2 | | | | | ToTAL | 35 |

| 5. | Civilian Education · Maximum 100 Points | | 6. | Military Training · Maximum 100 Points | |
|---|---|---|---|---|---|
| UNIV ce Md | 13 | | a. | Marksmanship | 30 |
| | | | b. | Physical Fitness Test | 25 |
| | **Total Points Granted** ⟶ | 13 | c. | **Total Points** | 55 |

**7.** I certify that the above administrative points shown have been accurately extracted from appropriate records and promotion points indicated are correct.

| a. SIGNATURE OF RESPONSIBLE OFFICIAL | b. GRADE | c. DATE | d. SIGNATURE OF RECOMMENDED INDIVIDUAL |
|---|---|---|---|
| *Caleb A Andrus* | SSG | 10 JAN 90 | *Ross J Dull* |

**SECTION C- TOTALS**

| Note · Only the fractional total promotion points in item 3 of this section will be rounded off to the nearest whole number. A fraction of 5/10 or higher will be rounded up to the next higher whole number. A fraction of 4/10 or less will be rounded down to the next lowest whole number. | GRANTED |
|---|---|
| 1. TOTAL ADMINISTRATIVE POINTS · MAXIMUM 800 POINTS (Total of items 1 through 6, Section B.) | 460 |
| 2. TOTAL BOARD POINTS · MAXIMUM 200 POINTS | 195 |
| 3. TOTAL PROMOTION POINTS · MAXIMUM 1,000 POINTS (Add items 1 and 2.) | 655 |

**4.** I certify that the total points shown have been accurately extracted from appropriate records and promotion list points indicated are correct.

| a. SIGNATURE OF BOARD RECORDER | b. GRADE | c. DATE |
|---|---|---|
| *Robert M. Blum* | CPL | 10 JAN 90 |

**5.** I certify that the soldier has been recommended for promotion by a valid promotion board.

| a. SIGNATURE BLOCK OF PROMOTION AUTHORITY | b. SIGNATURE | c. DATE BOARD PROCEEDINGS WERE APPROVED |
|---|---|---|
| THOMAS R. LEEOY LTC, IN, COMmANdiNg | *Thomas R Leedy* | 12 JAN 90 |

**6.** STATEMENT (Use only when a recommendation is disapproved, when a soldier is not selected by the board, or when the soldier cannot be added to the recommended list due to not attaining the minimum required points.)

**"I have been counseled on my promotion status and deficiencies."**

| a. SIGNATURE OF SOLDIER | b. DATE | c. TYPED OR PRINTED NAME OF COUNSELOR |
|---|---|---|
| | | d. SIGNATURE OF COUNSELOR |

*PAGE 2, DA FORM 3355, APR 91*

Figure 3-1. Sample of a complete DA Form 3355—Continued

Instructions for completing DA Form 3355

**Item 1. Type.** Place check mark by appropriate type.

**Item 2. Date.** Self explanatory.

**Item 3. Name.** Enter last name, first name, middle initial (or NMI if none).

**Item 4. Social Security Number.** Enter social security account number.

**Item 5. Grade.** Enter present grade.

**Item 6. Current organization.** Enter current organization.

**Item 7. SRB MOS.** If soldier is SRB recipient enter SRB MOS.

**Item 8. MOS.** Self explanatory.

**Item 9. Recommended grade/MOS.** Self explanatory.

**Section A. Recommendation**

**Item 10. From.** Self explanatory. Check appropriate statement.

**Item 11. Through.** Self explanatory.

**Item 12. To.** Self explanatory.

**Item 13.** Check appropriate statement, enter date and score where required. Unit Commander's signature on Section A verifies soldier's APFT and weapons qualification score. Promotion points will be granted based on a maximum of 200 points to be awarded by the commander. In awarding these points, commander should consider values or NCO responsibilities and–personal traits such as potential for advancement, competence, physical fitness and military bearing, leadership, training, responsibility and accountability, adaptability and expression. Evaluate the 'whole person.'

**Item 14. Remarks.** Soldier requesting reevaluation must do so by using this section. The soldier's signature and election for either an administrative or total reevaluation must be included. Explanation of waiver may also be addressed in this section.

**Item 15. Signature of commander.** Self explanatory.

**Item 16. Signature of promotion authority.** Self explanatory.

**Section B—Administrative Points**

Hard copy documents are required to verify the award of all promotion points, except as otherwise stated. All items of Section B are required to be authenticated by a PSC official (SSG or above) prior to initial board appearance, during recomputation periods, and when a reevaluation occurs. Indicate "soldier not available for signature," if applicable. (See signature blocks at the end of Section B Part II.)

**Item 1. Duty performance.** Self explanatory.

**Item 2. Skill qualification test:**

a. If a soldier's score is older than 24 months from date tested, or if the soldier does not have an SQT score at the time of reclassification or recomputation grant points under the table below. Promotions points will be awarded based on the total number of administrative points from items 1, 3, 4, 5, and 6, Section B.)

| Total Score | Prom Points | Total Score | Prom Points |
|---|---|---|---|
| 0–37 | = 120 | 338–375 | = 165 |

| Total Score | Prom Points | Total Score | Prom Points |
|---|---|---|---|
| 38–75 | = 125 | 376–412 | = 170 |
| 76–112 | = 130 | 413–450 | = 175 |
| 113–150 | = 135 | 451–487 | = 180 |
| 151–187 | = 140 | 485–525 | = 185 |
| 188–225 | = 145 | 526–562 | = 190 |
| 226–262 | = 150 | 563–599 | = 195 |
| 263–300 | = 155 | 600 | = 200 |
| 301–337 | = 160 | | |

Note. If the Individual soldier's report is not available, SQT data received from the TSO may be used to award promotion points. The information must be provided by correspondence (for example, DA Form 4187 or memorandum), be signed by the TSO and include the MOS in which tested, date test was scored, and score. The date the test was scored will be used to determine eligibility for promotion points. A copy of the TSO data will be attached as par of the promotion packet. Scores older than 24 months from date tested will not be used. Upon initial recommendation for soldiers who failed to take the SQT due to their own fault, the recommending commander will inform the soldier that he or she is ineligible to compete for promotion until a current SWT score has been received or 12 months has elapsed since the close of the test window in which the soldier failed to test, whichever is earlier. Recommendation will not be forwarded to the promotion authority for soldiers in this category. After the 12 month period, the soldier may compete using the no fault provision or until an SQT score is received, provided he or she does not fail to take the SQT during the next test window.

