**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **WILLIAM D. POOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1:07-cv-1320 (HHK)** |
| | ) | |
| **PETE GEREN** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY
JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant's initial Motion demonstrates why Plaintiff's claim for this Court to order a promotion is nonjusticiable. It also established that the ABCMR's denial of Plaintiff's application for promotion, back pay, and retirement benefits was not arbitrary, capricious, or contrary to law or regulation.

In Plaintiff's Cross-Motion and Opposition ("Pl. Resp."), Plaintiff alleges that his promotion is justiciable because it involves a nondiscretionary promotion and that the Army did not comply with its own regulation when the Plaintiff was not promoted in 1997. (Pl. Resp. at 2-4.) Plaintiff also alleges that the ABCMR was arbitrary and capricious when it denied Plaintiff's application by requiring further evidence that he was on the promotion standing list. (Id. at 4-7.)

It is Plaintiff's burden to prove an error or injustice by a preponderance of the evidence.

(Def. Ex. G, Army Reg. 15-185, ¶ 2-9).[1]  Plaintiff's failure to present compelling information
resulted in the ABCMR properly denying Plaintiff's application due to insufficient evidence.
(AR 90-91.)  In Plaintiff's response, he improperly attempts to place the burden on the
Defendant to "point to a valid historical promotion recommendation list from March 1997 that
does not contain Plaintiff's name" before "reasonably and fairly deny[ing] Plaintiff's claim."
(Pl. Resp. at 4.)  Notwithstanding Plaintiff's improper attempt at burden-shifting, evidence
reflects that Defendant in fact properly followed Army regulations and Plaintiff lacked the
points necessary to be promoted.   This subsequent evidence, while not necessary to uphold the
ABCMR decision, validates the reasonableness of the ABCMR's decision to deny Plaintiff's
application and the finding that Plaintiff's recreated promotion packet was inadequate evidence
to support his promotion request.

## I.  Under Army Regulation 600-8-19 Plaintiff Was Not Eligible For Promotion

### A.  The Promotion E-6/Staff Sergeant ("SSG") Is Not Automatic

Plaintiff incorrectly asserts that the promotion system for an E-5/Sergeant ("SGT") to E-
6/SSG is automatic. (Pl. Resp. at 2-3.)  As stated in the Defendant's opening Motion, the only
automatic promotion in the Army is from the grade of Private, E-1/PVT to Private E-2/PV2.
(Def. Mot. at n. 5; Def. Ex. E, Army Reg. 600-8-19, ¶ 1-8(c) ). The promotion scheme for an E-
5/SGT is semi-centralized. (Def. Ex. E., Army Reg. 600-8-19, ¶ 3-1c.)  The Department of the
Army establishes the cut-off scores each month for each occupational specialty (MOS) in a
centralized manner, and the board appearance, promotion point calculation, promotion list

---

[1] Defendant's Opposition and Reply has two exhibits. For clarity these exhibits are labeled
Exhibit G and Exhibit H, in sequential order with the exhibits in Defendant's opening Motion.

maintenance, and promotion occurs at the unit level in a decentralized manner. (Id. at ¶ 3-1c.)
The points attained by the service member are made up of objective scores such as
marksmanship, the physical fitness test, and education, and subjective scores based on the
commander's discretion and a board. (Id. at Figure 3-1.)  The semi-centralized promotion to E-
6/SSG involves discretionary aspects at the unit level which differentiates the promotion process
from the automatic, centralized promotions for privates.

Plaintiff improperly suggests that once a service member is on a promotion list and
makes the cut-off score that the promotion will take effect immediately, or be "automatic," if
they have the appropriate number of points.  (Pl. Resp. at 2-3).  There are three relevant
instances when the promotion does not take effect immediately, and a soldier must wait three
months before the points become effective: (1) after appearing in front of a board; (2) if the
service member requests a re-evaluation; and (3) following an annual recomputation.  (Def. Ex.
E,  Army Reg. 600-8-19, ¶ 3-22).  In Plaintiff's case this three month period before the points
become effective directly impacted Plaintiff's score, and as such he never met the promotion
cutoff score when his points become effective.  Accordingly, Plaintiff's claim that he should
have automatically been promoted is false.

**B.  Plaintiff Never Met the Cutoff Score to be Promoted**

Plaintiff was not promoted in accordance with Army Regulation 600-8-19.  (Def. Ex.'s E,
Ex. F.)  Army regulations require that a soldier's promotion points, effective that month, must
meet the cut-off score for that month.  (Def. Ex. E, Army Reg. 600-8-19, ¶ 3-34j, k.)  Although
Plaintiff claims to have attained 728 points in March 1997 (Compl. ¶. 17), he never possessed
that number of points according to the Army's personnel database, Total Army Personnel

Database ("TAPDB"). (Def. Ex. H.) The Plaintiff was not promoted because he never met or exceeded the promotion cut-off score as required by regulation.

The regulation states that "[p]romotion points must be recomputed 12 months (plus or minus 1 month) after the last computation (initial board, reevaluation, or recomputation)." (Def. Ex. E, Army Reg. 600-8-19 at ¶ 3-22a). "Recomputation is mandatory…" (Id. at ¶ 3-22(f).) "The soldier will review recomputed scores for accuracy and completeness." (Id. at ¶ 3-22(h).) "Soldiers will continue to be eligible for promotion based on their old promotion point score until recomputed scores become effective…" (Id. at ¶ 3-22(i).) "The new score becomes effective on the first day of the third month following the scheduled recomputation month." (Id. at ¶ 3-22(j).)

