UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM D. POOLE, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | ) Civil Action No. 07-1320 (HHK) |
| | ) |
| PETE GEREN | ) |
| Secretary of the Army, | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

### ERRATA

COMES NOW Defendant, through undersigned counsel, to respectfully notify the Court and Plaintiff that Defendant inadvertently submitted the wrong document when filing its Reply to Plaintiff's Opposition To Defendant's Motion To Dismiss And Defendant's Motion For Summary Judgment, and Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment, R #10.

In Part I .B Defendant accurately states that the Plaintiff never met the cutoff score to be eligible for promotion. However, in providing the rationale, the initial filing inaccurately calculated the number of months, albeit in Plaintiff's favor. Army Regulation 600-8-19, paragraph 3-22(j) mandates that when a soldiers' promotion points are recalculated, "[t]he new score becomes effective on the first day of the third month *following* the scheduled recomputation month." (Emphasis added). Defendant's prior filing mistakenly included the month of the recomputation as the first month in calculating the three month waiting period. The only effect of this error is that Plaintiff's promotion points did not become effective for an additional month in 1995, 1996, and 1997, beyond what the Defendant argued in its filing. It

does not change the fact that Plaintiff never possessed enough points in March or April 1997 to get promoted. A corrected copy of the Reply, and Exhibit H, the declaration from Lieutenant Colonel Erickson, are attached to this errata.

                                        Respectfully submitted,

                                                    /s
                                      JEFFREY A. TAYLOR, D.C. Bar # 498610
                                      United States Attorney
                                                      /s
                                      RUDOLPH CONTRERAS, D.C. Bar # 434122
                                      Assistant United States Attorney

                                                    /s
                                      BRIAN C. BALDRATE
                                      Special Assistant United States Attorney
                                      555 Fourth Street, N.W.
                                      Room E4408
                                      Washington, D.C.  20530
                                      (202) 353-9895

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM D. POOLE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Civil Action No. 1:07-cv-1320 (HHK) |
| | ) |
| PETE GEREN | ) |
| Secretary of the Army, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY
JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant's initial Motion demonstrates why Plaintiff's claim for this Court to order a promotion is nonjusticiable. It also established that the ABCMR's denial of Plaintiff's application for promotion, back pay, and retirement benefits was not arbitrary, capricious, or contrary to law or regulation.

In Plaintiff's Cross-Motion and Opposition ("Pl. Resp."), Plaintiff alleges that his promotion is justiciable because it involves a nondiscretionary promotion and that the Army did not comply with its own regulation when the Plaintiff was not promoted in 1997. (Pl. Resp. at 2-4.) Plaintiff also alleges that the ABCMR was arbitrary and capricious when it denied Plaintiff's application by requiring further evidence that he was on the promotion standing list. (Id. at 4-7.)

It is Plaintiff's burden to prove an error or injustice by a preponderance of the evidence.

(Def. Ex. G, Army Reg. 15-185, ¶ 2-9).[1]  Plaintiff's failure to present compelling information resulted in the ABCMR properly denying Plaintiff's application due to insufficient evidence. (AR 90-91.)  In Plaintiff's response, he improperly attempts to place the burden on the Defendant to "point to a valid historical promotion recommendation list from March 1997 that does not contain Plaintiff's name" before "reasonably and fairly deny[ing] Plaintiff's claim." (Pl. Resp. at 4.)  Notwithstanding Plaintiff's improper attempt at burden-shifting, evidence reflects that Defendant in fact properly followed Army regulations and Plaintiff lacked the points necessary to be promoted.  This subsequent evidence, while not necessary to uphold the ABCMR decision, validates the reasonableness of the ABCMR's decision to deny Plaintiff's application and the finding that Plaintiff's recreated promotion packet was inadequate evidence to support his promotion request.