**Item 3. Awards and decorations**
Multiply the number of points authorized by the number of awards received.

a. Soldier's Medal or higher award—35
b. Bronze Star Medal (Valor or Merit)—30
c. Defense Meritorious Service Medal—25
d. Meritorious Service Medal (MSM)—25
e. Air Medal (Valor or Merit)—20
f. Joint Service Commendation Medal—20
g. Army Commendation Medal (Valor or Merit)—20
h. Joint Service Achievement Medal—15
i. Army Achievement Medal—15
j. Purple Heart—15
k. Combat Infantry Badge—15
l. Combat field Medical Badge—15
m. Army Reserve Component Achievement Medal (reserve component only)—10
n. Good Conduct Medal—10
o. Expert Infantry Badge—10
p. Expert Field Medical Badge—10
q. Basic US Army Recruiter Badge (each subsequent award, that is, Gold Achievement Star, Gold Recruiter Badge, Sapphire Achievement Star, will receive 5 points)—10
r. Parachutist Badge—5
s. Parachute Rigger Badge (permanent awards only)—5
t. Divers Badge—5
u. Explosive Ordnance Disposal Badge (permanent awards only)—5
v. Pathfinder Badge—5
w. Aircraft Crewman Badge (permanent awards only)—5

x. Nuclear Reactor Operator Badge—5

y. Ranger Tab—10

z. Special Forces Tab—5

aa. Driver and Mechanic Badge (maximum 5 points)—5

ab. Air Assault Badge—5

ac. Drill Sergeant Identification Badge—5

ad. Campaign Star (Battle Star)—5

ae. Tomb Guard Identification Badge (permanent awards only)—5

af. DA Form 2442 (Certificate of Achievement) and locally designed Certificate of Achievement (both must be awarded by commanders/deputy commanders serving in positions authorized the rank of LTC or higher or any general officer) (maximum 10 points)—5

ag. Equivalent awards and decorations earned in other U.S. Uniformed Forces receive same points as army awards—_____

a. Awards of higher skill badges count as subsequent awards and will receive points, for example, a soldier awarded the Senior Parachutist Badge and the Parachutist Badge will be credited with two Parachutist Badges (10 points).

(1) Soldiers who have been awarded the parachutist badge, are currently serving in an approved TOE/table of distribution and allowances (TDA) parachutist position and are in receipt of incentive pay for parachute duty will be awarded extra points in addition to those awarded badges on line (18), as follows: Parachutist, 20 points; Senior, 25 points; Master, 30 points.

(2) Soldiers who receive additional points under these provisions and who voluntarily terminate or are terminated for cause (misconduct or inefficiency) will be subject to an immediate adjustment of item 2 (when administrative points are used), 3, 7, 9, if appropriate, and will have their points reduced by the appropriate number.

(3) Soldiers who are involuntarily terminated from parachutist status due to any reason will have their points reduced by the appropriate number immediately.

(4) For soldiers who are reassigned, the following action will be taken:

(a) Losing commander will ensure that the promotion points are reduced prior to departure (this could be accomplished during out processing).

(b) The gaining commander will ensure that if the individual is assigned to an airborne slot, the promotion points are increased (this could be accomplished during in–processing).

ai. The Good Conduct Medal ending date (period of service) will be used to determine eligibility for promotion points. The date of the order or ending period, whichever is later, will be used to determine eligibility for promotion points on all remaining awards for example, Army Commendation Medal (ARCOM) Army Achievement Medal (AAM) and MSM.

aj. Campaign stars may be verified by entries in item 9 DA Form 2–1 .

ak. Promotion points are not authorized for foreign awards decoration(s) or badges.

## Item 4. Military education

a. Grant promotion points for completion of primary and basic level Noncommissioned Officers Education System (NCOES) courses listed in AR 351–1 as follows:

(1) Award 30 points for completion of the first NCOES course regardless of grade and MOS.

(2) Award 3 points per week for any additional NCOES course.

(3) Only resident NCOES courses are authorized points under this rule. Nonresident NCOES courses are awarded points under correspondence rules.

(4) Noncommissioned Officer Academy (NCOA) courses completed prior to the establishment of Primary Leadership Course (PLC) in 1977 will be awarded 20 points.

b. Ranger School/Special Forces Qualification Course will be awarded 30 points except when the course exceeds 15 weeks in which case 2 points per week will be awarded.

c. The awarding of 2 points per week is authorized for courses listed on a DA Form 87 (Certificate of Training). Training that resulted in the issuing of a DA Form 87 must have been during duty hours (that is, TDY) and funded by the military. Ordinary leave and permissive TDY are not considered as duty time nor are unit funds considered as military funding. Civilian certificates of completion for military training are not authorized promotion points unless verified by DA Form 87.

d. Promotion points for completion of military correspondence (extension) subcourses are as follows:

(1) Determine the number of credit hours completed for subcourses divide that number by 5 (1 point for each 5 credit hours). The result is the number of promotion points to be awarded. Less than 5 credit hours receives no promotion points and fractions will be dropped (for example 9 subcourse hours are worth 1 point).

(2) Promotion points will not be awarded for duplicate subcourses.