The attached declaration of Lieutenant Colonel Thomas Erickson, Branch Chief of Enlisted Personnel Management, and the supporting TAPDB spreadsheet, verify that Plaintiff never met the cut-off score to make him eligible for promotion. (Ex. H.) The table below reflects the Plaintiff's effective promotion points for each month compared to the cut-off score for Plaintiff's MOS occupational specialty.[2]

| Month(s) | Date Of Board or Recomputation | Effective Points | Cut Off Score for 31F | Plaintiff's Status |
|---|---|---|---|---|
| MAY 1995-APR 1996 | MAR 1995 | 678 | | |
| MAY 1996-FEB 1997 | MAR 1996 | 643 | 798 (FEB 1997) | Insufficient Points |
| MAR 1997 | MAR 1996 | 643 | 726 | Insufficient Points |

---

[2] Def. Ex. H supports and elaborates on the documentation in this table. AR 96 lists the applicable cut-off scores for Plaintiff's promotion for the relevant months.

| APR 1997 | MAR 1996 | 643 | 688 | Insufficient Points; New Recomputation Score of 725 not effective until June 1997 |
| MAY 1997 | MAR 1996 | 643 | 670 | Insufficient Points; New Recomputation Score of 725 not effective until June 1997 |
| JUNE 1997 | APR 1997 | 725 | 798 | Insufficient Points |
| JULY 1997 | APR 1997 | 725 | 798 | Insufficient Points |
| AUG 1997 | APR 1997 | 725 | 798 | Eligible / Insufficient Points |
| SEP-DEC 1997 | APR 1997 | 725 | 798 | Not Promotable / Overweight Program |

As noted above, Plaintiff appeared before a promotion board in March of 1995. With the three month waiting period for points to take effect, Plaintiff's score of 678 points became effective on May 1, 1995.  (Id.) The Plaintiff maintained that score of 678 points from May 1995 through April 1996.  (Id.) Plaintiff's score decreased to 643 with the next re-computation in March 1996 and those points became effective on May 1, 1996.  (Id.)  Plaintiff's score remained at 643 points from May 1996 through May 1997. As of March 1997, Plaintiff only had 643 points which did not meet or exceed the requisite cut-off score of 726 points.  (Id.; AR 96.) Contrary to Plaintiff's assertion, he in fact did not have "728 points" in March 1997 (Pl. Resp. at 6) and was not eligible to be promoted.

Instead, Plaintiff's score was  recomputed in April 1997, and with the recalculation, he attained 725 points.  (Def. Ex. H.)  However, Plaintiff's newly re-calculated score could not be

used against the cut-off score for 3 months until June 1, 1997.  (Def Ex. E., Army Reg. 600-8-19, ¶ 3-22(j).)  Plaintiff's previous score of 643, which  remained in effect for the months of April and May 1997, was lower than the cut-off scores of 688 and 670 in those respective months. (Id., ¶ 3-22(a); AR 96.)  Therefore, even though the Plaintiff's recomputation score of 725 appears to have exceeded the cut-off score for April and May 1997, by regulation, Plaintiff's 725 point recalculation was not effective to compare against the cut-off score for those months.  (Ex. E., Army Reg. 600-8-19 ¶ 3-22(j).)

In June 1997, Plaintiff's 725 score became effective.  However, unfortunately for Plaintiff, the cut-off score for his MOS became 798, which also exceeded Plaintiff's score.  (Def. Ex. H; AR 96).  In September 1997, Plaintiff was placed in the overweight program, and became ineligible for promotion because he was flagged.  (Def. Ex. H.)[3]

As set forth conclusively, in Exhibit H, The Defendant followed all of the applicable regulations regarding Plaintiff's promotion.  While it is unfortunate that Plaintiff's 725 score was not effective until June 1997, those were the rules according to the regulation.  Therefore, Plaintiff's claim that the Army failed to follow regulations and automatically promote him (Compl. at 24; Pl. Resp. at 3) must be dismissed.

**II.  The ABCMR Fully Considered Plaintiff's Request for Reconsideration And Properly Determined That No Relief As To The Claims To Promotions, Retirement Pay, And Benefits Were Warranted.**

---

[3] By regulation, after six months if the soldier does not make satisfactory progress toward the maximum allowable weight, the soldier is removed from the promotion standing list. (Def. Ex. E, Army Reg. 600-8-19, ¶ 3-28(b)(8).  After twelve months in the overweight program, a soldier will be removed from the promotion standing list regardless of his/her progress. (Id. at ¶ 3-28(b)(9).)

The ABCMR's decision that Plaintiff presented insufficient evidence to show a probable error or injustice (AR 91) was neither arbitrary and capricious, nor contrary to law or regulation. The ABCMR fully considered all of the Plaintiff's evidence, and determined that Plaintiff's "reconstructed" promotion packet was merely "suggestive, but not compelling." (AR 91). The ABCMR determined that even if the Plaintiff did possess 728 points, without evidence that Plaintiff also maintained his status on the promotion standing list for March 1997, they could not conclude that an error or injustice occurred. Given the evidence in Part 1, *infra*, this decision was not only not arbitrary and capricious, but factually accurate.

The ABCMR acted properly in weighing the evidence Plaintiff submitted and determining that he failed to meet the burden of proof. "The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence." (Def. Ex. G, Army Reg. 15-185 at ¶ 2-9 ). "The ABCMR will decide cases on the evidence of record. It is not an investigative body." (Id. at ¶ 2-2(c).) The regulation also directs the ABCMR to "[d]eny applications when the alleged error or injustice is not adequately supported by the evidence…" (Id. at ¶ 1-8(d).)

The ABCMR began consideration of the Plaintiff's request for reconsideration with the assumption that the Army's promotion process operated with administrative regularity. The Plaintiff then had the burden of proving an error occurred by a preponderance of the evidence. While the Plaintiff claims he "submitted clear evidence with his request for reconsideration to the ABCMR that showed he must have been on a valid promotion recommended list in March

1997" (Pl. Resp. at 4), the ABCMR disagreed.  The ABCMR determined that Plaintiff's

reconstruction of his promotion packet in 2007 was merely "suggestive" and the letters Plaintiff

submitted only suggest he was recommended for promotion in 1991 and 1995.  (AR 90-91.)

According to the ABCMR, the Plaintiff failed to meet his burden to show he should have been

promoted in March 1997 by a preponderance of the evidence.(Id.)

     In the Plaintiff's response, he improperly places the burden of proof on the Defendant to

"point to a valid historical promotion recommendation list from March 1997 that does not

contain Plaintiff's name"  before "reasonably and fairly deny[ing] Plaintiff's claim."  (Pl. Resp.

at 4.)  Yet, it was the Plaintiff's responsibility to present more persuasive evidence in his record,

such as the promotion standing list from March 1997 or a copy of his actual promotion packet.

(Def. Ex. G, Army Reg. 15-185, ¶ 2-9.)  Since the ABCMR determined the alleged error or

injustice was not adequately supported by the evidence, they acted "reasonably and fairly" in

denying Plaintiff's claim.