**I.  Under Army Regulation 600-8-19 Plaintiff Was Not Eligible For Promotion**

    **A.  The Promotion E-6/Staff Sergeant ("SSG") Is Not Automatic**

Plaintiff incorrectly asserts that the promotion system for an E-5/Sergeant ("SGT") to E-6/SSG is automatic. (Pl. Resp. at 2-3.)  As stated in the Defendant's opening Motion, the only automatic promotion in the Army is from the grade of Private, E-1/PVT to Private E-2/PV2. (Def. Mot. at n. 5; Def. Ex. E, Army Reg. 600-8-19, ¶ 1-8(c) ). The promotion scheme for an E-5/SGT is semi-centralized. (Def. Ex. E., Army Reg. 600-8-19, ¶ 3-1c.)  The Department of the Army establishes the cut-off scores each month for each occupational specialty (MOS) in a centralized manner, and the board appearance, promotion point calculation, promotion list

---

[1] Defendant's Opposition and Reply has two exhibits. For clarity these exhibits are labeled Exhibit G and Exhibit H, in sequential order with the exhibits in Defendant's opening Motion.

maintenance, and promotion occurs at the unit level in a decentralized manner. (Id. at ¶ 3-1c.) The points attained by the service member are made up of objective scores such as marksmanship, the physical fitness test, and education, and subjective scores based on the commander's discretion and a board. (Id. at Figure 3-1.) The semi-centralized promotion to E-6/SSG involves discretionary aspects at the unit level which differentiates the promotion process from the automatic, centralized promotions for privates.

Plaintiff improperly suggests that once a service member is on a promotion list and makes the cut-off score that the promotion will take effect immediately, or be "automatic," if they have the appropriate number of points. (Pl. Resp. at 2-3). There are three relevant instances when the promotion does not take effect immediately, and a soldier must wait three months before the points become effective: (1) after appearing in front of a board; (2) if the service member requests a re-evaluation; and (3) following an annual recomputation. (Def. Ex. E, Army Reg. 600-8-19, ¶ 3-22). In Plaintiff's case this three month period before the points become effective directly impacted Plaintiff's score, and as such he never met the promotion cutoff score when his points become effective. Accordingly, Plaintiff's claim that he should have automatically been promoted is false.

**B. Plaintiff Never Met the Cutoff Score to be Promoted**

Plaintiff was not promoted in accordance with Army Regulation 600-8-19. (Def. Ex.'s E, Ex. F.) Army regulations require that a soldier's promotion points, effective that month, must meet the cut-off score for that month. (Def. Ex. E, Army Reg. 600-8-19, ¶ 3-34j, k.) Although Plaintiff claims to have attained 728 points in March 1997 (Compl. ¶. 17), he never possessed that number of points according to the Army's personnel database, Total Army Personnel

Database ("TAPDB"). (Def. Ex. H.) The Plaintiff was not promoted because he never met or exceeded the promotion cut-off score as required by regulation.

The regulation states that "[p]romotion points must be recomputed 12 months (plus or minus 1 month) after the last computation (initial board, reevaluation, or recomputation)." (Def. Ex. E, Army Reg. 600-8-19 at ¶ 3-22a). "Recomputation is mandatory…" (Id. at ¶ 3-22(f).) "The soldier will review recomputed scores for accuracy and completeness." (Id. at ¶ 3-22(h).) "Soldiers will continue to be eligible for promotion based on their old promotion point score until recomputed scores become effective…" (Id. at ¶ 3-22(i).) "The new score becomes effective on the first day of the third month following the scheduled recomputation month." (Id. at ¶ 3-22(j).)

The attached declaration of Lieutenant Colonel Thomas Erickson, Branch Chief of Enlisted Personnel Management, and the supporting TAPDB spreadsheet, verify that Plaintiff never met the cut-off score to make him eligible for promotion. (Ex. H.) The table below reflects the Plaintiff's effective promotion points for each month compared to the cut-off score for Plaintiff's MOS occupational specialty.[2]

| Month(s) | Date Of Board or Recomputation | Effective Points | Cut Off Score for 31F | Plaintiff's Status |
|---|---|---|---|---|
| JUNE 1995- MAY 1996 | MAR 1995 | 678 | | |
| JUNE 1996- FEB 1997 | MAR 1996 | 643 | 798 (FEB 1997) | Insufficient Points |
| MAR 1997 | MAR 1996 | 643 | 726 | Insufficient Points |

---

[2] Def. Ex. H supports and elaborates on the documentation in this table. AR 96 lists the applicable cut-off scores for Plaintiff's promotion for the relevant months.