(3) Promotion points are not authorized for Air Force correspondence courses unless they are reflected on a transcript showing successful completion of the course examination (CE). Promotion points are not authorized for Volume Review Exercise (VRE).

e. Headstart courses are authorized promotion points based on the 2 points per week rules. Entries in item 17 of DA Form 2–1 will serve as verification. Points are not authorized for subsequent headstart courses in same language.

f. All other courses successfully completed of at least 1 week duration will be awarded 2 points per week.

g. Promotion points are not authorized for completion of basic combat training MOS producing schools or MOS proficiency training. This restriction also applies to training basic combat training/advanced individual training acquired during prior service or in conjunction with reclassification and or reenlistment). This restriction applies whether or not the soldier was awarded an MOS or if the MOS is PMOS secondary military occupational specialty (SMOS) or additionally awarded military occupational specialty (AMOS). This restriction does not apply to the Special Forces Qualification Course. to further career development training BN–COC or the Army Recruiter Course (ARC).

h. Promotion points for special qualifications skill identifier (SQI) or additional skill identifier (ASI) courses are authorized providing the ASI or SQ is not mandatory for the award of an MOS. Use AR 611–201 in making these determinations.

i. Credits are authorized for courses successfully completed by former officers provided the course was not closed to qualified enlisted soldiers on active duty (for example Master Fitness Trainers Course or Defense Language Institute). Soldiers are not eligible for promotion points for attendance at OCS or Warrant Officer Entry Course.

j. Courses completed successfully in other U.S. uniformed services are awarded points on the same basis as those for U.S. Army courses.

k. USMAPS/United States Military Academy (USMA): promotion points will not be awarded for attendance under military education. However promotion points will be awarded under civilian education for semester hours earned.

l. On–the–job training (OJT) and on–the–job experience (OJE) as defined in AR 351–1 does not qualify for the award of promotion points.

m. Fifty promotion points for military education are authorized for successful completion of the Level II Commander Certification Test (TCCT–II and SCCT–II). This test will serve as the proponent certification for MOS 19D 19E and 19K.

n. Fifty promotion points for military education are authorized for proponent certification for MOS 88K and 88L based on the marine certificate applicable for grade.

o. Promotion points are not authorized for Advanced Noncommissioned Officers Course (ANCOC).

p. Medical MOS proficiency training is not authorized promotion points.

**Item 5—Civilian education**

a. Points for civilian education will be granted as follows:

(1) Business/trade school/college: 1 point for each semester hour earned.

(2) Education improvement (maximum 10 points): Award 10 additional promotion points to any soldier who completes one of the following actions while on active duty: obtains a high school diploma/GED or completes any accredited postsecondary course or test. If recommended for SSG the soldier must have completed one of the actions in grade SGT. Once awarded the 10 will remain until the soldier is promoted.

b. DA policy is to award 1 promotion point for each semester hour successfully earned through attendance at or recognized by a regionally accredited college or university, regardless of the basis. Accreditation status is published in Accredited Institutions of Postsecondary Education published annually for the Council on Postsecondary Accreditation by the American Council on Education. Schools listed are accredited by regional, national, and specialized accrediting bodies. The publication is available at local education centers.

(1) For the purpose of awarding promotion points, 1 and one half quarter hours is equal to 1 semester hour. Therefore, to convert quarter hours to semester hours divide the number of quarter hours by 1.5. The result is the number of semester hours or promotion points to be awarded. No distinction is made between correspondence, extension, or resident courses.

(2) Transcripts will be used to determine the number of semester hours earned (student copies are acceptable). Grade slips or reports may be used in place of transcripts providing the form is machine printed, the number of hours (for example semester hours), a final grade, and the school title or name is listed.

(3) Promotion points will be awarded for satisfactory examination results obtained under the Defense Activity for Nontraditional Education Support (DANTES) sponsored examination program with credit recommendations. College level entrance program (CLEP) general and subject examinations, DANTES, and American College Test (ACT) proficiency exams. A soldier who satisfactorily completes all five parts of the CLEP general examination (equivalent to 1 year in college or 30 semester hours) will be awarded 30 promotion points or will be considered to have earned the equivalent of 6 semester hours for each of the five parts satisfactorily completed. Soldiers who satisfactorily complete CLEP subject examinations, DANTES SSTs, or ACT proficiency exams will be awarded points based on the number of semester hours recommended by the American Council on Education (ACE) (local Education Center can assist in determining the appropriate number of semester hours). Duplicate credit will be awarded in any area (local Education Center can assist in resolving questions).

(4) Promotion points for military or civilian training or experience will only be awarded when accepted by a regionally accredited college or university (shown on transcript). American or Army Council on Education Registry Transcript System (AARTS) transcripts may not be used to determine promotion points in this case since they reflect ACE credit recommendations only. Education Centers may assist in the evaluations of college or trade school transcripts (for example, converting quarter trisemester hors into semester hours. Continuing education units may not be used in computing promotion points.

c. Promotion points will be awarded for business or trade school and commercial correspondence courses from accredited schools. Accreditation will be determined as outlined in b(2) above. Completion certificates may be used in place of transcripts providing the number of course hours are listed. The following method will be used to equate business, trade school, and commercial correspondence course hours to semester hours for the purpose

of determining the number of promotion points to be awarded: determine the number of classroom hours or clock hours for which the individual has documentation and, divide the number of classroom hours or clockhours by the number 16. The result is the number of promotion points to be awarded.

d. Soldiers having college credits from foreign colleges or universities will be awarded promotion points provided their credentials have been evaluated and accepted by one of the following: (1) A State university or recognized university or college listed in the Accredited Institution of Postsecondary Education published by the ACE.

(2) International Education Research Foundation, P.O. Box 66940, Los Angeles, California, 90066.

(3) World Education Services, Inc., Old Chelsea Station, P.O. Box 745, New York, New York, 10011.

(4) International Consultants, Inc., of Delaware, 107 Barksdale Professional Center, Newark, Delaware, 19711.

(5) Education Credentials Evaluation, Inc., P.O. Box 17499, Milwaukee, Wisconsin, 53217.

(6) Educational Records Evaluation Service, Senator Hotel Office Building, 1121 L Street, Suite 1000, Sacremento California, 95814.

(7) Consulting Engineers/Education Specialist, International Transcript Evaluation Division, P.O. Box 19576, Houston, Texas 77224–9576

(8) Center for Educational Documentation, P.O. Box 326, Boston, Massachusetts 02130.

(9) Education Evaluators International, Inc., P.O. Box 5397, Los Amitos, California 90721.

e. The officer in charge (OIC), promotions branch may, at any time, require the soldier to obtain additional information when the validity or legibility of a transcript or form is in question.

f. The following courses will not be authorized promotion points: Basic Skills Education Program (BSEP), Advanced Skills Education Program (ASEP), English as a Second Language (ESL), GT Improvement.