     As stated in the Defendant's opening Motion, there were numerous reasons why Plaintiff

may not have been on a promotion standing list at the time of his promotion.  Despite the

ABCMR's decision to give Plaintiff the benefit of the doubt and assume that he had the points he

claimed (AR 91),[4] it was reasonable for the ABCMR to require Plaintiff to provide sufficient

evidence that he was still in a promotable status to overcome the presumption of administrative

regularity.  Since the promotion to E-6/SSG requires a soldier to have attained the necessary

_____

[4] The declaration from Lieutenant Colonel Erickson at Exhibit H demonstrates that this
assumption was inaccurate and Plaintiff never in fact had 728 points.  This evidence directly
refutes Plaintiff's Statement of Material Fact # 9: "Defendant failed to promote Plaintiff when
Plaintiff was eligible for promotion and had more than the cutoff number of points necessary for
promotion by regulation,"and # 11: "Plaintiff had 728 points."

points and maintain standing on the recommended promotion list, it was appropriate for the ABCMR to require evidence of both.  Also, based on the variety of reasons a soldier may be removed from the promotion standing list, it was a relevant factor to require before awarding the Plaintiff a promotion, back pay and retirement benefits.

As illustrated in the table above and set forth in Exhibit H, the ABCMR was correct in assuming administrative regularity and requiring additional evidence.  Plaintiff in fact did not attain the points necessary to be promoted in March 1997.  (Def. Ex. H.)  Plaintiff then was placed on the Army's overweight program and flagged from September 1997 through December 1997, which should have resulted in his removal from the promotion standing list.  (Def. Ex. H, Def. Ex. E., ¶¶ 1-10, 3-28)  Therefore, Plaintiff was not entitled to a promotion and was appropriately discharged when he met his RCP of fifteen years.

The ABCMR acted within its discretion and according to its regulation when it weighed all of the evidence Plaintiff submitted and provided a thorough explanation for denying his request for reconsideration.  A court "will not disturb the decision so long as the decision maker examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Burt v. Winter, 2007 U.S. Dist. LEXIS 65800 (D.D.C. 2007)(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29 (1983); Kreis v. Se'y of the Air Force, 275 U.S. App. D.C. 390 (D.C. Cir. 1989)).  Based on the promotion packet recreated by the Plaintiff ten years later, the ABCMR was reasonable to require additional evidence that Plaintiff maintained his status on a promotion standing list before awarding two promotions, back pay for five years never served, and a

lifetime of retirement benefits. There was a logical, rational connection between the facts the ABCMR found, and the decision the ABCMR made.

Plaintiff's Complaint and Motion for Summary Judgment fail to meet the burden of providing cogent and clearly convincing evidence to overcome the presumption that the ABCMR discharged its duties correctly, lawfully and in good faith. See Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996) Plaintiff asserts that simply stating that he was on a promotion standing list in March 1997 should be evidence enough, unless the ABCMR could prove otherwise. This reflects a fundamental misunderstanding of the procedures of the ABCMR. The ABCMR correctly interpreted the evidence presented by the Plaintiff by noting that the letters from the Plaintiff's former leadership only proved that he was on a promotion list in 1991 and 1995. (AR 90-91.) The ABCMR fully evaluated the evidence provided by the Plaintiff, made a rational decision to require evidence that the Plaintiff was on a promotion standing list in March 1997, and provided a detailed explanation to the Plaintiff. (AR 90-91). Although certainly not required, the ABCMR's decision not to grant Plaintiff relief was not only reasonable, but as further evidence demonstrates, was factually accurate as well. Accordingly, Plaintiff cannot show that the ABCMR's decision was arbitrary, capricious, or contrary to Army Regulation.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment and Motion to Dismiss should be granted.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895


Of Counsel:
Major Kelly L. McGovern
U.S. Army Litigation Division
901 N. Stuart St., Suite 400
Arlington, VA 22203
703-696-1626

1

Army Regulation 15–185

Boards, Commissions, and Committees

# Army Board for Correction of Military Records

Headquarters
Department of the Army
Washington, DC
31 March 2006

UNCLASSIFIED

# *SUMMARY of CHANGE*

AR 15–185
Army Board for Correction of Military Records

This rapid action revision dated 31 March 2006--

o  Updates policies and procedures in the reconsideration of Army Board for
   Correction of Military Records decision in order to comply with the United
   States District Court for the District of Columbia decision (Lipsman v.
   Secretary of the Army--Civil Action No. 02-0251, 2004 U.S. Dist. Lexis 17866)
   (para 2-15).

o  Updates appendix A.

This revision--

o  Updates information on the policy and procedures for the operation of the Army
   Board for Correction of Military Records.

o  Implements Department of Defense (DOD) Instruction 1336.6, Correction of
   Military Records (para 2-2a).

o  Implements that portion of section 1034 of title 10 of the U.S. Code and that
   portion of DOD Directive 7050.6, Military Whistleblower Protection, that
   pertain to actions by the Army Board for Correction of Military Records (para
   2-2b).

o  Prescribes DD Form 149 (Application for Correction of Military Record Under
   the Provisions of title 10, U.S. Code, section 1552) (para 2-3b).

**Headquarters**
**Department of the Army**
**Washington, DC**
**31 March 2006**

*Army Regulation 15–185

Effective 1 May 2006

Boards, Commissions, and Committees

# Army Board for Correction of Military Records

By Order of the Secretary of the Army:

PETER J. SCHOOMAKER
*General, United States Army*
*Chief of Staff*

Official:

JOYCE E. MORROW
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a rapid action revision. The portions affected by this rapid action revision are listed in the summary of change.

**Summary.** This regulation provides Department of the Army policy, criteria, and administrative instructions regarding an applicant's request for the correction of a military record.

**Applicability.** This regulation applies to the Active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve unless otherwise stated. Also, it applies to former soldiers of these organizations and their heirs or legal representatives and other individuals, military or civilian, who are affected by a military record. Further, it applies to the Defense Finance and Accounting Service in settling claims as a result of correction of an Army military record. This regulation remains in full effect during mobilization.

**Proponent and exception authority.** The proponent of this regulation is the Assistant Secretary of the Army (Manpower and Reserve Affairs). The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.** This regulation contains management control provisions in accordance with AR 11–2, but does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from HQDA, Assistant Secretary of the Army (Manpower and Reserve Affairs) (SAMR–ZA), Army Pentagon, Washington, DC 20310–0111.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Department of the Army Review Boards Agency, ATTN: SAMR–ARBA, 1941 Jefferson Davis Highway, Arlington, VA 22202–4508.