| | | | | |
|---|---|---|---|---|
| APR 1997 | MAR 1996 | 643 | 688 | Insufficient Points; New Recomputation Score of 725 not effective until July 1997 |
| MAY 1997 | MAR 1996 | 643 | 670 | Insufficient Points; New Recomputation Score of 725 not effective until July 1997 |
| JUNE 1997 | MAR 1996 | 643 | 798 | Insufficient Points; New Recomputation Score of 725 not effective until July 1997 |
| JULY 1997 | APR 1997 | 725 | 798 | Insufficient Points |
| AUG 1997 | APR 1997 | 725 | 798 | Eligible / Insufficient Points |
| SEP-DEC 1997 | APR 1997 | 725 | 798 | Not Promotable / Overweight Program |

As noted above, Plaintiff appeared before a promotion board in March of 1995. With the three month waiting period for points to take effect, Plaintiff's score of 678 points became effective on June 1, 1995. (Id.) The Plaintiff maintained that score of 678 points from June 1995 through May 1996. (Id.) Plaintiff's score decreased to 643 with the next re-computation in March 1996 and those points became effective on June 1, 1996. (Id.) Plaintiff's score remained at 643 points from June 1996 through June 1997. As of March 1997, Plaintiff only had 643 points which did not meet or exceed the requisite cut-off score of 726 points. (Id.; AR 96.) Contrary to Plaintiff's assertion, he in fact did not have "728 points" in March 1997 (Pl. Resp. at 6) and was not eligible to be promoted.

5

Instead, Plaintiff's score was recomputed in April 1997, and with the recalculation, he attained 725 points. (Def. Ex. H.) However, Plaintiff's newly re-calculated score could not be used against the cut-off score for 3 months until July 1, 1997. (Def Ex. E., Army Reg. 600-8-19, ¶ 3-22(j).) Plaintiff's previous score of 643, which remained in effect for the months of April, May and June 1997, was lower than the cut-off scores of 688, 670 and 798 in those respective months. (Id., ¶ 3-22(a); AR 96.) Therefore, even though the Plaintiff's recomputation score of 725 appears to have exceeded the cut-off score for April and May 1997, by regulation, Plaintiff's 725 point recalculation was not effective to compare against the cut-off score for those months. (Ex. E., Army Reg. 600-8-19 ¶ 3-22(j).)

In July 1997, Plaintiff's 725 score became effective. However, unfortunately for Plaintiff, the cut-off score for his MOS was 798, which also exceeded Plaintiff's score. (Def. Ex. H; AR 96). In September 1997, Plaintiff was placed in the overweight program, and became ineligible for promotion because he was flagged. (Def. Ex. H.)[3]

As set forth conclusively, in Exhibit H, The Defendant followed all of the applicable regulations regarding Plaintiff's promotion. While it is unfortunate that Plaintiff's 725 score was not effective until July 1997, those were the rules according to the regulation. Therefore, Plaintiff's claim that the Army failed to follow regulations and automatically promote him (Compl. at 24; Pl. Resp. at 3) must be dismissed.

---

[3] By regulation, after six months if the soldier does not make satisfactory progress toward the maximum allowable weight, the soldier is removed from the promotion standing list. (Def. Ex. E, Army Reg. 600-8-19, ¶ 3-28(b)(8). After twelve months in the overweight program, a soldier will be removed from the promotion standing list regardless of his/her progress. (Id. at ¶ 3-28(b)(9).)

**II. The ABCMR Fully Considered Plaintiff's Request for Reconsideration And Properly Determined That No Relief As To The Claims To Promotions, Retirement Pay, And Benefits Were Warranted.**

The ABCMR's decision that Plaintiff presented insufficient evidence to show a probable error or injustice (AR 91) was neither arbitrary and capricious, nor contrary to law or regulation. The ABCMR fully considered all of the Plaintiff's evidence, and determined that Plaintiff's "reconstructed" promotion packet was merely "suggestive, but not compelling." (AR 91). The ABCMR determined that even if the Plaintiff did possess 728 points, without evidence that Plaintiff also maintained his status on the promotion standing list for March 1997, they could not conclude that an error or injustice occurred. Given the evidence in Part 1, *infra*, this decision was not only not arbitrary and capricious, but factually accurate.

The ABCMR acted properly in weighing the evidence Plaintiff submitted and determining that he failed to meet the burden of proof. "The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence." (Def. Ex. G, Army Reg. 15-185 at ¶ 2-9 ). "The ABCMR will decide cases on the evidence of record. It is not an investigative body." (Id. at ¶ 2-2(c).) The regulation also directs the ABCMR to "[d]eny applications when the alleged error or injustice is not adequately supported by the evidence…" (Id. at ¶ 1-8(d).)