**Item 6. Military Training**

a. Markmanship (most recent qualification score with individual assigned weapon).

| Weapon qualification | Promotion Points |
|---|---|
| Expert | 50 |
| Sharpshooter | 30 |
| Marksman | 10 |

(1) The most recent individual assigned weapon qualification score regardless of date, will be used unless a soldier fails to qualify through his or her own fault. The PSC will withdraw all points until the soldier qualifies (actions to be completed during recomputation). Qualification score will be provided by the commander or, if data is not available, entry in item 9, DA Form 2–1 will be used to award points. If individual weapon qualification cannot be provided by the commander and verifying information is not in the MPRJ, zero promotion points will be awarded.

(2) A soldiers individually assigned weapon should normally be the M16A1 rifle; however, it may be another individually assigned weapon when duty requires (for example, 45 or 38 caliber pistol for military police). The commander's decision applies.

b. Physical fitness test (situps, pushups, and 2 mile run). To qualify for promotion points, a soldier must attain a score of 60 on each event. Those soldiers with permanent physical profiles will be granted the minimum qualifying score of 60 for each waived event

and use their actual score for each event taken. They must also qualify on the 2 mile run or approved alternate test according to FM 21–20. Soldiers with temporary physical profiles will use their current APFT score provided it Is not more than 1 year old. However, soldiers who fail to take the APFT or an authorized alternate test according to FM 21–20 by the next regular recomputation will lose their points if more than 90 days have elapsed since the expiration of the temporary profile. Promotion points will be awarded based upon the most recent record APFT.

| APFT score | Promotion points |
|------------|------------------|
| 199–180 | 10 |
| 179 or below | 0 |

**Certification.** Self explanatory.

**Section C–Totals**
**1. Total administrative points.** Enter the total of items 1–6, Section B.

**2. Total board points.** Enter the total board points from DA Form 3357.

**3. Total promotion points.** Enter the total of items 1 and 2.

**Certification and counseling statement.** Self explanatory.

**4.** Self explanatory.

**5.** Self explanatory.

**6.** Self explanatory

Figure 3-1. Sample of a completed DA Form 3355

| APFT score | Promotion points |
|------------|------------------|
| 300 | 50 |
| 299–290 | 45 |
| 289–280 | 40 |
| 279–270 | 35 |
| 269–260 | 30 |
| 259–240 | 25 |
| 239–220 | 20 |
| 219–200 | 15 |

## BOARD MEMBER APPRAISAL WORKSHEET

For use of this form, see AR 600-8-19, the proponent agency is ODCSPER

| 1. NAME (Last, First, MI) | 2. RECOMMENDED GRADE | 3. PRESENT PMOS | 4. RECOMMENDED CPMOS |
|---|---|---|---|
| Adcock, Lisa A | SSG | 71L | 71L |

**5. Board Interview and Evaluation**

| AREAS OF EVALUATION | POINT SPREAD | | | | TOTAL |
|---|---|---|---|---|---|
| | AVERAGE | ABOVE AVERAGE | EXCELLENT | OUTSTANDING | |
| A. Personal Appearance, Bearing, and Self-Confidence | 1-15 POINTS | 16-20 POINTS | 21-25 POINTS | 26-30 POINTS  30 | 30 |
| B. Oral Expression and Conversational Skill | 1-15 POINTS | 16-25 POINTS | 26-30 POINTS | 31-35 POINTS  35 | 35 |
| C. Knowledge of World Affairs | 1-10 POINTS | 11-15 POINTS | 16-20 POINTS | 21-25 POINTS  25 | 25 |
| D. Awareness of Military Programs | 1-10 POINTS | 11-15 POINTS | 16-20 POINTS | 21-25 POINTS  25 | 25 |
| E. Knowledge of Basic Soldiering (Soldier's Manual) (See note.) | 1-15 POINTS | 16-25 POINTS | 26-35 POINTS | 36-45 POINTS  40 | 40 |
| F. Soldier's Attitude (includes leadership and potential for advancement, trends in performance, etc.) | 1-15 POINTS | 16-25 POINTS | 26-35 POINTS | 36-40 POINTS  40 | 40 |

**G. TOTAL POINTS AWARDED** (MAXIMUM 200 POINTS)   195

NOTE:   Questions concerning the knowledge of basic soldiering will be tailored to include land navigation, survival, night operations, inclement weather operations, adverse environment, and terrain.

**6. REMARKS**

**7.** I DO ☑   DO NOT ☐   recommend the soldier for promotion.

| 8. SIGNATURE OF BOARD MEMBER | 9. RANK | 10. DATE |
|---|---|---|
| Denny R Pulley, SFC | SFC | 9 Jan 90 |

DA FORM 3356, APR 91          DA FORM 3356, MAR 86 IS OBSOLETE

Figure 3-2. Sample of a complete DA Form 3356

Instructions for completing DA Form 3356

**Item 1. Name:** Enter last name, first name, middle initial (or NMI if none).

**Item 2. Recommended grade:** Enter grade soldier is being recommended for.

**Item 3. Present MOS:** Enter soldier's current PMOS.

**Item 4. Recommended CPMOS.** Self explanatory.

**Item 5. Board interview and evaluation.**

Each evaluator will decide on the number of points for each of the six categories to be awarded a soldier. Enter the number of points in the appropriate block and carry over to the right column. Add and enter total.

**Item 6. Remarks**

Each evaluator will for the purpose of counseling, comment on specific item(s) in which the soldier appears noncompetitive and/or weak in this section.

**Item 7.** Self explanatory.

**Item 8.** Self explanatory.

**Figure 3-2. Sample of a completed DA Form 3356**

**BOARD RECOMMENDATION**

For use of this form, see AR 600-8-19, the proponent agency is ODCSPER

| | | | | | | 1 DATE |
|---|---|---|---|---|---|---|
| | | | | | | 9 JAN 90 |

| 2 NAME (Last, First, MI) | 3 SSN | 4 RECOMMENDED GRADE | 5 RECOMMENDED CPMOS |
|---|---|---|---|
| ADCOCK LISA A | 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 | SSG | 71L |

**6. Point Results**

| BOARD MEMBER | RECOMMENDED FOR PROMOTION | | POINTS AWARDED | | | | | | BOARD MEMBER TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | YES | NO | A | B | C | D | E | F | G |
| (1) | ✓ | | 30 | 35 | 25 | 25 | 40 | 40 | 195 |
| (2) | ✓ | | 30 | 35 | 25 | 25 | 45 | 40 | 200 |
| (3) | ✓ | | 29 | 31 | 25 | 25 | 45 | 40 | 195 |
| (4) | ✓ | | 27 | 30 | 25 | 25 | 45 | 38 | 190 |
| (5) | ✓ | | 30 | 30 | 25 | 25 | 45 | 40 | 195 |
| (6) | | | | | | | | | |
| (7) | | | | | | | | | |

(8) COMBINED BOARD POINTS — 975

(9) DIVIDED BY NUMBER OF BOARD MEMBERS EQUALS BOARD POINTS (MAXIMUM 200 POINTS) — 195

7. Individual IS ☑ IS NOT ☐ recommended for promotion by a majority of the Board's membership.

**8. CHECK ONE**

NA — a. Individual appeared for reevaluation.