**Distribution.** This publication is available in electronic media only and is intended for command levels C, D, and E for the Active Army, Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Statutory authority • 1–4, *page 1*

*Section II*
*Responsibilities, page 1*

*This regulation supersedes AR 15–185, dated 29 February 2000.

**UNCLASSIFIED**

**Contents—Continued**

The Secretary of the Army • 1–5, *page 1*
The Director, Army Board for Correction of Military Records • 1–6, *page 1*
The chair of an Army Board for Correction of Military Records panel • 1–7, *page 1*
The Army Board for Correction of Military Records members • 1–8, *page 1*
The Director, Army Records Holding Agency • 1–9, *page 1*
The commanders of Army Staff agencies and commands • 1–10, *page 2*
The Director, Defense Finance and Accounting Service • 1–11, *page 2*

**Chapter 2**
**General,** *page 2*

*Section I*
*Army Board for Correction of Military Records Establishment and Functions, page 2*
Army Board for Correction of Military Records establishment • 2–1, *page 2*
Army Board for Correction of Military Records functions • 2–2, *page 2*

*Section II*
*Application Procedures, page 2*
Who may apply • 2–3, *page 2*
Time limits • 2–4, *page 2*
Administrative remedies • 2–5, *page 3*
Stay of other proceedings • 2–6, *page 3*
Counsel • 2–7, *page 3*

*Section III*
*Actions by the Army Board for Correction of Military Records Director and Staff, page 3*
Criteria • 2–8, *page 3*
Burden of proof • 2–9, *page 3*
Army Board for Correction of Military Records consideration • 2–10, *page 3*

*Section IV*
*Hearings and Disposition of Applications, page 3*
Army Board for Correction of Military Records hearings • 2–11, *page 3*
Army Board for Correction of Military Records decisions • 2–12, *page 3*
Army Board for Correction of Military Records final action • 2–13, *page 3*
Decision of the Secretary of the Army • 2–14, *page 4*
Reconsideration of Army Board for Correction of Military Records decision • 2–15, *page 4*

**Chapter 3**
**Claims/Expenses,** *page 4*
Authority • 3–1, *page 4*
Settlement of claims • 3–2, *page 4*
Payment of expenses • 3–3, *page 4*

**Chapter 4**
**Miscellaneous Provisions,** *page 5*
Special standards • 4–1, *page 5*
Public access to decisions • 4–2, *page 5*

**Appendix A.**   References, *page 6*

**Glossary**

**Index**

# Chapter 1
# Introduction

## Section I
## General

### 1–1. Purpose
This regulation prescribes the policies and procedures for correction of military records by the Secretary of the Army, acting through the Army Board for Correction of Military Records (ABCMR).

### 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

### 1–4. Statutory authority
Section 1552, Title 10, United States Code (10 USC 1552) is the statutory authority for this regulation.

## Section II
## Responsibilities

### 1–5. The Secretary of the Army
The Secretary of the Army will oversee the operations of the ABCMR. The Secretary will take final action on applications, as appropriate.

### 1–6. The Director, Army Board for Correction of Military Records
The Director, ABCMR will manage the ABCMR day–to–day operations.

### 1–7. The chair of an Army Board for Correction of Military Records panel
The chair of a given ABCMR panel will—
  *a.* Preside over the panel.
  *b.* Conduct a hearing.
  *c.* Maintain order.
  *d.* Ensure the applicant receives a full and fair opportunity to be heard.
  *e.* Certify the written record of proceedings in pro forma and formal hearings as being true and correct.

### 1–8. The Army Board for Correction of Military Records members
The ABCMR members will—
  *a.* Review all applications that are properly before them to determine the existence of error or injustice.
  *b.* Direct or recommend changes in military records to correct the error or injustice, if persuaded that material error or injustice exists and that sufficient evidence exists on the record.
  *c.* Recommend a hearing when appropriate in the interest of justice.
  *d.* Deny applications when the alleged error or injustice is not adequately supported by the evidence and when a hearing is not deemed proper.
  *e.* Deny applications when the application is not filed within prescribed time limits and when it is not in the interest of justice to excuse the failure to file in a timely manner.

### 1–9. The Director, Army Records Holding Agency
The director of an Army records holding agency will—
  *a.* Take appropriate action on routine issues that may be administratively corrected under authority inherent in the custodian of the records and that do not require ABCMR action.
  *b.* Furnish all requested Army military records to the ABCMR.
  *c.* Request additional information from the applicant, if needed, to assist the ABCMR in conducting a full and fair review of the matter.
  *d.* Take corrective action directed by the ABCMR or the Secretary of the Army.
  *e.* Inform the Defense Finance and Accounting Service (DFAS), when appropriate; the applicant; the applicant's counsel, if any; and the interested Members of Congress, if any, after a correction is complete.
  *f.* Return original records of the soldier or former soldier obtained from the Department of Veterans Affairs.

## 1–10. The commanders of Army Staff agencies and commands

The commanders of Army Staff agencies and commands will—

*a.* Furnish advisory opinions on matters within their areas of expertise upon request of the ABCMR and in a timely manner.

*b.* Obtain additional information or documentation as needed before providing the opinions to the ABCMR.

*c.* Provide records, investigations, information, and documentation upon request of the ABCMR.

*d.* Provide additional assistance upon request of the ABCMR.

*e.* Take corrective action directed by the ABCMR or the Secretary of the Army.

## 1–11. The Director, Defense Finance and Accounting Service

At the request of the ABCMR staff, the Director, DFAS, will—

*a.* Furnish advisory opinions on matters within the DFAS area of expertise upon request.

*b.* Obtain additional information or documentation as needed before providing the opinions.

*c.* Provide financial records upon request.

*d.* Settle claims that are based on ABCMR final actions, on behalf of the Army.

*e.* Report quarterly to the ABCMR Director on the monies expended as a result of ABCMR action and the names of the payees.


# Chapter 2
# General

## Section I
## Army Board for Correction of Military Records Establishment and Functions

### 2–1. Army Board for Correction of Military Records establishment

The ABCMR operates pursuant to law (10 USC 1552) within the Office of the Secretary of the Army. The ABCMR consists of civilians regularly employed in the executive part of the Department of the Army (DA) who are appointed by the Secretary of the Army and serve on the ABCMR as an additional duty. Three members constitute a quorum.

### 2–2. Army Board for Correction of Military Records functions

*a.* The ABCMR considers individual applications that are properly brought before it. In appropriate cases, it directs or recommends correction of military records to remove an error or injustice.