The ABCMR began consideration of the Plaintiff's request for reconsideration with the assumption that the Army's promotion process operated with administrative regularity. The Plaintiff then had the burden of proving an error occurred by a preponderance of the evidence.

While the Plaintiff claims he "submitted clear evidence with his request for reconsideration to the ABCMR that showed he must have been on a valid promotion recommended list in March 1997" (Pl. Resp. at 4), the ABCMR disagreed.  The ABCMR determined that Plaintiff's reconstruction of his promotion packet in 2007 was merely "suggestive" and the letters Plaintiff submitted only suggest he was recommended for promotion in 1991 and 1995.  (AR 90-91.)  According to the ABCMR, the Plaintiff failed to meet his burden to show he should have been promoted in March 1997 by a preponderance of the evidence.(Id.)

In the Plaintiff's response, he improperly places the burden of proof on the Defendant to "point to a valid historical promotion recommendation list from March 1997 that does not contain Plaintiff's name" before "reasonably and fairly deny[ing] Plaintiff's claim." (Pl. Resp. at 4.)  Yet, it was the Plaintiff's responsibility to present more persuasive evidence in his record, such as the promotion standing list from March 1997 or a copy of his actual promotion packet.  (Def. Ex. G, Army Reg. 15-185, ¶ 2-9.)  Since the ABCMR determined the alleged error or injustice was not adequately supported by the evidence, they acted "reasonably and fairly" in denying Plaintiff's claim.

As stated in the Defendant's opening Motion, there were numerous reasons why Plaintiff may not have been on a promotion standing list at the time of his promotion.  Despite the ABCMR's decision to give Plaintiff the benefit of the doubt and assume that he had the points he claimed (AR 91),[4] it was reasonable for the ABCMR to require Plaintiff to provide sufficient

---

[4] The declaration from Lieutenant Colonel Erickson at Exhibit H demonstrates that this assumption was inaccurate and Plaintiff never in fact had 728 points.  This evidence directly refutes Plaintiff's Statement of Material Fact # 9: "Defendant failed to promote Plaintiff when Plaintiff was eligible for promotion and had more than the cutoff number of points necessary for promotion by regulation,"and # 11: "Plaintiff had 728 points."

evidence that he was still in a promotable status to overcome the presumption of administrative regularity.  Since the promotion to E-6/SSG requires a soldier to have attained the necessary points and maintain standing on the recommended promotion list, it was appropriate for the ABCMR to require evidence of both.  Also, based on the variety of reasons a soldier may be removed from the promotion standing list, it was a relevant factor to require before awarding the Plaintiff a promotion, back pay and retirement benefits.

As illustrated in the table above and set forth in Exhibit H, the ABCMR was correct in assuming administrative regularity and requiring additional evidence.  Plaintiff in fact did not attain the points necessary to be promoted in March 1997.  (Def. Ex. H.)  Plaintiff then was placed on the Army's overweight program and flagged from September 1997 through December 1997, which should have resulted in his removal from the promotion standing list.  (Def. Ex. H, Def. Ex. E., ¶¶ 1-10, 3-28)  Therefore, Plaintiff was not entitled to a promotion and was appropriately discharged when he met his RCP of fifteen years.

The ABCMR acted within its discretion and according to its regulation when it weighed all of the evidence Plaintiff submitted and provided a thorough explanation for denying his request for reconsideration.  A court "will not disturb the decision so long as the decision maker examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Burt v. Winter, 2007 U.S. Dist. LEXIS 65800 (D.D.C. 2007)(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29 (1983); Kreis v. Se'y of the Air Force, 275 U.S. App. D.C. 390 (D.C. Cir. 1989)). Based on the promotion packet recreated by the Plaintiff ten years later, the ABCMR was reasonable to require additional evidence that Plaintiff maintained his status on a promotion

standing list before awarding two promotions, back pay for five years never served, and a lifetime of retirement benefits. There was a logical, rational connection between the facts the ABCMR found, and the decision the ABCMR made.