NA — b. Individual was recommended for promotion but his/her administrative points, when added t his/her Board points, were not sufficiently high for attainment of promotion list status.

NOTE: Transfer points awarded from DA FORM 3356 (Items 5A thru 5F) TO DA Form 3357 (Items 6A thru 6G).

9. RECORDER
CPL Robert Blum

10. PRESIDENT
CSM Roe Brown

DA FORM 3357, APR 91          DA FORM 3357, MAR 85 IS OBSOLETE

Figure 3-3. Sample of a complete DA Form 3357

Instructions for completing DA Form 3357

**Item 1. Date:** Self explanatory.

**Item 2. Name:** Enter last name, first name, middle initial (or NMI if none).

**Item 3. SSN:** Enter social security number.

**Item 4. Recommended grade.** Enter grade soldier is being recommended for.

**Item 5. Recommended CPMOS.** Self explanatory.

**Item 6. Point results.** Transfer points from DA Form 3356 (items 5A through 5F) to DA Form 3357 (items 6A through 6G).

**Item 7.** Self explanatory.

**Item 8.** Self explanatory.

**Item 9.** Self explanatory.

**Item 10.** Self explanatory.

**Figure 3-3. Sample of a completed DA Form 3357**

*(Letterhead)*

(Office symbol) (AR 600–8–19)                                                                                  *(date)*

MEMORANDUM FOR: *(Unit's name and address)*

SUBJECT: Report of Promotion Board Proceedings for Promotion to SGT and SSG

   1. The 1st Battalion, 102d Infantry, Enlisted Promotion Board convened at 0800 hours, 9 January 1990, in accordance with AR 600–8–19, chapter 3, section IV, to review records and interview personnel for promotion to SGT and SSG.

   2. The following members were present:

      CSM Joe Lozano, President
      SGM James H. Davis, Member
      ISG Stewart M. Tyson, Member
      SFC Danny R. Pulley, Member
      SFC Lana M Lukes, Member
      SFC William T. Hursh, Member
      CPL Robert M. Blum, Record (w/o vote)

   3. Of those considered for promotion, the following soldiers were recommended for promotion by a majority of voting promotion board members and attained promotion scores equal to or greater than the minimum scores required to attain recommended list status:

    a. To SSG:

| Name | SSN | RMOS | Promotion points | Board points | Promotion score |
|------|-----|------|------------------|--------------|-----------------|
| Adcock, Lisa A. | 000–00–0000 | 71L | 460 | 195 | 655 |
| Cruz, Frank | 000–00–0000 | 11B | 485 | 160 | 645 |
| Glover, Victor D. | 000–00–0000 | 11B | 490 | 185 | 675 |
| Murray, Dennis M. | 000–00–0000 | 75B | 600 | 200 | 800 |
| Shawver, Doug | 000–00–0000 | 11B | 520 | 180 | 700 |

    b. To SGT:

| Name | SSN | RMOS | Promotion points | Board points | Promotion score |
|------|-----|------|------------------|--------------|-----------------|
| Blaskie, Todd | 000–00–0000 | 75B | 425 | 150 | 575 |
| Green, Jesse L | 000–00–0000 | 11B | 325 | 130 | 455 |
| Martin, Doris | 000–00–0000 | 75B | 350 | 140 | 490 |
| Taylor, Cathy | 000–00–0000 | 75C | 475 | 165 | 640 |

   4. The following soldiers were considered but not recommended for promotion. These individuals will be counseled in accordance with AR 600–8–19, paragraph 3–18m.

    a. To SSG:

| Name | SSN |
|------|-----|
| Vega-Gomez, Elba | 000–00–0000 |

    b. To Sgt:

| Name | SSN |
|------|-----|
| Brannon, Dawn E. | 000–00–0000 |
| Cooper, Clarence | 000–00–0000 |

Note: Information as to why a soldier was considered but not recommended may be obtained, on a need-to-know basis, from DA Form 3357 used for the soldier's board appearance.

5. The board adjourned at 1500 hours on 9 January 1990.

6. Recommendation: That the soldiers listed in paragraph 3 be integrated into the recommended list.

2 Encls                                             *(signature and*
• Promotion Board Appointment                       *signature block of*
• Promotion Brackets                                *president of the board)*

Figure 3-4. Sample format for report of board proceedings

AFZZ–ZZ–A (XXXXXXX/XX Apr 90) (AR 600–8–19d) 1st End
SUBJECT: Report of Promotion Board Proceedings for Promotion to SGT and SSG

Commander, 1st Battalion, 102d Infantry, Fort Defense, VA 22310

FOR

Approved 12 January 1990. (See note 1.) (or Disapproved (date))


| | |
|---|---|
| 2 Encls<br>nc | (signature and<br>signature block of<br>president of the board) |

DISTRIBUTION:
1 Organization file

Notes:
1. This date is the date of selection and the month and year will be shown in the DATE heading of the recommended list.
2. Removal boards conducted according to AR 600–8–19, chapter 3, will not report their recommendations in report of promotion board proceedings.

**Figure 3-4. Sample format for report of board proceedings—Continued**

---

(Letterhead)

(Office symbol) (AR 600–8–19)                                                           (date)

MEMORANDUM FOR: SGT Victor Glover 000–00–0000, Co A, 1st Bn, 102d Inf, Fort Defense VA 22332

SUBJECT: Precondition Service Obligation for Promotion

   1. It is my intentention to promote you to staff sergeant on 1 May 1990 in accordance with authority contained in letter, TAPC–MSP–E, 10 April 1990, "DA Promotion Point Cutoff Scores for 1 May 1990." The provisions of AR 600–8–19 chapter 3, preclude your promotion after 31 May 1990 unless you are obligated to serve on active duty until at least 1 May 1991. Your records show your expiration of term of service as 2 July 1990.