*b.* When an applicant has suffered reprisal under 10 USC 1034 and DODD 7050.6, the ABCMR may recommend to the Secretary of the Army that disciplinary or administrative action be taken against any Army official who committed an act of reprisal against the applicant.

*c.* The ABCMR will decide cases on the evidence of record. It is not an investigative body. The ABCMR may, in its discretion, hold a hearing (sometimes referred to as an evidentiary hearing or an administrative hearing in 10 USC 1034 and DODD 7050.6) or request additional evidence or opinions.

## Section II
## Application Procedures

### 2–3. Who may apply

*a.* The ABCMR's jurisdiction under 10 USC 1552 extends to any military record of the DA. It is the nature of the record and the status of the applicant that define the ABCMR's jurisdiction.

*b.* Usually applicants are soldiers or former soldiers of the Active Army, the U.S. Army Reserve (USAR), and in certain cases, the Army National Guard of the United States (ARNGUS) and other military and civilian individuals affected by an Army military record. Requests are personal to the applicant and relate to military records. Requests are submitted on DD Form 149 (Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552). Soldiers need not submit applications through their chain of command.

*c.* An applicant with a proper interest may request correction of another person's military records when that person is incapable of acting on his or her own behalf, missing, or deceased. Depending on the circumstances, a child, spouse, parent, or other close relative, heir, or legal representative (such as a guardian or executor) of the soldier or former soldier may be able to demonstrate a proper interest. Applicants must send proof of proper interest with the application when requesting correction of another person's military records.

### 2–4. Time limits

Applicants must file an application within 3 years after an alleged error or injustice is discovered or reasonably should

have been discovered. The ABCMR may deny an untimely application. The ABCMR may excuse untimely filing in the interest of justice.

## 2–5. Administrative remedies
The ABCMR will not consider an application until the applicant has exhausted all administrative remedies to correct the alleged error or injustice.

## 2–6. Stay of other proceedings
Applying to the ABCMR does not stay other proceedings.

## 2–7. Counsel
   *a.* Applicants may be represented by counsel, at their own expense.
   *b.* See DODD 7050.6 for provisions for counsel in cases processed under 10 USC 1034.

## Section III
## Actions by the Army Board for Correction of Military Records Director and Staff

## 2–8. Criteria
The ABCMR staff will review each application to determine if it meets the criteria for consideration by the ABCMR. The application may be returned without action if—
   *a.* The applicant fails to complete and sign the application.
   *b.* The applicant has not exhausted all other administrative remedies.
   *c.* The ABCMR does not have jurisdiction to grant the requested relief.
   *d.* No new evidence was submitted with a request for reconsideration.

## 2–9. Burden of proof
The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence.

## 2–10. Army Board for Correction of Military Records consideration
   *a.* A panel consisting of at least three ABCMR members will consider each application that is properly brought before it. One panel member will serve as the chair.
   *b.* The panel members may consider a case on the merits in executive session or may authorize a hearing.
   *c.* Each application will be reviewed to determine—
   (1) Whether the preponderance of the evidence shows that an error or injustice exists and—
   *(a)* If so, what relief is appropriate.
   *(b)* If not, deny relief.
   (2) Whether to authorize a hearing.
   (3) If the application is filed outside the statute of limitations and whether to deny based on untimeliness or to waive the statute in the interest of justice.

## Section IV
## Hearings and Disposition of Applications

## 2–11. Army Board for Correction of Military Records hearings
Applicants do not have a right to a hearing before the ABCMR. The Director or the ABCMR may grant a formal hearing whenever justice requires.

## 2–12. Army Board for Correction of Military Records decisions
The panel members' majority vote constitutes the action of the ABCMR. The ABCMR's findings, recommendations, and in the case of a denial, the rationale will be in writing.

## 2–13. Army Board for Correction of Military Records final action
The panel members' majority vote constitutes the action of the ABCMR. The ABCMR's findings, recommendations, and in the case of a denial, the rationale will be in writing.
   *a.* Except as otherwise provided, the ABCMR acts for the Secretary of the Army, and an ABCMR decision is final when it—
   (1) Denies any application (except for actions based on reprisals investigated under 10 USC 1034).
   (2) Grants any application in whole or in part without a hearing when—
   *(a)* The relief is as recommended by the proper staff agency in an advisory opinion.

*(b)* Is unanimously agreed to by the ABCMR panel.

*(c)* Does not involve an appointment or promotion requiring confirmation by the Senate.

*b.* The ABCMR will forward the decisional document to the Secretary of the Army for final decision in any case in which—

(1) A hearing was held.

(2) The facts involve reprisals under the Military Whistleblower Protection Act, confirmed by the DOD Inspector General (DODIG) under 10 USC 1034 and DODD 7050.6.

(3) The ABCMR recommends relief but is not authorized to act for the Secretary of the Army on the application.

## 2–14. Decision of the Secretary of the Army

*a.* The Secretary of the Army may direct such action as he or she deems proper on each case. Cases returned to the Board for further consideration will be accompanied by a brief statement of the reasons for such action. If the Secretary does not accept the ABCMR's recommendation, adopts a minority position, or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision.

*b.* The Secretary of the Army will issue decisions on cases covered by the Military Whistleblower Protection Act (10 USC 1034 and DODD 7050.6). In cases where the DODIG concluded that there was reprisal, these decisions will be made within 180 days after receipt of the application and the investigative report by the DODIG, the DA Inspector General (DAIG), or other Inspector General offices. Unless the full relief requested is granted, these applicants will be informed of their right to request review of the decision by the Secretary of Defense.

## 2–15. Reconsideration of Army Board for Correction of Military Records decision

An applicant may request the reconsideration of an ABCMR decision under the following circumstances:

*a.* If the ABCMR receives the request for reconsideration within 1 year of the ABCMR's original decision and if the ABCMR has not previously reconsidered the matter, the ABCMR staff will review the request to determine if it contains evidence (including, but not limited to, any facts or arguments as to why relief should be granted) that was not in the record at the time of the ABCMR's prior consideration. If new evidence has been submitted, the request will be submitted to the ABCMR for its determination of whether the new evidence is sufficient to demonstrate material error or injustice. If no new evidence is found, the ABCMR staff will return the application to the applicant without action.

*b.* If the ABCMR receives a request for reconsideration more than 1 year after the ABCMR's original decision or after the ABCMR has already considered one request for reconsideration, then the case will be returned without action and the applicant will be advised the next remedy is appeal to a court of appropriate jurisdiction.