Plaintiff's Complaint and Motion for Summary Judgment fail to meet the burden of providing cogent and clearly convincing evidence to overcome the presumption that the ABCMR discharged its duties correctly, lawfully and in good faith. See Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996) Plaintiff asserts that simply stating that he was on a promotion standing list in March 1997 should be evidence enough, unless the ABCMR could prove otherwise. This reflects a fundamental misunderstanding of the procedures of the ABCMR. The ABCMR correctly interpreted the evidence presented by the Plaintiff by noting that the letters from the Plaintiff's former leadership only proved that he was on a promotion list in 1991 and 1995. (AR 90-91.) The ABCMR fully evaluated the evidence provided by the Plaintiff, made a rational decision to require evidence that the Plaintiff was on a promotion standing list in March 1997, and provided a detailed explanation to the Plaintiff. (AR 90-91). Although certainly not required, the ABCMR's decision not to grant Plaintiff relief was not only reasonable, but as further evidence demonstrates, was factually accurate as well. Accordingly, Plaintiff cannot show that the ABCMR's decision was arbitrary, capricious, or contrary to Army Regulation.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment and Motion to Dismiss should be granted.

Respectfully submitted,

/s
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
Major Kelly L. McGovern
U.S. Army Litigation Division
901 N. Stuart St., Suite 400
Arlington, VA 22203
703-696-1626

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM D. POOLE<br><br>  Plaintiff,<br><br>  v.<br><br>PETE GEREN,<br><br>Secretary of the Army<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil No. 07-cv-01320<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DECLARATION OF THOMAS L. ERICKSON

In accordance with 28 U.S.C. § 1746, I, Thomas L. Erickson, make the following declaration in the above-cited case.

1. I am the Branch Chief of Enlisted Professional Development. In this capacity, I am directly responsible for enlisted promotions, enlisted separations, and enlisted retention.

2. I have read the claims of Plaintiff William D. Poole in the above captioned case.

3. I requested and received the Plaintiff William D. Poole's promotion point data on November 16, 2007.

4. The Plaintiff's promotion point data was maintained in the Total Army Personnel Database (TAPDB). TAPDB is a personnel database of record that maintains all of the Army's personnel information. The by name data for the Plaintiff was retrieved by querying the historical tapes which were based on original TAPDB files. TAPDB files are routinely saved for

1

historical purposes. The by name data for the Plaintiff was then used to construct the attached excel spreadsheet.

5. The Army has a standard operating procedure for inserting the promotion score, into the Enlisted Distribution Assignment System (EDAS). By policy, promotion points must be verified by the Personnel Services Detachment prior to entering promotion points. Access to the promotion point window of EDAS is limited to only certified and approved promotion point clerks and their supervisors.

6. By regulation, the soldier verifies that EDAS reflects the correct number of promotion points. This procedure is a built-in safeguard to ensure accuracy, that the Soldier is informed of total points entered, and identify errors.

7. The Army keeps the computer database in a good state of repair.

8. The computer system was in working order at the time I obtained the Plaintiff's promotion points.

9. I recognize the attached exhibit as the Plaintiff's promotion point spreadsheet created from historical TAPDB data.

10. The table below accurately reflects the information extracted from the Plaintiff's promotion point spreadsheet and will assist in understanding my explanation of the effective date of the Plaintiff's promotion points and the information contained on the enclosed spreadsheet.

| Month(s) | Date Of Board Recomputation | Awarded Points | Cut Off Score for 31F | Plaintiff's Status |
|---|---|---|---|---|
| JUNE 1995- MAY 1996 | MAR 1995 | 678 | | |
| JUNE 1996- FEB 1997 | MAR 1996 | 643 | 798 | Insufficient Points |

|  |  |  | (FEB 1997) |  |
|---|---|---|---|---|
| MAR 1997 | MAR 1996 | 643 | 726 | Insufficient Points |
| APR 1997 | MAR 1996 | 643 | 688 | Insufficient Points; New Recomputation Score of 725 not effective until July 1997 |
| MAY 1997 | MAR 1996 | 643 | 670 | Insufficient Points; New Recomputation Score of 725 not effective until July 1997 |
| JUNE 1997 | MAR 1996 | 643 | 798 | Insufficient Points; New Recomputation Score of 725 not effective until July 1997 |
| JULY 1997 | APR 1997 | 725 | 798 | Insufficient Points |
| AUG 1997 | APR 1997 | 725 | 798 | Eligible / Insufficient Points |
| SEP-DEC 1997 | APR 1997 | 725 | 798 | Not Promotable / Overweight Program |