   2. You may satisfy the remaining service requirement outlined above by reenlisting or extending your enlistment on active duty. You should immediately contact SFC Lana M. Lukes, Career Counselor (Building 58, extension 3257), for information on the advantages of each course of action (including reenlistment in the higher grade following extension) and details on the options available to you at this time. As soon as I am informed that you have taken actions to obligate yourself to serve until at least 1 May 1991 I will direct your promotion to Staff Sergeant.

   3. If you reenlist or extend before 1 May 1990, your effective date of promotion will be 1 May 1990. If you reenlist or extend on or after 1 April, the effective date of your promotion will be the date of your reenlistment or extension.

   4. You should be aware however that I am authorized to promote you only during May 1990 and must therefore be notified before 31 May 1990 that you have incurred the appropriate service obligation. Should you not become obligated, I must remove your nawme from the local recommended list for promotion to SSG as of 1 June 1990. If this is done, you will not thereafter be reinstated to the list or promoted on the basis of your current recommended list status.

                                                   THOMAS R. LEEDY
                                                   Lieutenant Colonel IN
                                                   Commanding

CF:
PSC (MPRJ)
Career Counselor
CDR, Co A, 1st Bn, 102d Inf

**Figure 3-5. Sample format for notification of precondition service obligation for promotion**

# EXHIBIT F

posted 5/27/94

Headquarters
Department of the Army
Washington, DC
8 April 1994

Immediate Action
INTERIM CHANGE

AR 600-8-19
Interim Change
No. I01
Expires 8 April 1996

Personnel--General

Enlisted Promotions and Reductions

---

**Justification.** This interim change modifies Army policies
concerning promotions and reductions and corrects errors and
omissions in the 1 November 1991 publication of AR 600-8-19.

**Expiration.** This interim change expires 2 years from date of
publication and will be destroyed at that time unless sooner
rescinded or superseded.

1.  AR 600-8-19, 1 November 1991, is changed as follows:

**Page 1.** Applicability, change second sentence to read:  It
applies to U.S. Army Reserve enlisted soldiers who are serving on
active duty and are counted against the end strength of the
Active Army (SGT-SGM promotions).  It also applies to Reserve of
the Army soldiers serving on initial active duty for training.
It does not apply to Army National Guard of the United States and
U.S. Army Reserve soldiers on active duty for training, active
duty for special work, a temporary tour of duty, or serving on
active duty or full-time National Guard duty on Active Guard
Reserve status, or called to active duty for contingency
operations under section 673b, title 10, United States Code.
Soldiers in the U.S. Army Reserve serving on active duty in the
grades of PV1 through SPC will be advanced in accordance with
this regulation.

**Page 1.** Mobilization application is superseded as follows: Upon
mobilization, the proponent agency for this regulation will
announce any changes to enlisted promotion and reduction policies
and procedures.

**Page 1.** Contents, second column, second line:  Delete the letter
"r" in the word "factor".

**Page 2.** Contents, Chapter 3, Section I, line 10:  Change the
words "Hospitalized soldiers" to "Soldiers hospitalized."

**Page2.** Contents, Chapter 3, Section III, line 1:  Change the
word "identify" to "Identifying".

**Page 3.** Contents, Chapter 4, Section II, line 1, Task:  Change

I01, AR 600-8-19
8 April 94

<u>Page 16.</u> Figure 2-2, sample of completed DA Form 4187 (Advancement to PFC), Section IV, after Authority, change: "2-3" to read "2-5".

<u>Page 17.</u> Figure 2-3, sample of completed DA Form 4187 (Advancement to SPC with waiver), Section IV, after Authority change: "2-3" to read "2-5".

<u>Page 18.</u> Paragraph 3-1, add:

g.  If the promotion authority is a general officer he or she may delegate, in writing, his or her promotion authority to the deputy commander or the senior personnel manager.  The person to whom the promotion authority is delegated must be a field grade officer, above the grade of major filling an LTC or higher coded position.

<u>Page 18.</u> Paragraphs 3-2b(1) and (2) are superseded as follows:

(1)  Battalion level.

(a)  Between the 1st and the 10th:  Prepare new recommendations for next month's board; obtain unit commander's decision; obtain promotion authority's signature on DA Form 3355; and forward DA Form 3355 to PSC.

(b)  Between the 1st and the 15th:  Prepare for, conduct, and finalize current month's board.

(c)  Between the 16th and 17th:  Obtain promotion authority's signature on DA Form 3355, and forward packets of current month's board to PSC.

(2)  PSC level.

(a)  Between the 11th and the 20th:  Prepare section B of DA Form 3355, and return to BNS1.

(b)  Between the 18th and the 25th:  Obtain cutoff scores, identify eligibles, verify eligibility, and issue orders.

(c)  Between the 18th and the 30th:  Submit SIDPERS transactions to record current month's board results.

<u>Page 18.</u> Paragraph 3-5 is superseded as follows:

Paragraph 3-5.  Waiver Authority

The promotion authority or designee may waive the eligibility requirements of TIS and TIMIG.

8 April 94                                    I01, AR 600-8-19

<u>Page 18.</u> Paragraph 3-6(4), after the word "latest" insert the words "(current or previous month)".

<u>Page 18.</u> Paragraph 3-7a is amended to read:

a.  Special forces.  Soldiers in CMF 18 who have 18 months time in service and have been recommended by a promotion board will be promoted to SGT on the date of graduation from the Special Forces Qualification Course.  The effective date of promotion and DOR will be the date the soldier is awarded PMOS in CMF 18, provided otherwise qualified.

<u>Page 19.</u> Paragraph 3-7c, first line, change:  "(OSC)" to read "(OCS)".

<u>Page 19.</u> Paragraph 3-7d is superseded as follows:

d.  Promotion orders will cite this paragraph as authority for the promotion.

<u>Page 19.</u> Paragraph 3-8, Title:  Change the words "Hospitalized soldiers" to read "Soldiers hospitalized".