# Chapter 3
# Claims/Expenses

## 3–1. Authority

*a.* The Army, by law, may pay claims for amounts due to applicants as a result of correction of military records.

*b.* The Army may not pay any claim previously compensated by Congress through enactment of a private law.

*c.* The Army may not pay for any benefit to which the applicant might later become entitled under the laws and regulations managed by the Department of Veterans Affairs.

## 3–2. Settlement of claims

*a.* The ABCMR will furnish DFAS copies of decisions potentially affecting monetary entitlement or benefits. The DFAS will treat such decisions as claims for payment by or on behalf of the applicant.

*b.* The DFAS will settle claims on the basis of the corrected military record. The DFAS will compute the amount due, if any. The DFAS may require applicants to furnish additional information to establish their status as proper parties to the claim and to aid in deciding amounts due. Earnings received from civilian employment during any period for which active duty pay and allowances are payable will be deducted. The applicant's acceptance of a settlement fully satisfies the claim concerned.

## 3–3. Payment of expenses

The Army may not pay attorney's fees or other expenses incurred by or on behalf of an applicant in connection with an application for correction of military records under 10 USC 1552.

# Chapter 4
# Miscellaneous Provisions

## 4–1. Special standards

*a.* Pursuant to the 27 November 1979 order of the United States District Court for the District of Columbia in *Giles v. Secretary of the Army* (Civil Action No. 77–0904), a former Army soldier is entitled to an honorable discharge if a less than honorable discharge was issued to the soldier on or before 27 November 1979 in an administrative proceeding in which the Army introduced evidence developed by or as a direct or indirect result of compelled urinalysis testing administered for the purpose of identifying drug abusers (either for the purposes of entry into a treatment program or to monitor progress through rehabilitation or follow-up).

*b.* Applicants who believe that they fall within the scope of paragraph *a,* above, should place the term "CATEGORY G" in block 11b of DD Form 149. Such applications should be expeditiously reviewed by a designated official, who will either send the individual an honorable discharge certificate if the individual falls within the scope of paragraph *a,* above, or forward the application to the Discharge Review Board if the individual does not fall within the scope of paragraph *a,* above. The action of the designated official will not constitute an action or decision by the ABCMR.

## 4–2. Public access to decisions

*a.* After deletion of personal information, a redacted copy of each decision will be indexed by subject and made available for review and copying at a public reading room at Crystal Mall 4, 1941 Jefferson Davis Highway, Arlington, VA. The index will be in a usable and concise form so as to indicate the topic considered and the reasons for the decision. Under the Freedom of Information Act, records created on or after 1 November 1996 will be available by electronic means.

*b.* Under the Freedom of Information Act and the Privacy Act of 1974, the ABCMR will not furnish to third parties information submitted with or about an application unless specific written authorization is received from the applicant or unless the Board is otherwise authorized by law.

**Appendix A**
**References**

**Section I**
**Required Publications**
This section contains no entries.

**Section II**
**Related Publications**
A related publication is a source of additional information. The user does not have to read a related reference to understand this publication.

**AR 15–130**
Army Clemency and Parole Board

**AR 25–55**
The Department of the Army Freedom of Information Act Program

**AR 340–21**
The Army Privacy Program

**AR 600–8–104**
Military Personnel Information Management/Records

**DODD 7050.6**
Military Whistleblower Protection

**5 USC 552**
Public information; agency rules, opinions, orders, records, and proceedings

**10 USC 1034**
Protected communications; prohibition of retaliatory personnel actions

**10 USC 1552**
Correction of military records: claims incident thereto

**38 USC 5902**
Recognition of representatives of organizations

**Section III**
**Prescribed Forms**
This prescribed form is available through the normal supply channels and the APD Web site http://www.apd.army.mil.

**DD Form 149**
Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552 (prescribed in para 2–3*b*).

**Section IV**
**Referenced Forms**
This section contains no entries.

## Glossary

**Section I**
**Abbreviations**

**ABCMR**
Army Board for Correction of Military Records

**AR**
Army regulation

**ARNGUS**
Army National Guard of the United States

**ATTN**
Attention

**DA**
Department of the Army

**DAIG**
Department of the Army Inspector General

**DFAS**
Defense Finance and Accounting Service

**DOD**
Department of Defense

**DODD**
Department of Defense Directive

**DODIG**
Department of Defense Inspector General

**HQDA**
Headquarters, Department of the Army

**IG**
Inspector General

**U.S.**
United States (of America)

**USAR**
U.S. Army Reserve

**USC**
United States Code

**Section II**
**Terms**

**Applicant**
A person who applies to the ABCMR for correction of an Army military record.

**Counsel**
Includes individuals in good standing of the Federal bar or the bar of any state, territory or the District of Columbia; accredited representatives of veterans' organizations recognized under 38 USC 5902; and other individuals determined by the ABCMR to be competent to represent the interests of the applicant. Army Judge Advocate General's Corps officers may assist in the preparation and submission of an application to the ABCMR. However, they may not

represent an applicant at a hearing, if one is granted, without written approval of The Judge Advocate General of the Army.

**Official military personnel file**
The permanent, historical, and official record of a soldier's military service.

**Records Holding Agency**
The agency responsible for the safe storage, maintenance, and control of records.

**Secretary of the Army**
Includes the Secretary's designee to act on ABCMR matters.

**Section III**
**Special Abbreviations and Terms**
This section contains no entries.

## Index

This index is organized alphabetically by topic and subtopic. Topics and subtopics are identified by paragraph number.