11. The abbreviations on each column on the enclosed spreadsheet:

   a. ME = Month Ending

   b. PAYGR = Pay Grade

   c. BASD = Basic Active Service Date

   d. ETSD = Expiration of Term of Service Date

   e. PRMOS = Primary Military Occupational Specialty

   f. PROPTDT = Promotion Point Date, which reflects the date the current points for that month were entered into EDAS

g. PROPTS = Promotion Points, which reflects the current points for that month

h. PREVPTS = Previous Points, promotion points previously entered into EDAS

i. PREVPDT = Previous Promotion Point Date, which reflects the date the previous points were computed

j. SUSP1 = First Suspension of Favorable Action, which indicates the reason of the first suspension (K is the code for suspension due to overweight).

k. TYPE 1 = Type of Suspension for First Suspension, which indicates report date for the suspension (A is the code for initial suspension).

l. DOR = Date of Rank, which indicates the date of rank for the current grade.

m. EREUP = Eligibility to Reenlist, which indicates a Soldiers eligibility to reenlist.

12. The following information can be extracted from enclosed spreadsheet:

a. The Plaintiff appeared before a board or his score was recomputed in March 1995, as shown on row 9703, column PREVPDT. Row 9703, column PREVPTS indicates the Plaintiff possessed 678 point in March 1995.

(1) By regulation, the Plaintiff's score of 678 became effective June 1, 1995. This score remained in effect until the first day of the third month after the next board appearance, requested reevaluation, or annual recomputation.

(2) According to Row 9703, column PROPTDT, the Plaintiff's score was recalculated in March 1996. The new score took effect on June 1, 1996. Therefore, the score of 678 was in effect from June 1, 1995 to May 31, 1996.

b. The Plaintiff's score decreased to 643 points with the recalculation completed on March 1996 (row 9703, columns PROPTDT, PROPTS).

(1) By regulation, the Plaintiff's 643 points took effect on June 1, 1996.

(2) The Plaintiff's 643 points remained in effect until the first day of the third month after the next board appearance, requested reevaluation, or annual recomputation.

(3) The next recalculation was completed in April 1997 (row 9704, column PROPTDT). Therefore, the Plaintiff maintained a score of 643 points from June 1, 1996 to June 30, 1997.

    c. The Plaintiff's score increased to 725 points with the recalculation completed in April 1997 (row 9704, column PROPTS).

(1) By regulation, the Plaintiff's 725 points took effect on July 1, 1997.

(2) According to the enclosed spreadsheet, the Plaintiff maintained a score of 725 points for the remainder of 1997 and through April 1998.

    d. The "K" indicated in the column labeled "SUPS1" indicates the Plaintiff was enrolled in the Army's overweight program. This status indicates the Plaintiff's record was "flagged" in accordance with Army Regulation 600-8-2, Suspension of Favorable Personnel Actions (FLAGS). Therefore, he would not have been eligible for promotion from September 1997 through April 1998 (rows 9709 through 9804, column SUSP1).

13. The area blocked out in columns PROPTDT, PROPTS, PREVPTS, PREVPDT for rows 9708, 9709, 9710, 9711 is information that is no longer available due to unknown reasons for which I could only speculate.

14. The regulation required that annual recomputations be completed. The enclosed spreadsheet reflects the points the same month the recomputation was completed or when a soldier appeared before a board. However, as the table above reflects, the regulation dictated that the points did not become effective for promotion purposes until the first day of the third

month after the recomputation or board appearance. The personnel promotions branch makes this computation based on promotion point cut-off scores announced monthly by the Department of the Army. In cases where a Soldier's promotion points in fact meets or exceeds the announced cut-off score, the promotions branch is required to again verify the points prior to publishing promotion orders. This functions as final check in the process.

15. The Plaintiff's submitted the correct cut-off scores for the 31F MOS in 1997 to the ABCMR which can be found in the Defendant's Administrative Record at 96.

16. I certify that the data in the above table and enclosed spreadsheet accurately reflects the Plaintiff's promotion points.

17. Based on the date the Plaintiff's promotion points took effect, he never met or exceed the cut-off score for his MOS. Therefore, he was not promoted to the rank of E-6/ Staff Sergeant.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of January 2008 at Arlington, Virginia.

THOMAS L. ERICKSON
Lieutenant Colonel, U.S. Army