<u>Page 19.</u> Add the following to table 3-1:

| Under Code | Under Reason |
|---|---|
| K | Soldier met cut-off score for SGT prior to PLDC graduation.  Enter year/month for cut-off score (example: K9207). |
| M | Soldier failed PLDC.  Enter year/month of PLDC failure (example: M9207). |
| N | Soldier met cut-off score for SSG prior to BNCOC graduation.  Enter year/month for cut-off score (example:  N9207). |
| P | Soldier failed BNCOC.  Enter year/month of BNCOC failure (example: P9207). |

<u>Page 20.</u> Paragraph 3-14e, first line, change:  the word "reenlistement" to read "reenlistment".

<u>Page 21.</u> Table 3-4, Processing initial SGT or SSG recommendation, Step 16, required action, is superseded as

7

I01, AR 600-8-19                              8 April 94

follows:  Section B of DA Form 3355 must be authenticated by
SSG/GS6 or above.

Page 21. Paragraph 3-18c, add:

(3)  If the promotion authority cannot accomplish these actions
within 3 working days after the promotion board adjourns, a
memorandum of explanation, signed by the promotion authority,
will be attached to the DA Form 3355 citing the specific reason
for the delay.  (NOTE:  The promotion selection date is the date
the promotion authority approves the report of board
proceedings.)

Page 22. Paragraph 3-18j is superseded as follows:

j.  The promotion packet of a soldier on a recommended list will
be kept in the action pending section of the MPRJ until promoted.
A copy of the promotion packet may be kept in the promotions
section.  Documents removed, for any reason, from the promotion
packet will be returned to the soldier.

Page 22. Paragraph 3-20b, add the following:  Soldier's
signature and date are required in this section.

Page 22. Paragraph 3-20c(1), line 2:  Strike through the number
"35" and replace with the number "25".

Page 22. Paragraph 3-20c(5), line 2:  strike through the number
"35" and replace with the number "25".

Page 22. Paragraph 3-20d(2) is superseded as follows:

(2)  Total reevaluation may be requested at any time by soldiers
who increase their promotion points by 25 points or more (DA Form
3355, section B, items 2-6), or after 6 months from the latest
board appearance or computation if they have less than a 25 point
increase (DA Form 3355, section B, items 2-6).

Page 23. Paragraph 3-21, Table 3-7, Processing promotion point
reevaluations, Step 9, required action is superseded as follows:
Complete Section B and authenticate by SSG/GS6 or above.

Page 23. Paragraph 3-22a is superseded as follows:

a.  Effective 1 April 1994, promotion points will be recomputed
annually.  This will be accomplished during the 12th month after
the last computation, such as board appearance, reevaluation, or
recomputation, whichever is later (an adjustment done according
to paragraph 3-24 is not considered a computation for the intent
of this paragraph.)

8

8 April 94                                      I01, AR 600-8-19

Page 23. Paragraph 3-22b, change second sentence to read:  Items 1, 2 (for soldiers being recommended to SSG), 3, 4, 5, and 6 of DA Form 3355 will be used for computation.

Page 23. Paragraph 3-22c, first line, as reads "Section I", change to read:  Section A.

Page 23. Paragraph 3-22, add:

m.  If the soldier is not available, the recomputation will be accomplished by the PSC not later than the 20th of the month following the scheduled month of recomputation.  The specific reason for nonavailability will be entered in the remarks section of the DA Form 3355.  The recomputation will be based on documents available as of the last day of the month preceding the scheduled month of recomputation. (NOTE:  "scheduled month of recomputation" is defined as the 12th month after the last computation.  Computation is defined in paragraph 3-22a above.)

Page 23. Paragraph 3-23, Table 3-8, Conducting annual recomputations, is superseded as follows:

| Step | Work center | Required actions |
|------|-------------|------------------|
| 1 | BNS1 | Check recomputation block, enter date (month and year) and forward DA Form 3355 to unit commander for completion of Section A. |
| 2 | UNIT | Commander will complete, sign, and date Section A of DA Form 3355 and return it to BNS1 within 3 working days of receipt. |
| 3 | BNS1 | Check for accuracy, obtain promotion authority's signature, and forward to PROM. |
| 4 | PROM | Recompute promotion points.  Coordinate with BNS1 for review with soldier. |
| 5 | | Review DA Form 3355 with soldier. |
| 6 | | Complete Section B, DA Form 3355 and authenticate by SSG/GS6 or above. (Soldier must sign this section.) |
| 7 | | Submit SIDPERS PRMS transaction not later than the last SIDPERS cycle of the recomputation month.  Review accuracy of AAC-C10 report. |

9

I01, AR 600-8-19                                        8 April 94

8                            File DA Form 3355 in the MPRJ.

Page 27. Paragraph 3-34k(3) is amended to read:

    (3)   NCOES requirements.

(a)   Soldiers are required to be graduates of PLDC prior to
promotion to SGT and graduates of BNCOC prior to promotion to
SSG.   Soldiers are allowed to compete for promotion to SGT and
SSG but cannot be promoted until completion of the appropriate
NCOES course.   Soldiers who met a cut-off score but were not
graduates of the required NCOES course, will be promoted on the
date they successfully complete the course, provided they are
otherwise qualified.   Effective date and DOR will be the date of
graduation.

(b)   Soldiers who meet a cut-off score but cannot be promoted
because they have not completed the required NCOES course and
subsequently fail the course will have to meet a new cut-off
score.

Page 27. Paragraph 3-34k, add:

(4)   Effective 1 October 1989, soldiers are required to be PLDC
graduates prior to competing for promotion to SSG.

(5)   Effective 1 October 1992, soldiers are required to be BNCOC
graduates prior to promotion to SSG.

Page 30. Table 3-2, factor 2, criteria, military, add:
Effective 1 October 1989, soldiers must be graduates of PLDC
prior to competing for promotion to SSG.

Page 31. Table 3-2, Factor 6, criteria, after first sentence
add:   Soldiers must not be ineligible to reenlist in accordance
with AR 601-280.

Page 33. Figure 3-1, Sample of a completed DA Form 3355, section
A, item 13b(3)(e) enter:   18 August 1989.

Page 33. Figure 3-1, Sample of a completed DA Form 3355, section
B, item l, under points granted enter:   190.