**ABCMR decisions**
  Action of the ABCMR, 1–8, 2–2, 2–8
  Decisional documents, 2–13
  Determinations, 1–8, 2–12
  \Military Whistleblower Protection Act provisions, 2–12, 2–14
**ABCMR deliberations**
  ABCMR determinations, 2–14, 2–15
  Advisory opinions, 1–10, 1–11
  Denial of applications, 1–8, 2–12, 2–13
  Evidence considered, 2–10
**ABCMR hearings**
  Evidence considered, 2–10
  Executive session, 2–10
  Hearings, 2–10, 2–11
  Military Whistleblower Protection Act provisions, 2–2, 2–14
  No right to hearing, 2–11
**ABCMR information sources**
  Advisory opinions, 1–10, 1–11, 2–13
  Information from other Government sources, 1–9, 1–10
  Presumption of administrative regularity, 2–9
  Reports from IG, 2–14
**Access to records**
  Records access, 4–2
  Request for official records, 4–2
**Action after final decision**
  Filing of documentation, 1–9
  Notification to applicant, 1–9
  Notification to Army/Defense officials , 1–9, 3–2
  Notification to counsel/Members of Congress, 1–9
**Actions by the ABCMR staff**
  Administrative denial, 2–8
  Notification to applicant, 2–8
  Preview of applications, 2–8
**Application forms**
  Completion of forms, 2–3, 2–8

**Claims/expenses**
  Authority for payment, 3–1
  Payments not authorized, 3–1, 3–3
**Consideration by the ABCMR**
  Composition of ABCMR panel, 2–10
  Evidence considered, 2–10
**Counsel representation**
  Counsel at applicant's own expense, 2–7
  Definition of counsel, 2–7
  Representation by Army Judge Advocate General Corps officer, 2–7

**Decision of the Secretary of the Army**
  Military Whistleblower Protection Act provisions, 2–13, 2–14
  Review by the Secretary of Defense, 2–14
  Secretary of the Army's actions, 1–5, 2–13, 2–14
**Decisional documents**
  Evidence considered, 2–13

**Explanation of abbreviations and terms, Glossary**

**Final action by the ABCMR**
Actions of the ABCMR, 2–12, 2–13
Decisional documents, 2–13
**Form prescribed**
Completion of form, 2–8, 4–1
Minority reports, 2–14

**Payment of expenses**
Payments not authorized, 3–1, 3–3
**Preparation before applying**
Applicant's actions before applying, 2–5
**Public access to decision**
Documents available to review, 4–2
Index of decisions, 4–2
Prohibitions on furnishing information, 4–2
Purpose paragraph, 1–1

**Reconsideration of applications**
Actions on requests for reconsideration, 2–15
Basis for reconsideration, 2–15
Notification to applicant, 2–15
**References**
Prescribed and referenced forms, appendix A
Related publications, appendix A
**Report of settlement**
The Army section of the DFAS action, 1–11
**Responsibilities**
ABCMR members, 1–8, 2–14
Applicant, 2–3, 2–4, 2–5, 2–6, 2–10, 2–11, 2–12, 2–13, 3–2
Army records holding agency, 1–9, 4–2
DFAS, 1–11, 3–1, 3–2, 3–3
Army Staff agencies and/or commands, 1–10
Chair, 1–7
Director of the ABCMR, 1–6
Secretary of the Army, 1–1, 1–5, 1–9, 2–1, 2–13, 4–2

**Separate communications**
Comments/Recommendations to the Secretary of the Army, 2–14
**Settlement of claims**
Army section of the DFAS actions, 1–11, 3–1, 3–2, 3–3
Settlement report, 1–11
**Setup of the ABCMR**
Authority for ABCMR, 2–1
Composition of ABCMR, 2–1
Special Standards, 4–1
**Staff assistance**
Advisory opinions, 1–10, 1–11
Compliance with requests, 1–10, 1–11, 1–14
Information from other Government sources, 2–13, 4–2
Statutory authority, 1–4
Stay on other proceedings, 2–6

**Time limits**
Excusing a failure to timely file, 2–4, 2–10
Failure to timely apply, 2–4, 2–10

**Who may apply**
Applicants, 2–3
ABCMR jurisdiction, 2–3

**UNCLASSIFIED**

PIN 000431–000



ELECTRONIC  PUBLISHING  SYSTEM
OneCol FORMATTER WIN32 Version  231


PIN:            000431–000
DATE:           03-31-06
TIME:           10:48:24
PAGES  SET:     14
_____
DATA  FILE:     C:\wincomp\r15-185.fil
DOCUMENT:       AR  15–185


SECURITY:       UNCLASSIFIED
DOC  STATUS:  REVISION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM D. POOLE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 07-cv-01320 |
| | ) | |
| PETE GEREN, | ) | |
| | ) | |
| Secretary of the Army | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DECLARATION OF THOMAS L. ERICKSON

In accordance with 28 U.S.C. § 1746, l, Thomas L. Erickson, make the following declaration in the above-cited case.

1. I am the Branch Chief of Enlisted Professional Development.  In this capacity, I am directly responsible for enlisted promotions, enlisted separations, and enlisted retention.

2. I have read the claims of Plaintiff William D. Poole in the above captioned case.

3. I requested and received the Plaintiff William D. Poole's promotion point data on November 16, 2007.

4. The Plaintiff's promotion point data was maintained in the Total Army Personnel Database (TAPDB).  TAPDB is a personnel database of record that maintains all of the Army's personnel information.  The by name data for the Plaintiff was retrieved by querying the historical tapes which were based on original TAPDB files.  TAPDB files are routinely saved for

historical purposes. The by name data for the Plaintiff was then used to construct the attached excel spreadsheet.

    5. The Army has a standard operating procedure for inserting the promotion score, into the Enlisted Distribution Assignment System (EDAS). By policy, promotion points must be verified by the Personnel Services Detachment prior to entering promotion points. Access to the promotion point window of EDAS is limited to only certified and approved promotion point clerks and their supervisors.

    6. By regulation, the soldier verifies that EDAS reflects the correct number of promotion points. This procedure is a built-in safeguard to ensure accuracy, that the Soldier is informed of total points entered, and identify errors.

    7. The Army keeps the computer database in a good state of repair.

    8. The computer system was in working order at the time I obtained the Plaintiff's promotion points.

    9. I recognize the attached exhibit as the Plaintiff's promotion point spreadsheet created from historical TAPDB data.

    10. The table below accurately reflects the information extracted from the Plaintiff's promotion point spreadsheet and will assist in understanding my explanation of the effective date of the Plaintiff's promotion points and the information contained on the enclosed spreadsheet.

| Month(s) | Date Of Board Recomputation | Effective Points | Cut Off Score for 31F | Plaintiff's Status |
|---|---|---|---|---|
| MAY 1995-APR 1996 | MAR 1995 | 678 | | |
| MAY 1996-FEB 1997 | MAR 1996 | 643 | 798 | Insufficient Points |

| | | | (FEB 1997) | |
|---|---|---|---|---|
| MAR 1997 | MAR 1996 | 643 | 726 | Insufficient Points |
| APR 1997 | MAR 1996 | 643 | 688 | Insufficient Points; New Recomputation Score of 725 not effective until June 1997 |
| MAY 1997 | MAR 1996 | 643 | 670 | Insufficient Points; New Recomputation Score of 725 not effective until June 1997 |
| JUNE 1997 | APR 1997 | 725 | 798 | Insufficient Points |
| JULY 1997 | APR 1997 | 725 | 798 | Insufficient Points |
| AUG 1997 | APR 1997 | 725 | 798 | Eligible / Insufficient Points |
| SEP-DEC 1997 | APR 1997 | 725 | 798 | Not Promotable / Overweight Program |