Page 35. Instructions for completing DA Form 3355, section B,
Item 3, Awards and Decorations, awards c through n are realigned
as follows:

c.   Purple Heart--30

d.   Defense Meritorious Service Medal (MSM)--25

10

8 April 94                                    I01, AR 600-8-19

e.  Meritorious Service Medal--25

f.  Air Medal (valor or merit)--20

g.  Joint Service Commendation Medal--20

h.  Army Commendation Medal (valor or merit)--20

i.  Joint Services Achievement Medal--15

j.  Combat Infantry Badge--15

k.  Combat Field Medical Badge--15

l.  Army Achievement Medal--10

m.  Army Reserve Component Achievement Medal--10

n.  Good Conduct Medal--10

Page 36. Instructions for completing DA Form 3355, Item 4,
Military education, paragraph c, add:  Promotion points will not
be awarded for duplicate military training.

Page 36. Instructions for completing DA Form 3355, Item 5,
Civilian education, paragraph a(2), is superseded as follows:

(2)  Education improvement (maximum 10 points).  Award 10
additional promotion points to any soldier who completes any
accredited postsecondary course while on active duty.  If
recommended for SSG, the soldier must have completed the course
while in the grade of SGT.  If the soldier has been awarded the
10 points for obtaining a high school/GED or postsecondary test
(not to include those listed in para b(3) below) prior to the
effective date of this change, he or she will keep the points
until his or her next computation at which time they will be
removed.

Page 36. Instructions for completing DA Form 3355, Item 5,
Civilian education, paragraph b, change the first sentence to
read:  DA policy is to award one promotion point for each
semester hour successfully earned through attendance at or
recognized (through transcript) by a regionally accredited
college or university, regardless of the basis.

Page 36. Instructions for completing DA Form 3355, Item 5,
Civilian education, paragraph b(1), add after last sentence:
When the total hours on a transcript results in a fraction, the
total hours on that transcript will be rounded down (example:  a
soldier has 24 1/2 [.5] hours from NOVA, 10 3/4 [.75] hours from

                                                          11

I01, AR 600-8-19                          8 April 94

USC, and 20 1/4 [.25] hours from CTC, the total would be derived
by adding 24 hours from NOVA, 10 hours from USC, and 20 hours
from CTC, which would be a total of 54 hours).  Soldiers who were
awarded points, prior to the effective date of this change, which
resulted from fractions of points will keep those points until
their next computation at which time they will be adjusted to
comply with this paragraph.

Page 36. Instructions for completing DA Form 3355, Item 5,
Civilian education, paragraph b(3), change the last sentence to
read:  Duplicate credit will not be awarded in any area (local
education centers will assist in resolving questions.)

Page 37. Instructions for completing DA Form 3355, Item 5,
Civilian education, paragraph c, add after last sentence:  When
the total on a transcript results in a fraction, the number of
hours will be rounded down. (See example in para b(1) above.)

Page 37. Instructions for completing DA Form 3355, Item 5,
Civilian education, the first three lines in paragraph d are
superseded as follows:

d.  Soldiers having college credits from foreign colleges or
universities will be awarded promotion points according to b
above provided their credentials have been evaluated (evaluation
must contain a course-by-course breakdown) and accepted by one of
the following:

Page 37. Instructions for completing DA Form 3355, Item 6,
Military Training, paragraph b, lines 1-13 are superseded as
follows:

b.  Physical fitness test (sit-ups, push-ups, and 2-mile run)
must be done according to FM 21-20.  To qualify for promotion
points, a soldier must attain a minimum score of 60 on each
event.  Those soldiers with permanent physical profiles will be
granted the minimum qualifying score of 60 for each event waived
and use the actual score for each event taken.  Soldiers with a
temporary physical profile will use the current APFT score,
provided it is not more than 1 year old at the time of their next
reevaluation or regularly scheduled recomputation and the soldier
was afforded the opportunity to take an APFT or an authorized
alternate test according to FM 21-20.  If the soldier was
afforded the opportunity to take the test and failed, or through
his or her own negligence (as determined by the unit commander)
failed to take the test, the soldier will lose the APFT points.
If the score is more than 1-year old and the soldier was not
allowed to take the test, or could not be tested due to the
profile, the soldier will retain the current points until the
next reevaluation or regularly scheduled recomputation.

12

8 April 94                          I01, AR 600-8-19

Page 43. Figure 3-4, Sample format for report of board proceedings-continued, in the signature block replace the words "President of the Board" with "Promotion Authority".

Page 46. Paragraph 4-2a(1), first line, after the word "DOR", add the words "and BASD".

Page 46. Paragraph 4-1h, first line, between the words "enlisted" and "(EB)" enter the word "bonus".

Page 46. Paragraph 4-2a(5) is superseded as follows:

(5) Ineligible to reenlist per AR 601-280 for the following reasons:

(a)  AWOL during current enlistment without a waiver to reenlist.

(b)  Under approved local bar to reenlistment.

(c)  QMP.

(d)  Court-Martial conviction during current enlistment without a waiver to reenlist.

(e)  Retirement.

(f)  DCSS.

(g)  Flagged in accordance with AR 600-8-2.

Page 46. Paragraph 4-2c is rescinded.

Page 46. Paragraph 4-2, add:

d.  SSG must be a graduate of BNCOC or higher NCOES course in order to be considered for promotion to SFC.

e.  MSG who have been removed from a centralized promotions list for failure of SMC will not be considered by future boards.

Page 46. Paragraph 4-5 is superseded as follows:

4-5.  Personnel appearance and written communication.

a.  No soldier may appear in person before a DA Selection Board on his or her own behalf, or in the interest of anyone being considered.

b.  Eligible soldiers may write to the president of the promotion

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **WILLIAM D. POOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07-1320 (HHK)** |
| | ) | |
| **PETE GEREN** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**<u>ORDER</u>**

This matter comes before the Court on Defendant's Motion to Dismiss in Part, and for

Summary Judgment.  Based upon the motion, the opposition thereto, and the entire record herein,

it is this ____ day of _____, 20___ hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is

hereby DISMISSED WITH PREJUDICE.

This is a final, appealable order.

SO ORDERED.

_____
HENRY H. KENNEDY JR.
United States District Judge

Copies to:
Parties via ECF