11. The abbreviations on each column on the enclosed spreadsheet:

    a. ME = Month Ending

    b. PAYGR = Pay Grade

    c. BASD = Basic Active Service Date

    d. ETSD = Expiration of Term of Service Date

    e. PRMOS = Primary Military Occupational Specialty

    f. PROPTDT = Promotion Point Date, which reflects the date the current points for that month were entered into EDAS

    g. PROPTS = Promotion Points, which reflects the current points for that month

    h. PREVPTS = Previous Points, promotion points previously entered into EDAS

i. PREVPDT = Previous Promotion Point Date, which reflects the date the previous points were computed

j. SUSP1 = First Suspension of Favorable Action, which indicates the reason of the first suspension (K is the code for suspension due to overweight).

k. TYPE 1 = Type of Suspension for First Suspension, which indicates report date for the suspension (A is the code for initial suspension).

l. DOR = Date of Rank, which indicates the date of rank for the current grade.

m. EREUP = Eligibility to Reenlist, which indicates a Soldiers eligibility to reenlist.

12. The following information can be extracted from enclosed spreadsheet:

a. The Plaintiff appeared before a board or his score was recomputed in March 1995, as shown on row 9703, column PREVPDT. Row 9703, column PREVPTS indicates the Plaintiff possessed 678 point in March 1995.

(1) By regulation, the Plaintiff's score of 678 became effective May 1, 1995. This score remained in effect until the first day of the third month after the next board appearance, requested reevaluation, or annual recomputation.

(2) According to Row 9703, column PROPTDT, the Plaintiff's score was recalculated in March 1996. The new score took effect on May 1, 1996. Therefore, the score of 678 was in effect from May 1, 1995 to May 1, 1996.

b. The Plaintiff's score decreased to 643 points with the recalculation completed on March 1996 (row 9703, columns PROPTDT, PROPTS).

(1) By regulation, the Plaintiff's 643 points took effect on May 1, 1996.

(2) The Plaintiff's 643 points remained in effect until the first day of the third month after the next board appearance, requested reevaluation, or annual recomputation.

(3) The next recalculation was completed in April 1997 (row 9704, column PROPTDT).  Therefore, the Plaintiff maintained a score of 643 points from May 1, 1996 to May 31, 1997.

c.  The Plaintiff's score increased to 725 points with the recalculation completed in April 1997 (row 9704, column PROPTS).

(1) By regulation, the Plaintiff's 725 points took effect on June 1, 1997.

(2) According to the enclosed spreadsheet, the Plaintiff maintained a score of 725 points for the remainder of 1997 and through April 1998.

d.  The "K" indicated in the column labeled "SUPS1" indicates the Plaintiff was enrolled in the Army's overweight program.  This status indicates the Plaintiff's record was "flagged" in accordance with Army Regulation 600-8-2, Suspension of Favorable Personnel Actions (FLAGS).  Therefore, he would not have been eligible for promotion from September 1997 through April 1998  (rows 9709 through 9804, column SUSP1).

13.  The area blocked out in columns PROPTDT, PROPTS, PREVPTS, PREVPDT for rows 9708, 9709, 9710, 9711 is information that is no longer available due to unknown reasons for which I could only speculate.

14.  The regulation required that annual recomputations be completed.  The enclosed spreadsheet reflects the points the same month the recomputation was completed or when a soldier appeared before a board.  However, as the table above reflects, the regulation dictated that the points did not become effective for promotion purposes until the first day of the third month after the recomputation or board appearance.  The personnel promotions branch makes

this computation based on promotion point cut-off scores announced monthly by the Department of the Army. In cases where a Soldier's promotion points in fact meets or exceeds the announced cut-off score, the promotions branch is required to again verify the points prior to publishing promotion orders. This functions as final check in the process.

15. The Plaintiff's submitted the correct cut-off scores for the 31F MOS in 1997 to the ABCMR which can be found in the Defendant's Administrative Record at 96.

16. I certify that the data in the above table and enclosed spreadsheet accurately reflects the Plaintiff's promotion points.

17. Based on the date the Plaintiff's promotion points took effect, he never met or exceed the cut-off score for his MOS. Therefore, he was not promoted to the rank of E-6/ Staff Sergeant.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of January 2008 at Arlington, Virginia.


THOMAS L. ERICKSON
Lieutenant Colonel, U.S. Army

POOLE WILLIAM ODALE
462298565

| ME | PAYGR | BASD | ETSD | PRMOS | PRJDT | PROPTDT | PROPTS | PREVPTS | REVPD | SUSP1 | SUSP2 | TYPE1 | TYPE2 | DOR | EREUP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9703 | 5 | 8306 | 980519 | 31F2 | | 9603 | 643 | 678 | 9603 | | | | | 8807 | 10 |
| 9704 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | | | | | 8807 | 10 |
| 9705 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | | | | | 8807 | 10 |
| 9706 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | | | | | 8807 | 10 |
| 9707 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | | | | | 8807 | 10 |
| 9708 | 5 | 8306 | 980519 | 31F3 | | | | | | | | | | 8807 | 10 |
| 9709 | 5 | 8306 | 980519 | 31F3 | | | | | | K | | A | | 8807 | 10 |
| 9710 | 5 | 8306 | 980519 | 31F3 | | | | | | K | | A | | 8807 | 10 |
| 9711 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | K | | A | | 8807 | 10 |
| 9712 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | K | | A | | 8807 | 10 |
| 9801 | 5 | 8306 | 980519 | 31F3 | | 9704 | 725 | 643 | 9603 | K | | A | | 8807 | 10 |
| 9802 | 5 | 8306 | 980719 | 31F3 | | 9704 | 725 | 643 | 9603 | K | | A | | 8807 | 10 |
| 9803 | 5 | 8306 | 980719 | 31F3 | | 9704 | 725 | 643 | 9603 | K | | A | | 8807 | 10 |
| 9804 | 5 | 8306 | 980719 | 31F3 | | 9704 | 725 | 643 | 9603 | K | | A | | 8807 | 10 |